UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THAI-LAO LIGNITE (THAILAND) CO., LTD. &
HONGSA LIGNITE (LAO PDR) CO., LTD,

                             Petitioners,

                    v.

GOVERNMENT OF THE LAO PEOPLE'S
DEMOCRATIC REPUBLIC,

                             Respondent.

**Index No.  10 Civ. 5256 (KMW)**

**<u>Memorandum of Law in Opposition to
Motion to Dismiss Petition</u>**

James E. Berger (JB 6605)
Charlene C. Sun (CS 1281)
Paul, Hastings, Janofsky & Walker LLP
75 East 55 Street
New York, New York 10022
(212) 318-6000
<u>jamesberger@paulhastings.com</u>
<u>charlenesun@paulhastings.com</u>

Christopher F. Dugan, *pro hac vice*
Paul, Hastings, Janofsky & Walker LLP
875 15th Street N.W.
Washington, DC  20005
(202) 551-1723
<u>chrisdugan@paulhastings.com</u>

*Attorneys for Petitioners Thai-Lao Lignite
(Thailand) Co., Ltd. & Hongsa Lignite (Lao
PDR) Co., Ltd.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................. 1

I.    THIS COURT IS NOT AN INCONVENIENT FORUM ........................... 5

    A.    Thailand is Not a Suitable Alternative Forum ........................ 6

    B.    The United States is Not an Inconvenient Forum ...................... 8

II.   THIS COURT HAS *IN PERSONAM* JURISDICTION OVER LAOS ........... 11

III.  LAOS HAS FAILED TO ESTABLISH ANY GROUNDS FOR NON-RECOGNITION .................................................................. 13

    A.    The Proper Standard of Review .......................................... 14

    B.    Laos' Objections Fail on their Face to State a Ground for Non-Recognition ................................................................ 16

    C.    Even if Cognizable Under Article V, Laos' Objections are Substantively Meritless ................................................. 17

        1.    The Parties' Agreement Authorizing the Tribunal to Determine its Jurisdiction Substantially Curtails, if not Forecloses, Judicial Review of its Exercise of Jurisdiction .................................. 17

        2.    The Tribunal's Findings are Amply Supported by the Record ............... 19

            a.    The Tribunal had an Ample Basis for Finding that HLL was an Intended Third Party Beneficiary ........................... 20

            b.    Laos' Arguments that the Award Constituted an Extension of Jurisdiction over the "Other Siva Companies" is an Impermissible Rehash of its Damages Argument from the Arbitration, and is Substantively Meritless ...................... 21

CONCLUSION ....................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alliance Bernstein Inv. Research and Mgmt., Inc. v. Schaffran,*
    445 F.3d 121 (2d Cir. 2006)........................................................................18

*Altmann v. Rep. of Austria,*
    142 F. Supp. 2d 1187 (C.D. Cal. 2001), *aff'd on other grounds*, 317 F.3d 954 (9th
    Cir. 2002), *aff'd on other grounds*, 551 U.S. 677 (2004) ......................................13

*Am. Steamship Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. A., Inc.,*
    474 F. Supp. 2d 474 (S.D.N.Y. 2007).............................................................9

*Armco Inc. v. N. Atl. Ins. Co. Ltd.,*
    68 F. Supp. 2d 330 (S.D.N.Y. 1999)...............................................................5

*B.L. Harbert Int'l v. Hercules Steel Co.,*
    441 F.3d 905 (11th Cir. 2006) ..................................................................2, 14

*Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory,*
    283 F.3d 208 (4th Cir. 2002) .....................................................................12

*Capital Ventures Int'l v. Rep. of Argentina,*
    No. 05 Civ. 4085 (TPG), 2010 WL 1257611 (S.D.N.Y. Mar. 31, 2010) ...............13

*Comer v. Micor, Inc.,*
    436 F.3d 1098 (9th Cir. 2006) ...................................................................21

*Contec Corp. v. Remote Solution, Co., Ltd.,*
    398 F.3d 205 (2d Cir. 2005).......................................................................19

*Cruz v. U.S.,*
    387 F. Supp. 2d 1057 (N.D. Cal. 2005) .........................................................13

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,*
    156 F.3d 310 (2d Cir. 1998)....................................................................19, 25

*First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food*
    *Employees Union Local 338*
    118 F.3d 892 (2d Cir. 1997).......................................................................25

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995)............................................................................15, 18

*Folkways Music Publishers, Inc. v. Weiss,*
    989 F.2d 108 (2d Cir. 1993).........................................................................2

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Rep.*,
582 F.3d 393 (2d Cir. 2009).................................................................12, 13

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) ....................................................................12

*Halcot Navigation L.P. v. Stolt-Nielsen Transp. Group, BV*,
491 F. Supp. 2d 413 (S.D.N.Y. 2007).....................................................17, 25

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008)..................................................................................2, 15

*Higgins v. SPX Corp.*,
No. 05 Civ. 846, 2006 WL 1008677 (W.D. Mich. Apr. 18, 2006).........................10

*I.T. Consultants, Inc. v. Islamic Rep. of Pakistan*,
351 F.3d 1184 (D.C. Cir. 2003) ....................................................................12

*In re Air Crash near Nantucket Island, Mass., on October 31, 1999*,
No. 00-MDL-1344, 2004 WL 1824385 (E.D.N.Y. Aug. 16, 2004) ...........................8

*Ingram Micro, Inc. v. Airoute Cargo Express, Inc.*,
No. 99 Civ. 12480 (SAS), 2001 WL 282696 (S.D.N.Y. Mar. 22, 2001) ...................5

*Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera*,
745 F. Supp. 172 (S.D.N.Y. 1990) ................................................................20

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
335 F.3d 357 (5th Cir. 2003) .........................................................................6

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
500 F.3d 111 (2d Cir. 2007)......................................................................6, 14

*Lafarge Canada, Inc. v. Bank of China*,
No. 00 Civ. 0261 (LMM), 2000 WL 1457012 (S.D.N.Y. Sept. 29, 2000)...............9

*Manning v. Smith Barney, Harris Upham & Co.*,
822 F. Supp. 1081 (S.D.N.Y. 1993)...............................................................15

*Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
311 F.3d 488 (2d Cir. 2002)....................................................................10, 11

*Motion Picture Lab. Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc.*,
804 F.2d 16 (2d Cir. 1986)..........................................................................9

*Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*,
990 F.2d 957 (7th Cir. 1993) .......................................................................20

*Parsons & Whittemore Overseas Co. v. Societe Generale de*
    *L'Industrie du Papier (RAKTA)*,
    508 F.2d 969 (2d Cir. 1974)..................................................................2, 4, 23, 24

*Peregrine Myanmar Ltd. v. Segal*,
    89 F.3d 41 (2d Cir. 1996)..............................................................................5, 8

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) ...........................................................................12

*Prospect Capital Corp. v. Enmon*,
    No. 08 Civ. 3721, 2010 WL 907956 (S.D.N.Y. Mar. 9, 2010) ..............................15

*Quick & Reilly, Inc. v. Jacobson*,
    126 F.R.D. 24 (S.D.N.Y. 1989) .........................................................................15

*Rux v. Rep. of Sudan*,
    No. 04 Civ. 428, 2005 WL 2086202 (E.D. Va. Aug. 26, 2005) ............................13

*Sarhank Group. v. Oracle Corp.*,
    404 F.3d 657 (2d Cir. 2005)..............................................................................17

*Smiga v. Dean Witter Reynolds, Inc.*,
    766 F.2d 698 (2d Cir. 1985)..............................................................................15

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
    No. 05 Civ. 8546 (PKL), 2006 WL 738171 (S.D.N.Y. Mar. 22, 2006) ...................5

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010)........................................................................15, 18

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    584 F.3d 396 (2d Cir. 2009)..............................................................................14

*Telenor Mobile Commc'ns, AS v. Storm LLC*,
    587 F. Supp. 2d 594 (S.D.N.Y. 2008)................................................................25

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    No. 07 Civ. 6929 (GEL), 2009 WL 585968 (S.D.N.Y. Mar. 9, 2009) .....................2

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
    411 F.3d 296 (D.C. Cir. 2005) .......................................................................8, 10

*Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., Inc.*,
    295 F.3d 256 (2d Cir. 2002)..............................................................................16

*U.K. v. Boeing, Co.*,
    998 F.2d 68 (2d Cir. 1993)................................................................................21

*Valore v. Islamic Rep. of Iran,*
    700 F. Supp. 2d 52 (D.D.C. 2010) .................................................................................12

*Varnelo v. Eastwind Transp. Ltd.,*
    No. 02 Civ. 2084 (KMW)(AJP), 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) ..........................5

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc.,*
    126 F.3d 15 (2d Cir. 1997)...............................................................................................2, 14

## STATUTES

28 U.S.C. § 1330(a) ......................................................................................................................11

28 U.S.C. § 1330(b) ...........................................................................................................11, 12, 13

28 U.S.C. § 1603(a) ................................................................................................................11, 12

28 U.S.C. § 1608(a) ......................................................................................................................11

## RULES

Fed. R. Civ. P. 11 ...................................................................................................................3, 13, 14

Petitioners Thai-Lao Lignite (Thailand) Co., Ltd. ("TLL"), and Hongsa Lignite (Lao PDR) Co., Ltd. ("HLL") (collectively, "Petitioners"), by and through their undersigned counsel, respectfully submit this Memorandum in Opposition to Respondent's Motion to Dismiss the Petition ("Motion to Dismiss," or "MTD"). The Motion to Dismiss should be denied, Laos' objections to enforcement should be overruled, the Petition should be granted, and the Final Award should be confirmed and judgment entered thereon, for all the reasons that follow.

### Preliminary Statement

In the Project Development Agreement ("PDA") it entered into with Petitioners, Laos expressly agreed that any dispute with Petitioners would be resolved by arbitration under the UNCITRAL Rules. When a dispute arose, Petitioners commenced arbitration in strict accordance with the parties' agreement. Petitioners prevailed, and Laos lost, before a unanimous and eminent panel of American arbitrators. Under the parties' agreement, that should have been the end of the parties' dispute: Rule 32(2) of the UNCITRAL Rules expressly requires the parties to "*carry out the award without delay*" (emphasis supplied). Laos has refused to do so, necessitating this litigation.

The New York Convention – which Laos has ratified – was adopted expressly to address situations such as this. The United States ratified the New York Convention in 1958, and Congress implemented it in Chapter 2 of the Federal Arbitration Act. Both the Convention and Chapter 2 enshrine an unequivocal and fundamental public policy favoring arbitration, and U.S. courts have, without exception, developed a substantial body of jurisprudence *requiring* the

1

prompt enforcement of arbitration awards against reneging parties, such as Laos.[1]

Nothing in Laos' Motion to Dismiss justifies a departure from these well-settled legal norms. One of Laos' arguments is improper; the remaining two are transparently meritless. Collectively, Laos' defenses to enforcement amount to little more than the predictable and rote incantations of that small minority of parties who, despite expressly agreeing to honor their arbitral agreements, refuse to do so when the result is not to their liking. Federal courts have demonstrated increasing impatience with the defenses offered by Laos in its Motion – often to the point of finding them sanctionable[2] – and each must be rejected in this case.

Laos' forum non conveniens argument does little more than demonstrate that Laos would prefer to defend this case in Thailand, where expedited enforcement procedures are not available and where it likely has more political influence. Laos' forum argument does not even address,

---

[1]  ("Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc.*, 126 F.3d 15, 21-23 (2d Cir. 1997) (same) (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993)); *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 977 (2d Cir. 1974) (concluding that basic purpose of Convention is to dispose of disputes quickly and avoid expense and delay of extended court proceedings).

[2]  *B.L. Harbert Int'l v. Hercules Steel Co.*, 441 F.3d 905, 914 (11th Cir. 2006), *abrogated on other grounds by Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) ("When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken . . . . Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions."); *Telenor Mobile Commc'ns AS v. Storm LLC*, No. 07 Civ. 6929 (GEL), 2009 WL 585968 at *2 (S.D.N.Y. Mar. 9, 2009) (noting Respondent's "considerable chutzpah" in its "determined effort . . . to frustrate their contractual obligations to Telenor, by willful noncompliance, subversion of the arbitration process, collusive litigations in Ukraine, and outright defiance of the arbitrators' award and this Court's orders" and awarding Petitioner 100% of its attorneys' fees in pursuing contempt motion granted against Respondent).

let alone credibly attempt to satisfy, the standard for dismissal on forum non conveniens grounds. Nor could it, given that substantial portions of the arbitration at issue were themselves conducted in New York, New York law governed contract at issue, and the arbitration was decided under New York law.  These facts, without more, fatally undermine Laos' forum argument.

Laos' remaining defenses are even flimsier.  **First**, Laos' claim that the Petition should be dismissed for lack of personal jurisdiction stands directly at odds with governing Second Circuit law; while acknowledging this, it has nonetheless interposed that defense (in a manner clearly inconsistent with Fed. R. Civ. P. 11) based on a claimed "circuit split" that simply does not exist.

**Second**, Laos' claim that the arbitration tribunal ("Tribunal") impermissibly "expanded their jurisdiction" represents nothing more than an improper attempt to re-characterize and re-litigate matters resolved by the Tribunal.  But this is not an appellate proceeding, and the Supreme Court and the Second Circuit have repeatedly ruled that parties may not seek to re-litigate arbitral rulings in the context of enforcement proceedings, particularly where, as here, the losing party's objections focus (however misleadingly) on issues of arbitral jurisdiction that the parties have, by incorporating the doctrine of competence-competence into their arbitration agreement, specifically authorized the arbitrators to resolve.[3]

---

[3] As the Court is aware, Laos' Motion to Dismiss also sought to stay these proceedings in favor of a Malaysian set-aside proceeding that it claimed had been commenced on September 30, 2010.  MTD, ¶¶ 58-61.  While counsel for Laos has stated that a Malaysian proceeding "will be" commenced, no such proceeding has been commenced as of the date hereof.  In any event, the filing of proceedings in Malaysia is immaterial to this motion, as Laos has withdrawn the prong of the Motion to Dismiss requesting a stay, and has further represented that it will not revive that request even in the event that it eventually files a set-aside proceeding in Malaysia.  Declaration of James E. Berger., dated Oct. 20, 2010 ("Berger Decl."), ¶ 2 & Exh. A.

In its contract with Petitioners, Laos expressly agreed that:

> Any award or determination of the arbitral panel shall be final, nonappealable, binding, and conclusive upon the parties, and judgment may be entered in any court of competent jurisdiction. ***The parties waive to the extent permitted by law any rights to appeal or any review of such award by any court or tribunal of competent jurisdiction.***

Affidavit of Wirach Nimmanwathana, dated Jun. 8, 2010 ("Nimmanwathana Aff."), ¶ 3 & Exh. A, art. 14.1 (vi) (emphasis supplied).  As this contract language makes clear, Laos has expressly waived all of the defenses that it now seeks to use to justify its refusal to acknowledge or pay the arbitral award that has been duly rendered against it.

In *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)* , 508 F.2d 969, 977 (2d Cir. 1974), a case involving defenses to enforcement that were virtually indistinguishable from those Laos has asserted here, the Second Circuit emphatically rejected an attempt by an award debtor to characterize the tribunal's award of a particular award of damages as a "jurisdictional" issue.  The Court emphasized both the strong presumption in favor of enforcing arbitral awards and the extremely narrow scope of review that can be applied to them.  Parsons is particularly instructive concerning the issues raised in this case, and the same result should obtain.  In sum, the parties' agreement, the UNCITRAL Rules, the New York Convention, the Federal Arbitration Act, and a long line of binding jurisprudence all require that the Final Award be promptly recognized and enforced by this Court, so as to allow Petitioners to obtain the benefit of their arbitral bargain without the need for additional time-consuming litigation.

## I.    This Court is Not an Inconvenient Forum

It is well-settled that dismissal on forum non conveniens grounds is an "extraordinary remedy" to be applied where proceeding in the plaintiff's chosen forum would lead to "oppressiveness and vexation to defendant . . . out of all proportion to plaintiff's convenience." *E.g., Armco Inc. v. N. Atl. Ins. Co. Ltd.*, 68 F. Supp. 2d 330, 341 (S.D.N.Y. 1999) (citation omitted). A party's choice of forum is presumed to be correct, *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir. 1996); *Varnelo v. Eastwind Transp. Ltd.*, No. 02 Civ. 2084 (KMW)(AJP), 2003 WL 230741, at *8 (S.D.N.Y. Feb. 3, 2003), and the defendant bears the burden of proving the inconvenience of the plaintiff's chosen forum. *See, e.g., Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, No. 05 Civ. 8546 (PKL), 2006 WL 738171, at *6 (S.D.N.Y. Mar. 22, 2006). Conclusory affidavits or contentions are accorded little weight in the forum analysis. *See Ingram Micro, Inc. v. Airoute Cargo Express, Inc.*, No. 99 Civ. 12480 (SAS), 2001 WL 282696, at *4 (S.D.N.Y. Mar. 22, 2001) (citation omitted). Laos has completely failed to meet its heavy burden of proving that this Court is an inconvenient forum.

Remarkably, Laos never asserts that these proceedings constitute a burden or that litigation in this Court is inconvenient: the closest it comes to even suggesting the inappropriateness of this forum is in the last sentence of Paragraph 43 of its motion, where it asks "[w]hy should a New York Court be compelled to expend its resources to enforce this Malaysian arbitral award?" MTD, ¶ 43. Laos also appears to complain, in *sotto voce*, that Petitioners' commencement of proceedings in the United States and London has "doubled [its] expenses of retaining counsel." *Id.* ¶ 52. As discussed further below, these mumbled, quizzical assertions of inconvenience simply fail to establish a prima facie demonstration that this forum is inconvenient as a matter of law. Laos' complaint about multiple proceedings is rendered

inapposite by the fact that the New York Convention expressly permits multiple proceedings in multiple fora, specifically to facilitate enforcement against award debtors who refuse to voluntarily satisfy awards. *See, e.g., Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 114 (2d Cir. 2007); *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 367 (5th Cir. 2003) ("By allowing concurrent enforcement and annulment actions, as well as simultaneous enforcement actions in third countries, the Convention necessarily envisions multiple proceedings that address the same substantive challenges to an arbitral award.").

Laos' failure to even state facts that would, if proved, satisfy the forum non conveniens test mandates rejection of its argument.  Petitioners are well within their rights to pursue enforcement in any nation that is a New York Convention signatory, and intend to do so if Laos continues in its refusal to acknowledge and pay the award.

### A.     Thailand is Not a Suitable Alternative Forum

Laos' suggestion of Thailand as an alternative forum is not well-taken.  While Laos has proffered the Affidavit of Chumpol Sonchai, which suggests that confirmation of the Award in Thailand would be quick and cheap, Petitioners have submitted herewith the Declaration of Jesadapon Watsa, an experienced Thai barrister with extensive experience litigating in the Thai courts.[4]  He states that any attempt to confirm the Award in the Thai courts would be costly, inconvenient and extremely time-consuming.  *See* Declaration of Jesadapon Watsa, dated Oct. 12, 2010 ("Jesadapon Decl."), at ¶ 4.  First, as Mr. Sonchai concedes, a Thai proceeding would have to be commenced and service made through letters rogatory, which typically takes at least

---

[4] Mr. Sonchai's Affidavit gives no indication that he is a barrister or that he has ever litigated a

nine months to effectuate.  If, of course, the Lao Government decides not to cooperate, the time

for service to be effected could be considerably longer.  Jesadapon Decl., ¶ 5.  While Laos

attempts to sidestep this problem by representing that it would agree to accept service in a Thai

proceeding in the same manner as in these proceedings, that representation is (whether wittingly

or not) illusory, as the service methods sanctioned by Thai law are mandatory and not subject to

waiver or modification by agreement of the parties (much like subject matter jurisdiction in

federal courts).  Jesadapon Decl., ¶ 6-7.

      Even if service could be effected, the confirmation process in Thailand would almost

certainly be far more time-consuming than in the United States, as the Thai courts do not provide

expedited procedures for the enforcement of arbitral awards.  Jesadapon Decl., ¶ 8.  To the

contrary, in practice, Thai confirmation proceedings generally involve a relitigation of the entire

dispute, with a re-presentation of witnesses and evidence.  Upon completion of the trial process,

any order would be subject to three levels of appeal, which can take *ten years* to complete.

Jesadapon Decl., ¶ 9. During that ten-year period, no assets could be attached, as judgments may

not be enforced while the judgment is on appeal; even once the judgment became enforceable,

compulsory enforcement must be undertaken through a court agency that presently has a five-

year backlog.  Jesadapon Decl., ¶ 11.  Finally, while Mr. Sonchai suggests that a Thai proceeding

would, by virtue of the respective cost of legal services, be cheaper,[5] the opposite is in fact true:

at the very least, documents would be required to be translated into Thai; the action would

require payment of a filing fee of approximately US$ 66,000; and Petitioners could be required

---

New York Convention proceeding (or any other type of case).

[5] Given that neither Mr. Sonchai nor Laos' counsel has any information pertaining to Petitioners'
legal expenses, their respective attempts to use cost as a factor in the forum non conveniens
analysis is grossly improper.

to post and maintain a litigation bond throughout the proceedings and pending the exhaustion of appeals. Jesadapon Decl., ¶ 14-15, 17.

Laos' stated desire to lighten this Court's workload by suggesting the parties go to Thailand is unsurprising, given the obstacles and cost to Petitioners of proceeding there. In sum, Thailand would *not* provide a suitable alternative forum, and courts have repeatedly held that that reality, without more, ends the forum non conveniens inquiry. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir. 1996) (in forum non conveniens analysis, "[f]irst, the district court asks if there is an alternative forum that has jurisdiction to hear the case."); *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005) ("The district court need not weigh any factors favoring dismissal, however, if no other forum to which the plaintiff may repair can grant the relief it may obtain in the forum it chose."); *In re Air Crash near Nantucket Island, Mass., on October 31, 1999*, No. 00-MDL-1344, 2004 WL 1824385, at *4 (E.D.N.Y. Aug. 16, 2004) ("Only if there is an adequate alternative forum must the court then weigh the relative convenience to the parties against the presumption of the plaintiff's forum selection.").

### B.    The United States is Not an Inconvenient Forum

Further undermining Laos' forum argument is the fact that New York played a central role in the arbitration that Laos now seeks to repudiate. As noted above, Laos never actually claims, as it must, that the United States is an inconvenient forum. Nor does it make any attempt to demonstrate that any supposed inconvenience inherent in litigating the case here outweighs the presumption that Petitioners' choice of this forum is valid. Nor could it: all three of the arbitrators are from the United States; two are from New York. Nimmanwathana Aff. ¶ 7. More importantly, while the arbitration was legally sited in Malaysia, two of the three arbitral sessions

were conducted in New York.  *See* Nimmanwathana Aff., ¶ 9.  As Laos had no apparent objection to travelling to this forum twice during the arbitration, any complaint it seeks to raise now regarding the convenience of this forum simply rings hollow.  *See Motion Picture Lab. Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc.*, 804 F.2d 16, 18 (2d Cir. 1986) (where arbitration hearing is held in a particular location, "the parties already have indicated that the location is mutually convenient to settle their dispute" for purpose of determining proper forum for confirmation of arbitral award).  Furthermore, courts have held that the forum court's familiarity in applying the law governing the dispute weighs against forum non conveniens dismissal.[6]  *See Lafarge Canada, Inc. v. Bank of China*, No. 00 Civ. 0261 (LMM), 2000 WL 1457012, at *4 (S.D.N.Y. Sept. 29, 2000) (finding that "because the parties selected 'United States law' to govern the contract, the Court will not be burdened with applying foreign law or dealing with complicated conflicts of law issues" and denying defendant's forum non conveniens challenge).  Thus, the fact that the contract at issue in this arbitration was governed by New York law, Nimmanwathana Aff. ¶ 2 & Exh. A, art. 14.1 (iv), and that the dispute was considered and adjudicated by the Tribunal under New York law, *see* Nimmanwathana Aff. ¶ 10 & Exh. B, at 22-46, ¶¶ 72-133, weigh against dismissal.

Finally, Laos has never denied having attachable assets in New York, and Petitioners believe it is likely that executable property interests are or will be present in this district.[7]  In the

---

[6] Courts have found the law governing the underlying contract to be a relevant factor in determining proper forum even in domestic venue cases, where an adequate alternative U.S. forum is assumed.  *See Am. Steamship Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. A., Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007) ("While federal courts in other states are capable of construing New York law, especially . . . the forum's familiarity with the governing law may be a factor . . ." when determining proper forum).

[7] Petitioners have served discovery designed, in part, to determine whether and to what extent Laos and/or its corporate agents and alter egos have assets in the United States.

event the award is confirmed, Petitioners intend to commence enforcement and execution proceedings against any such assets in this Court, a fact that, without more, renders New York a convenient forum. *See Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 498-501 (2d Cir. 2002) (holding that a foreign forum would be a sufficient venue since assets subject to seizure were located there); *Higgins v. SPX Corp.*, No. 05 Civ. 846, 2006 WL 1008677, *4 (W.D. Mich. Apr. 18, 2006) (declining to dismiss motion to confirm Brazilian arbitration award and noting that presence of assets in forum state rendered the forum convenient); *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005) (affirming refusal to dismiss action to enforce foreign arbitral award on forum *non conveniens* grounds, holding that although defendant denied owning attachable property in the United States, it might own such property in the future, and noting that no other forum could grant the relief requested since "only a court of the United States ... may attach the commercial property of a foreign nation located in the United States").

Like virtually every recalcitrant award debtor hoping to avoid U.S. enforcement, Laos attempts to analogize this case to the Second Circuit's decision in *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488 (2d Cir. 2002). Even a cursory comparison of the facts of that case to this one, however, shows *Monegasque* to be inapposite. The Second Circuit's decision in *Monegasque* was animated largely by the fact that the U.S. confirmation proceedings were complicated by the petitioner's decision to implead the government of Ukraine. In fact, the court in *Monegasque* expressly held that "the private interest factors might not ordinarily weigh in favor of *forum non conveniens* dismissal in a summary proceeding to confirm an arbitration award," but distinguished that case because it "[did] not lend itself to summary disposition." *Monegasque*, 311 F.3d at 500. This case, on the other hand, does not

10

involve any of the complicating factors present in *Monegasque*; Petitioners do not seek to

implead any third parties, and this proceeding, unlike that in *Monegasque*, can and should be

adjudicated in a summary fashion. These facts, coupled with this case's clear connections to

New York and the fact that executable assets may be located here, render *Monegasque*

inapposite and undermine Laos' attempt to demonstrate that this Court is an inconvenient forum.

## II.    This Court has *In Personam* Jurisdiction Over Laos

Respondent's claim that this court lacks personal jurisdiction over it is both meritless and

improper. There is no question that this Court has personal jurisdiction under 28 U.S.C.

§ 1330(b),[8] which provides that in any case where subject matter jurisdiction exists under 28

U.S.C. § 1330(a) exists, and where proper service has been effected pursuant to Section 1608 of

the Foreign Sovereign Immunities Act, personal jurisdiction exists. Laos has not claimed that

subject matter jurisdiction is lacking, and it expressly consented to Petitioners' service of

---

[8] Laos is a "foreign state" within the meaning of 28 U.S.C. § 1603(a), and this Court has subject matter jurisdiction over "any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title" under 28 U.S.C. § 1330(a). The record establishes that Laos is not entitled to immunity herein, for at least two reasons. First, Laos has expressly waived any claim to sovereign immunity in connection with this matter by agreeing in its contract with Petitioners that "[e]ach of the parties hereto irrevocably waives, to the fullest extent permitted by applicable law, all immunity (whether on the basis of sovereignty or otherwise) from jurisdiction, attachment (both before and after judgment), and execution to which it might otherwise be entitled in any action or proceeding relating in any way to this Agreement in the courts of the Lao People's Democratic Republic or the Kingdom of Thailand or other relevant jurisdictions, and neither party will raise or claim or cause to be pleaded any such immunity at or in respect of any such action or proceeding." Nimmanwathana Aff., ¶ 5 & Exh. A, art. 14.2. Nor would Laos be entitled to immunity as a result of Section 1605(a)(6) of the FSIA as this proceeding is brought by Petitioners to enforce an arbitration award. Because this Court has subject matter jurisdiction over this proceeding pursuant to Section 1330(a), and because Petitioners properly effected service on Laos pursuant to 28 U.S.C. § 1608(a), Section 1330(b) confers personal jurisdiction on this Court "as to every claim for relief." 28 U.S.C. § 1330(b).

process. Berger Decl.¶ 4 & Exh. B. There is simply no question, therefore, that personal jurisdiction is present under Section 1330(b).

No doubt understanding this, and further acknowledging that its due process argument is foreclosed by the Second Circuit's recent decision in *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Rep.*, 582 F.3d 393 (2d Cir. 2009), which held expressly (in a decision approved by the full Court of Appeals through its "mini en banc" procedure) that foreign states and their instrumentalities are not entitled to the jurisdictional protections of the Due Process Clause, Laos has "object[ed] to jurisdiction," MTD, ¶ 57, based on two out-of-circuit cases that are not only completely inapposite, but cannot form the basis for any conceivable "circuit split." Neither of the cases that Laos cites, *Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208 (4th Cir. 2002) or *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002), is applicable in this instance because neither involved a defendant that was a foreign state. While both of those cases held that a ***non-state*** foreign defendant must be afforded constitutional due process protections before a court may exercise jurisdiction over that defendant (something *Frontera* itself recognizes), neither case considered the issue of whether a foreign state within the meaning of 28 U.S.C. § 1603(a) is entitled to the same protections. Indeed, ***every*** federal court to address the issue that *Frontera* decided has reached the same result. *See I.T. Consultants, Inc. v. Islamic Rep. of Pakistan*, 351 F.3d 1184, 1191 (D.C. Cir. 2003) (declining to conduct minimum contacts analysis because foreign states are not "persons" protected by the Fifth Amendment); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002) ("[W]e hold that foreign states are not 'persons' protected by the Fifth Amendment."); *Valore v. Islamic Rep. of Iran*, 700 F. Supp. 2d 52, 71 (D.D.C. 2010) ("Moreover, because states of the United States are

not persons entitled to the Fifth Amendment Due Process protections . . . 'absent some

compelling reason to treat foreign sovereigns more favorably than 'States of the Union,' it would

make no sense to view foreign states as 'persons' under the Due Process Clause . . .'"); *Capital*

*Ventures Int'l v. Rep. of Argentina*, No. 05 Civ. 4085 (TPG), 2010 WL 1257611, at *3 (S.D.N.Y.

Mar. 31, 2010) ("[F]oreign states are not 'persons' entitled to rights under the Due Process

Clause ....") (citing *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan*

*Republic*, 582 F.3d 393, 400 (2d Cir. 2009)); *Rux v. Rep. of Sudan*, No. 04 Civ. 428, 2005 WL

2086202, at **13, 18-19 (E.D. Va. Aug. 26, 2005) ("the Due Process Clause does not apply to

foreign states"); *Cruz v. U.S.*, 387 F. Supp. 2d 1057, 1067 (N.D. Cal. 2005) ("the reasoning of

*Price*, which this Court finds sound, counsels against affording the Mexican banks in this case

the status of 'persons' within the scope of that term as used in the Due Process Clause");

*Altmann v. Rep. of Austria*, 142 F. Supp. 2d 1187, 1208 (C.D. Cal. 2001) ("this Court holds that

a foreign state is not a "person" under the Due Process Clause"), *aff'd on other grounds*, 317

F.3d 954 (9th Cir. 2002), *aff'd on other grounds*, 551 U.S. 677 (2004).

  As a matter of binding Circuit law, Laos is not entitled to "the fundamental safeguards of

the due process clause," and the statutory conferral of personal jurisdiction over it pursuant to 28

U.S.C. § 1330(b) is not subject to any notions of minimum contacts or due process. *Frontera*,

582 F.3d at 399. Laos has not (as it must, in order to maintain its argument in compliance with

Fed. R. Civ. P. 11) supported its jurisdictional objection with any claim that *Frontera* was

wrongly decided or that it is inapplicable in this case; that objection must, therefore, be rejected.

## III.   Laos Has Failed to Establish any Grounds for Non-Recognition

  Laos' substantive attack on the Final Award fares no better than its jurisdictional

arguments, and it too must be rejected as an improper attempt to relitigate matters that the parties and Tribunal addressed at length, and that were resolved conclusively, in the arbitration.

### A.   The Proper Standard of Review

It is important to underscore the basic principles of review that govern this proceeding, as Laos has fundamentally misstated them.  While Laos' objections necessarily invite this Court to review the correctness of the Tribunal's conclusions, it is well-established that U.S. courts considering petitions to enforce an arbitral award under the New York Convention *do not* sit as appellate courts with plenary authority to ferret out alleged errors in the Tribunal's work.  To the contrary, U.S. courts' authority to review the findings of an international arbitral tribunal is extremely limited, and a party resisting confirmation bears an unusually heavy burden to prove that one of the exclusive grounds for non-recognition set forth in the New York Convention applies. *See, e.g, Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys 'R' Us, Inc.*, 126 F.3d 15, 20 (2d Cir. 1997) (noting that grounds for non-recognition set forth in article V of New York Convention are exclusive); *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) ("Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.") (citation omitted); *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 125 (2d Cir. 2007) (same) (citations omitted).[9]

---

[9] Moreover, courts from this and other circuits have recognized that sanctions pursuant to Rule 11 are appropriate where a party challenges an award with no colorable legal or factual basis for doing so. *See, e.g., B.L. Harbert Int'l v. Hercules Steel Co.*, 441 F.3d 905, 914 (11th Cir. 2006),

Likely aware of these limitations on judicial review, Laos has characterized its arguments

to this Court as "jurisdictional" and claimed that the Tribunal somehow "exceeded its authority"

by permitting HLL to stand as a claimant and by awarding Petitioners certain costs that were

advanced to them by affiliated companies.  Here again, however, Laos' objections are fatally

undermined by a clear body of Supreme Court and Second Circuit caselaw holding that, where,

as here, the parties have authorized the arbitrators to resolve and determine the scope of their

jurisdiction, the tribunal's resulting jurisdictional determinations are essentially beyond the scope

of judicial scrutiny, since to permit a court to second-guess a decision that the parties have

expressly remitted to the arbitrators would constitute an impermissible abrogation of the parties'

agreement.  *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)

(explaining that where the parties clearly and unmistakably agreed to arbitrate issue of

arbitrability, court must defer to arbitrator's decision on arbitrability); *T.Co Metals, LLC v.*

*Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 345 (2d Cir. 2010) (holding that based on extensive

evidence of parties' intent to submit issue of scope of arbitrator's powers to arbitrator for

---

*abrogated on other grounds by Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)
("When a party who loses an arbitration award assumes a never-say-die attitude and drags the
dispute through the court system without an objectively reasonable belief it will prevail, the
promise of arbitration is broken . . . . Courts cannot prevent parties from trying to convert
arbitration losses into court victories, but it may be that we can and should insist that if a party on
the short end of an arbitration award attacks that award in court without any real legal basis for
doing so, that party should pay sanctions."); *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698,
708 (2d Cir. 1985) (upholding the imposition of sanctions where the district judge concluded that
the plaintiff "had presented 'frivolous, unreasonable and groundless' opposition to [the
defendant's] motion to confirm the arbitration award"); *Prospect Capital Corp. v. Enmon*, No.
08 Civ. 3721 (LBS), 2010 WL 907956, at *7 (S.D.N.Y. Mar. 9, 2010) (granting sanctions against
party that persisted in bringing frivolous arguments that misrepresented the record in opposing
petitioner's motion to confirm); *Manning v. Smith Barney, Harris Upham & Co.*, 822 F. Supp.
1081, 1083-84 (S.D.N.Y. 1993) (imposing sanctions and noting "that sanctions are peculiarly
appropriate in the context of a challenge to an arbitration award which appears to be a largely
dilatory effort"); *Quick & Reilly, Inc. v. Jacobson*, 126 F.R.D. 24, 28 (S.D.N.Y. 1989) (finding
the plaintiffs' opposition to the confirmation of the award was meritless and imposing sanctions).

consideration, "this Court must afford significant deference to the arbitrator's interpretation of that rule"). This doctrine, which narrows the (already narrow) scope of review, simply forecloses Laos' substantive objections to the award.

### B.      Laos' Objections Fail on their Face to State a Ground for Non-Recognition

As an initial matter, Laos asserts that its objection to confirmation is predicated on Article V(1)(a) of the New York Convention, which provides as follows:

> 1.      Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> > (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made.

New York Convention, art. V(1)(a). Laos has not claimed that the parties were under any incapacity; nor has it claimed that the PDA is invalid under the law of any state. The substance of Laos' objections to the Final Award, therefore, simply fails to implicate, let alone prove, either of the grounds for non-recognition set forth in the specific provision of the New York Convention that Laos has invoked. Laos' objections should be rejected and overruled for that reason alone, and Laos should be held to have waived any right to object under any other provision of Article V. *See, e.g., Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256, 261 (2d Cir. 2002) (defendant waived defense by failing to raise issue in a pre-answer motion or responsive pleading).

### C.   Even if Cognizable Under Article V, Laos' Objections are Substantively Meritless

Even were the Court inclined to canvass the text of article V in an attempt to "match" Laos' objections to one of article V's exclusive grounds for non-recognition – a difficult task in itself that federal law gives this Court no warrant to undertake – Laos' objections remain substantively deficient as a matter of fact and law.  Each of the Tribunal's conclusions regarding the parties, its jurisdiction, and Petitioners' right to recover costs advanced to them by affiliated companies has a basis in the record; under well-established law, the existence of such a basis for those conclusions mandates that the award be confirmed and enforced.  *Halcot Navigation L.P. v. Stolt-Nielsen Transp. Group, BV*, 491 F. Supp. 2d 413, 421 (S.D.N.Y. 2007) ("The Second Circuit has held that any plausible reading of an award that fits within the law will sustain it.").

### 1.   The Parties' Agreement Authorizing the Tribunal to Determine its Jurisdiction Substantially Curtails, if not Forecloses, Judicial Review of its Exercise of Jurisdiction

Presumably aware that neither the New York Convention nor the FAA authorizes this Court to refuse to recognize the Final Award on the basis of any errors of law or fact, Laos has sought to transmute its claims of error into "jurisdictional" terms.  Laos goes further by suggesting that this Court is somehow required to engage in a de novo inquiry concerning whether the Tribunal exceeded its authority, relying on the Second Circuit's decision in *Sarhank Group. v. Oracle Corp.*, 404 F.3d 657 (2d Cir. 2005).

Even if Laos' argument were correct on its own terms – and, as discussed below, it is not – the argument conveniently overlooks the important principle, well-established in this Circuit, that where parties to an arbitration agreement have authorized an arbitration tribunal to determine its own jurisdiction, the authority of a court to review the resulting jurisdictional

findings is exceedingly narrow. *First Options,* 514 U.S. at 943 (" . . . [A] court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration."); *T.Co Metals,* 592 F.3d at 345 (rejecting claim that arbitrator violated doctrine of *functus officio* by reconsidering certain aspects of the award where the arbitral rules at issue empowered him to determine his own jurisdiction and where reconsideration was undertaken pursuant to arbitrator's interpretation of those rules, and holding further that based on extensive evidence of parties' intent to submit issue of scope of arbitrator's powers to arbitrator for consideration, "this Court must afford significant deference to the arbitrator's interpretation of that rule").

Here, there is no question that the parties authorized the Tribunal to determine its own jurisdiction, and that this Court must give substantial, if not conclusive, deference to the findings to which Laos objects. The PDA's arbitration agreement provides for arbitration pursuant to the UNCITRAL arbitration rules, and those rules were in fact used in the arbitration. The UNCITRAL rules provide, in pertinent part, that "[t]he arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement." UNCITRAL Rules, Art. 21. The Second Circuit has ruled repeatedly that where parties have agreed to arbitrate pursuant to a set of rules that authorizes the arbitrators to determine their own jurisdiction, they have indicated their agreement to arbitral determination of jurisdiction. *See T.Co Metals,* 592 F.3d at 344 ("[T]he parties' adoption of the ICDR Articles, including Article 36, in their arbitration agreements provides a 'clear and unmistakable' expression of their intent to allocate to the arbitrator the task of interpreting the scope of his powers and duties under Article 30(1)."); *see also Alliance Bernstein Inv. Research and Mgmt., Inc. v. Schaffran,* 445 F.3d 121, 126 (2d Cir. 2006) (finding clear and unmistakable intent to submit arbitrability issues

to arbitrators through parties' agreement to NASD rules, which authorized arbitrators to interpret whether arbitration provisions applied); *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (finding clear and unmistakable intent to submit arbitrability issues to arbitrators through parties' agreement to arbitrate under AAA commercial rules, including Rule R-7a, which provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.").

### 2.     The Tribunal's Findings are Amply Supported by the Record

Because it is clear that the narrowest standard of review applies to Laos' objections, it is equally clear that those objections fail to establish grounds for non-recognition. Laos argues that the Tribunal "exceeded its authority" by allegedly "arbitrating disputes relating to the termination of the Mining Contracts with TLL and HLL" and by arbitrating claims brought by "the Other Siva Companies." MTD, ¶¶ 91, 94, 104. Laos raised each of these points in the arbitration. The first, concerning HLL's standing, was raised in virtually the same manner as it is raised herein. Berger Decl., ¶¶ 5-7 & Exh. C, § 4.6; Exh. D, §§ 3.1, 3.5.2.2; Exh. E, §§ 2.2, 6.3.4. The second, concerning TLL's entitlement to compensation for costs paid by non-parties, was raised as a factual issue relating to the quantum of damages, and was the subject of extensive expert testimony. Berger Decl., ¶¶ 6-7 & Exh. D, § 3.5.2.2; Exh. E, §§ 2.3, 6.3.4. Laos has now rehashed that argument into an objection to jurisdiction, no doubt with Article V in mind.[10] The

---

[10] Laos never claimed that HLL's presence as a party, or its consideration of costs incurred by Petitioners' corporate affiliates, constituted a jurisdictional defect that rendered the arbitral proceedings legally improper. Accordingly, while Laos clearly (albeit unsuccessfully) raised the objections it raises herein during the arbitration, its failure to specifically claim that these matters undermined the tribunal's jurisdiction constituted a waiver of its right to make those objections in this Court. *See, e.g., Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) ("[I]f Maiellano failed to raise the issue of the forged 1979 agreement to the

Tribunal rejected Laos' arguments; this Court must do the same.

### a.    The Tribunal had an Ample Basis for Finding that HLL was an Intended Third Party Beneficiary

Laos' objections to the Tribunal's finding that HLL had standing in the arbitration is easily dispensed with. During the arbitration, Laos made extensive arguments that HLL was not a proper claimant; Petitioners made equally extensive arguments that it was. Specifically, Petitioners demonstrated to the Tribunal that three sections of the PDA – those which expressly provided that HLL's rights under the prior contracts were vested and that the PDA superseded any previous understandings, while further specifying that any rights that HLL had under the prior agreements that were greater than those afforded by the PDA would "remain in full force and undisturbed" – established that HLL was an intended third-party beneficiary of the PDA, and thus had standing to make a claim under in the arbitration. Berger Decl., ¶ 8 & Exh. F, §§ 2.7, 5.1.4. Given the limited scope of review that this Court may apply to the Tribunal's determination that HLL was a proper party to the arbitration, there can be no doubt that these contractual provisions, coupled with the extensive discussion of the respective rights of TLL and HLL and the interrelationship between the PDA and the Prior Contract contained in Petitioners' memorials, and the Witness Statements of Siva Nganthavee and Wirach Nimmanwathana, provided the Tribunal with a basis upon which to conclude that HLL was an intended third-party beneficiary under the PDA.

---

arbitrators, the issue is forfeited.") (citing *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993) (issues not raised before arbitrator are waived in enforcement proceeding)); *Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera*, 745 F. Supp. 172, 180 (S.D.N.Y. 1990) (holding that party that failed to raise an objection during foreign arbitration proceeding had waived such objection and could not raise it for first time in action to enforce award pursuant to New York Convention).

Laos' reliance on a Ninth Circuit case involving an arbitration over statutory ERISA benefits to support its argument that the Tribunal exceeded its authority[11] is unhelpful to its position, for several reasons.  The *Comer* case involved a domestic arbitration, where the scope of judicial review (under Chapter 1 of the FAA) is considerably broader than it is in this case (which is governed by the New York Convention and Chapter 2).  Moreover, there is no indication in *Comer* that the parties agreed, as they did here, to vest the arbitrator with authority to determine the scope of his jurisdiction.  Simply stated, the Ninth Circuit's conclusions, reached after a de novo review of a domestic arbitration concerning a statutory benefit plan, have no precedential or persuasive bearing on this case.  More fundamentally, however, Laos' reliance on *Comer*, coupled with its careful parsing of the specific provisions of the PDA and the Mining Contracts in order to support its argument, represents a clear invitation to this Court to do what the Second Circuit has said repeatedly it may not do:  to scrutinize the Tribunal's conclusions to see if they were correct as a matter of fact or law.[12]

> **b.   Laos' Arguments that the Award Constituted an Extension of Jurisdiction over the "Other Siva Companies" is an Impermissible Rehash of its Damages Argument from the Arbitration, and is Substantively Meritless**

Laos' second substantive argument – that it was somehow forced to "arbitrate with SEAP" and the "Other Siva Companies" – also rests on a mischaracterization, and must be rejected.  Notwithstanding Laos' suggestion, Petitioners have never claimed – in the arbitration or anywhere else – that SEAP and TLP "acquired rights or obligations under the PDA."  MTD, ¶

---

[11] MTD, at ¶ 79 (citing *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006)).

[12] Equally inapposite is Laos' invocation of the Second Circuit's decision in *U.K. v. Boeing, Co.*, 998 F.2d 68 (2d Cir. 1993).  Petitioners never sought to "consolidate separate cases because it seems to them to be efficient" – nor did the Tribunal purport to do anything of the sort.  Petitioners claimed that HLL was a proper party to an arbitration commenced under the PDA;

97. Nor did Petitioners bring the arbitration in those companies' names, or seek to add them as parties. As a review of the arbitration record and the Final Award makes clear, Petitioners merely sought to recover amounts that had been advanced – either to Petitioners or on their behalf – by these other corporate affiliates. The Tribunal agreed, finding that

> During the period from 1994 through 1997, TLL and HLL commissioned a number of studies for development of the Hongsa Project, performed road construction in Laos, and discussed financing arrangements with a number of parties. ***Claimants provided the funds for all of these activities from their own resources and advances by related entities (principally a firm named South East Asia Power Co., Ltd., or "SEAP")***, as well as from Thai bank borrowings.

Nimmanwathana Aff., ¶ 10 & Exh. B, ¶ 15 (emphasis supplied). Viewed, as it must be, in this context, Laos' objection related to the "Other Siva Companies" reveals itself as nothing more than a claim that the Tribunal committed an error of law or fact in calculating and awarding damages, rather than a "jurisdictional" argument. Notably, that is precisely how Laos framed this issue in its Closing Memorial to the Tribunal. *See* Berger Decl., ¶ 9 & Exh. G, § 5.3.1.2 (Section of Laos' Closing Memorial claiming that "Claimants Have Improperly Claimed Expenses Incurred by Non-Parties" and objecting to Petitioners' damages claim on the ground that "Claimants did not distinguish amounts they incurred or paid for project costs from amounts incurred or paid by their non-party affiliates").

The Tribunal's decision to allow Petitioners to recover monies advanced to it by its corporate affiliates clearly enjoys a basis in the arbitral record and should not be disturbed here. Petitioners' financial expert at the arbitration, Bill Hutchinson of Grant Thornton, explained repeatedly the basis and accounting treatment underlying Petitioners' claim to recover their

---

the parties contested that claim extensively, and the Tribunal accepted it.

investments and those advanced on their behalf by their affiliated companies, noted expressly that Grant Thornton had applied a "pro-forma group approach" in analyzing Petitioners' investment costs.  He stated in response to Ernst & Young's (Laos' financial expert in the arbitration) criticism of this approach that it "[i]s very common practice between related companies that one party may incur a cost on behalf of another or may pay a debt on behalf of another."  *See* Berger Decl., ¶¶ 10-11 & Exhs. H, at 7; Exh. I, at 5.  In sum, the exchange between Grant Thornton and Ernst & Young during the arbitration demonstrates two things, each of which undermines Laos' argument that the Tribunal considered claims on behalf of the "other Siva Entities."  First, that the parties' dispute over the recoverability of project costs paid by Petitioners' affiliates is a dispute over accounting methodology and remedies, not "jurisdiction."  Second, that the Tribunal's determination that Petitioners were entitled to recover costs advanced on their behalf by those affiliated companies had ample support in the record.

Laos' Article V objections are very similar to those raised in *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 977 (2d Cir. 1974), a foundational case in the Second Circuit's arbitration jurisprudence, and that decision is particularly instructive here.  In *Parsons & Whittemore*, the parties, Petitioner Parsons and Respondent RAKTA, had entered into a contract for the construction and operation of a paperboard mill in Alexandria, Egypt.  The contract contained a force majeure clause that excused delays in performance due to causes beyond Parsons' reasonable control.  Construction was halted by the Arab-Israeli Six Day War, during which the Egyptian government broke diplomatic ties with the United States and ordered all U.S. citizens out of the country, except those who obtained a special visa from the government.  Upon this pronouncement, Parsons abandoned the project and believed the postponement of the project to be excused by the force

majeure clause.  RAKTA disagreed, and Parsons sought arbitration of the issue. The ICC

arbitration tribunal ultimately ruled that Parsons did not make reasonable efforts to secure a

special visa, and that its unilateral withdrawal from the project was not excused.  RAKTA

eventually petitioned to confirm the award under the New York Convention; in response,

Parsons asserted, as Laos does here, that the arbitrators had exceeded the scope of their powers.

Specifically, Parsons alleged that the tribunal did not have the authority to consider certain costs

because the contract included a clause expressly exempting either party from liability for such

costs.

The Court of Appeals, in a manner that foreshadowed its future arbitration-related

jurisprudence, opened its analysis by noting that "[Parsons] must . . . overcome a powerful

presumption that the arbitral body acted within its powers." *Id.* at 976.  The Court rejected

Parsons' attempt to characterize the tribunal's award for start-up expenses and costs as

"consequential damages" proscribed by the arbitration agreement, finding that "[Parsons] is . . .

attempting to secure a reconstruction in this court of the contract – an activity wholly

inconsistent with the deference due arbitral decisions on law and fact." *Id.*  Explaining that

"[a]lthough the Convention recognizes that an award may not be enforced where predicated on a

subject matter outside the arbitrator's jurisdiction, it does not sanction second-guessing the

arbitrator's construction of the parties' agreement." *Id.* at 977.

Here, as in *Parsons*, Laos' is attempting to avoid its obligations under the Final Award by

recharacterizing the Tribunal's interpretation of the PDA and its authority thereunder as

"jurisdictional."  As in *Parsons*, that attempt lacks merit and should be rejected.

In sum, while couched as issues of jurisdiction, Laos' objections are nothing more than

garden variety assertions that the Tribunal committed errors of fact or law, and they must be rejected on that ground alone.   It is well-settled under Second Circuit law that "[a]bsent extraordinary circumstances, a confirming court is not to reconsider the arbitrator's findings." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998).   Accordingly, even if Laos *could* demonstrate that the arbitrators committed errors of fact or law, such a showing does not provide a basis for non-recognition of the award.   *Europcar Italia*, 156 F.3d at 316 ("[E]ven if the arbitrators erroneously determined that the 1979 agreement was valid, an arbitration award cannot be avoided solely on the ground that the arbitrator may have made an error of law or fact."); *Telenor Mobile Commc'ns, AS v. Storm LLC*, 587 F. Supp. 2d 594, 604 (S.D.N.Y. 2008) ("'[C]ourts play only a limited role when asked to review the decision of an arbitrator' and may not 'reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'") (citing *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338*, 118 F.3d 892, 896 (2d Cir. 1997)); *Halcot*, 491 F. Supp. 2d at 421.

## Conclusion

Laos' Motion to Dismiss should be denied, its objections to recognition should be overruled, the Petition should be granted, and the Final Award should be confirmed and judgment entered thereon, for all the foregoing reasons.

Dated:       New York, New York
             October 20, 2010

                              Respectfully submitted,

                              _____
                              James E. Berger (JB 6605)
                              Charlene C. Sun (CS 1281)
                              Paul, Hastings, Janofsky & Walker LLP
                              75 East 55 Street
                              New York, New York 10022
                              (212) 318-6000
                              *jamesberger@paulhastings.com*
                              *charlenesun@paulhastings.com*


                              Christopher F. Dugan, *pro hac vice*
                              Maria T. Davis
                              Paul, Hastings, Janofsky & Walker LLP
                              875 15th Street N.W.
                              Washington, DC  20005
                              (202) 551-1723
                              *chrisdugan@paulhastings.com*


                              *Attorneys for Petitioners Thai-Lao Lignite*
                              *(Thailand) Co., Ltd. & Hongsa Lignite (Lao PDR)*
                              *Co., Ltd.*


LEGAL_US_E # 89969389.6


                                      26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THAI-LAO LIGNITE (THAILAND) CO., LTD. &
HONGSA LIGNITE (LAO PDR) CO., LTD,

**Index No.  10 Civ. 5256 (KMW)**

Petitioners,

v.

GOVERNMENT OF THE LAO PEOPLE'S
DEMOCRATIC REPUBLIC,

Respondent.

---

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2010, a copy of the foregoing (1) MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS PETITION, (2) DECLARATION OF JAMES E. BERGER and (3) DECLARATION OF JESADAPON WATSA was filed electronically through the Court's CM/ECF System.  Notice of this filing will be sent by e-mail to all parties by operation of this Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

October 20, 2010

Donald M. Chiano