UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THAI-LAO LIGNITE (THAILAND) CO., LTD. & HONGSA LIGNITE (LAO PDR) CO., LTD,<br><br>     Petitioners,<br><br>     v.<br><br>GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC,<br><br>     Respondent. | Index No. 10 Civ. 5256 (KMW) |

## PETITIONERS' SUR-REPLY MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

James E. Berger (JB 6605)
Charlene C. Sun (CS 1281)
Paul, Hastings, Janofsky & Walker LLP
75 East 55 Street
New York, New York 10022
(212) 318-6000
*jamesberger@paulhastings.com*
*charlenesun@paulhastings.com*

Christopher F. Dugan, *pro hac vice*
Paul, Hastings, Janofsky & Walker LLP
875 15th Street N.W.
Washington, DC 20005
(202) 551-1723
*chrisdugan@paulhastings.com*

*Attorneys for Petitioners Thai-Lao Lignite (Thailand) Co., Ltd. & Hongsa Lignite (Lao PDR) Co., Ltd.*

# TABLE OF CONTENTS

Page

A. FORUM NON CONVENIENS ................................................................................................1

   1. Laos Has Still Failed to State a Prima Facie Defense of Forum Non Conveniens ....................................................................................................................1

   2. Mr. Watsa's Declaration ............................................................................................3

B. RESPONDENT'S JURISDICTIONAL OBJECTIONS ........................................................4

   1. Respondent's Failure to Properly Invoke Article V of the New York Convention ..................................................................................................................4

   2. The Proper Scope of Review ......................................................................................6

   3. The Tribunal's Decision .............................................................................................8

CONCLUSION .................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blount v. Conn. Gen. Life Ins. Co.*,
  No. CV 01-1341-BR, 2002 WL 31974405 (D. Or. July 2, 2002) ............................................. 3

*Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n*,
  361 F.3d 676 (2d Cir. 2004) ...................................................................................................... 4

*Contec Corp. v. Remote Solution, Ltd.*,
  398 F.3d 205 (2005) ............................................................................................................... 7, 8

*Duferco Int'l Steel Trading v. T. Klaveness Shipping*,
  333 F.3d 383 (2d Cir. 2003) ................................................................................................ 9, 10

*Figueiredo Ferraz Consultoria E Engenharia De Projeto Ltda. v. Republic of Peru*,
  655 F. Supp. 2d 361 (S.D.N.Y. 2009) ....................................................................................... 3

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ................................................................................................................... 7

*Grynberg v. BP P.L.C.*,
  596 F. Supp. 2d 74 (D.D.C. 2009) ............................................................................................. 8

*Hall Street Assocs. v. Mattel, Inc.*,
  552 U.S. 576 (2008) ................................................................................................................. 10

*Hoeft v. MVL Group, Inc.*,
  343 F.3d 57 (2d Cir. 2003), ..................................................................................................... 10

*In re Enron Corp. Securities, Derivative & "Erisa" Litigation*,
  No. Civ. A. H-01-3624, 2003 WL 23316646 (S.D. Tex. Mar. 27, 2003) ................................. 3

*Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*,
  143 F.3d 704 (2d Cir. 1998) ...................................................................................................... 9

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  335 F.3d 357 (5th Cir. 2003) ..................................................................................................... 2

*Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union*,
  954 F.2d 794 (2d Cir. 1992) .................................................................................................... 10

*Murray v. British Broad. Corp.*,
  81 F.3d 287 (2d Cir. 1996) ........................................................................................................ 2

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier,*
  508 F.2d 969 (2d Cir. 1974) ............................................................................................ 4

*Sony Ericsson Mobile Commc'n AB v. Delta Elec. (Thailand) Pub. Co. Ltd.,*
  No. C-09-1326, 2009 WL 1874063 (N.D. Cal. Jun. 26, 2009) ..................................... 2

*T. Co. Metals v. Dempsey Pipe & Supply, Inc.,*
  592 F.3d 329 (2d Cir. 2010) .................................................................................. 6, 7, 8

*Telenor Mobile Commc'n AS v. Storm LLC,*
  524 F. Supp. 2d 332 (S.D.N.Y. 2007) ........................................................................... 8

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.,*
  363 U.S. 593 (1960) ...................................................................................................... 9

*Wal-Mart Stores, Inc. v. PT Multipolar Corp.,*
  202 F.3d 280, 1999 WL 1079625 (9th Cir. Nov. 30, 1999) .......................................... 8

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,*
  304 F.3d 200 (2d Cir. 2002) ........................................................................................ 10

*Wiwa v. Royal Dutch Petroleum Co.,*
  226 F.3d 88 (2d Cir. 2000) ............................................................................................ 2

## STATUTES

9 U.S.C. § 207 ........................................................................................................................ 4

28 U.S.C. § 1330(b) ................................................................................................................ 1

Pursuant to the Court's November 8, 2010 order, Petitioners Thai-Lao Lignite (Thailand) Co., Ltd. ("TLL") and Hongsa Lignite (Lao PDR) Co., Ltd. ("HLL") respectfully submit this sur-reply memorandum in opposition to Respondent's Motion to Dismiss ("Motion").

Initially, Petitioners note that Respondent has dropped another of its defenses; Respondent's reply does not address Petitioners' demonstration that this Court has personal jurisdiction over Respondent pursuant to 28 U.S.C. § 1330(b). Having failed to preserve that argument, Respondent now seeks to avoid enforcement of the award on only two grounds: forum non conveniens and lack of arbitral jurisdiction. Like their previous submissions, Petitioners' reply offers little more than a stream-of-consciousness collection of observations, objections, and hair-splitting distinctions that lack any anchor in the applicable law and fail to establish any cognizable ground for non-recognition.

## A.  Forum Non Conveniens

### 1.  Laos Has Still Failed to State a Prima Facie Defense of Forum Non Conveniens

In their opposition, Petitioners noted that Respondent has not even attempted to demonstrate that the United States is an inconvenient forum. Respondent's reply neither addresses this failure nor attempts to cure it, as Respondent has not identified *any* specific burden it will suffer as a result of having to litigate this matter in this Court, short of noting that it finds having to defend multiple proceedings "oppressively expensive." Reply, at 2 n.2. As noted by Petitioners, however, the New York Convention expressly permits multiple enforcement proceedings, a fact that renders Respondent's complaint beside the point.[1] *See, e.g,*

---

[1] It bears repeating that Laos, in the PDA, expressly waived any right to contest any arbitration award at issue herein, and through its agreement to arbitrate under the UNCITRAL Rules, expressly agreed to implement that award at once. It is Laos' failure to abide by those respective covenants that has prompted these proceedings, which the New York Convention expressly permits in response to an award debtor's failure to honor its obligations.

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 367-68 (5th Cir. 2003) ("the [New York] Convention necessarily envisions multiple proceedings that address the same substantive challenges . . . . In short, multiple judicial proceedings on the same legal issues are characteristic of the confirmation and enforcement of international arbitral awards under the Convention."); *Sony Ericsson Mobile Commc'n AB v. Delta Elec. (Thailand) Pub. Co. Ltd.*, No. C-09-1326, 2009 WL 1874063, at *2 (N.D. Cal. Jun. 26, 2009) ("The Convention, however, allows for the bringing of 'concurrent enforcement' actions, including 'simultaneous enforcement actions' in different countries.").

While Respondent claims that Petitioners' choice of forum is not entitled to ***any*** presumption of correctness, Reply, at 2, the Second Circuit has held the contrary, noting that while a foreign plaintiff's choice of forum is not entitled to the same degree of deference as a domestic plaintiff's choice, a foreign plaintiffs' selection of an American forum is still entitled to deference. *See Murray v. British Broad. Corp.*, 81 F.3d 287, 290 (2d Cir. 1996) (holding that while a foreign plaintiff's choice of forum receives less deference than a domestic plaintiff's, "some weight must still be given to a foreign plaintiff's choice of forum," and cautioning that "this reduced weight is not an invitation to accord a foreign plaintiff's selection of an American forum no deference since dismissal for forum non conveniens is the exception rather than the rule.") (citing *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 168 (2d Cir. 1991)). Petitioners' choice of this forum is, therefore, presumptively valid, and it is well-settled that in order to invoke the exceptional remedy of forum non conveniens dismissal, Laos bears the burden of proving that Petitioners' choice is "genuinely inconvenient." *E.g., Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000)(noting that forum non conveniens dismissal is a "discretionary device" to be used "in rare instances"). Respondent's forum

argument, which focuses exclusively on the suitability of proceeding in Thailand, completely ignores every other mandatory element of the forum non conveniens test. It thus fails as a matter of law.[2]

### 2.     Mr. Watsa's Declaration

While, for the reasons stated above, Petitioners do not believe that the forum analysis turns on the competing views expressed by Messrs. Watsa and Sonchai concerning the suitability of Thailand as an alternative forum, Petitioners note that Mr. Watsa's representation of Mr. Siva in connection with the underlying transactions does not, without more, necessitate the dismissal of his testimony concerning the realities of litigation in that forum. *See In re Enron Corp. Securities, Derivative & "Erisa" Litigation*, No. Civ. A. H-01-3624, 2003 WL 23316646, at *2 (S.D. Tex. Mar. 27, 2003) ("An attorney's affidavit must meet the same standards as any other person's affidavit."); *Blount v. Conn. Gen. Life Ins. Co.*, No. CV 01-1341-BR, 2002 WL 31974405, at *3 (D. Or. July 2, 2002) (noting that an attorney's affidavit is treated like all other affidavits and is sufficient when based on personal knowledge). Petitioners also wish to note that Respondent has failed to respond to Petitioners' observation that Mr. Sonchai does not appear to be a barrister, and that neither of his declarations suggests that he practices in the Thai courts. His statements therefore lack any substantive foundation, and are themselves unworthy of any evidentiary weight.

---

[2] If, despite Laos' failure to address the forum issue under the appropriate and mandatory test, the Court is inclined to entertain Respondent's forum defense, Petitioners respectfully request that the Court defer its ruling on that issue so that Petitioner can take limited discovery concerning Laos' activities and assets in the United States, which is a relevant factor in forum non conveniens analysis, particularly where Laos has never denied having assets in this jurisdiction. *See Figueiredo Ferraz Consultoria E Engenharia De Projeto Ltda. v. Republic of Peru*, 655 F. Supp. 2d 361, 375 (S.D.N.Y. 2009) (holding that presence of defendant's assets in the United States weighs against forum non conveniens dismissal in case to confirm foreign arbitral award).

B.     **Respondent's Jurisdictional Objections**

Respondent's reply concerning the "jurisdictional deficiencies" it claims warrant non-recognition mischaracterizes Petitioners' submission and the governing law. Respondent claims that Petitioners have raised "only one point" in opposition to Respondent's jurisdictional claim. Even a cursory review of Petitioners' opposition shows this statement to be incorrect. In their opposition, Petitioners have demonstrated that (a) Respondent has failed to demonstrate that its objections, even if established, implicate the one provision of the New York Convention that it has invoked (or any other); (b) Second Circuit caselaw requires that this Court's review of the award accord substantial deference to the tribunal's analysis; and (c) the tribunal's award had a sound basis in a fully-developed record.

1.     **Respondent's Failure to Properly Invoke Article V of the New York Convention**

As the party opposing recognition of the award in this case, Respondent bears the burden of establishing that one of the specific grounds for non-recognition set forth in Article V of the New York Convention applies. This is a mandatory showing – both the New York Convention and Chapter 2 of the Federal Arbitration Act ***require*** the Court to enforce the award unless the party opposing enforcement establishes one of the exclusive Article V grounds for non-recognition. *See* 9 U.S.C. § 207; *Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n*, 361 F.3d 676, 683 (2d Cir. 2004) (holding that the party opposing confirmation bears the burden of proving one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the New York Convention) (citing 9 U.S.C. § 207); *see also Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974) (holding that the defenses to enforcement of a

foreign arbitral award under the New York Convention "should be construed narrowly," as "a narrow construction would comport with the enforcement-facilitating thrust of the Convention").

In their opposition, Petitioners pointed out that the sole New York Convention provision relied upon by Respondent as a ground for non-recognition – Article V(1)(a) – simply does not contemplate Respondent's argument. Article V(1)(a) provides that a court may refuse to recognize an award where the parties are under an incapacity or where the arbitration award is invalid. In response to Petitioners' argument, Respondents offer this:

> Petitioner makes the assertion that the inquiry Laos raises under the Convention relates to "whether the PDA is invalid." Opposition, page. 16. In Article V, the Convention is not referring to the container contract; it refers in Article II to the arbitration agreement and does so as well in Article V. Laos is challenging the arbitrators' exercise of jurisdiction under the arbitration agreement contained in the PDA.

Reply, at 8 n.8.

By its own terms, this statement simply does not respond to Petitioners' observation that Laos' stated objections to enforcement are not cognizable under Article V(1)(a), the ***only*** provision of the New York Convention that Respondents have ever mentioned or invoked. Given that fact, Respondent's clarification about the precise meaning of Article V's reference to an agreement is simply beside the point, since Respondent has ***never claimed*** that the arbitration agreement at issue in this case is invalid. At bottom, it is Respondent's obligation to properly tie its objections to a specific ground for non-recognition set forth in Article V. It has failed to do so, having failed to offer a single argument or citation to authority suggesting that the errors he assigns to the tribunal's award would, if established, justify non-recognition under Article V(1)(1). That failure renders Respondent's objections deficient even on a prima facie basis.

### 2. The Proper Scope of Review

Respondent has completely misrepresented the law governing the allowable scope of this Court's review. Accusing Petitioners of a "fundamental lack of understanding of the role of 'competence-competence' in the law of arbitration," Reply, at 4, Respondent offers the Court an interesting, if not ultimately pertinent, exposition on arbitration law principles – complete with tidbits about arbitration statutes in countries such as Scotland, Germany, and Uganda – that concludes with a quote from a decision of the London Court of Appeal, which Respondent claims "is the law at the enforcement stage … in the United States." Reply, at 5.

Putting aside the unorthodox nature of Respondent's citation of English caselaw in purported support of a doctrine that has been extensively considered and independently developed by American courts – including the U.S. Supreme Court and the Second Circuit – Respondent's claim that U.S. law requires a "full rehearing of the issues" in this case, Reply, at 5 (quoting *Dallah Estates v. Min. of Religious Affairs*, [2009] EWCA Civ. 755), is incorrect.

The most recent statement by the Second Circuit on the "competence-competence" doctrine is set forth in *T. Co. Metals v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329 (2d Cir. 2010), a decision that Respondent has not addressed or otherwise brought to the Court's attention. In *T. Co.*, the party opposing judicial confirmation of an award claimed – as Respondent does here – that the arbitrator exceeded his jurisdiction. Specifically, that party claimed that the arbitrator violated the doctrine of *functus officio* – which provides that the arbitrator loses jurisdiction over a dispute once a final award has been issued – by making substantive amendments to the final award while claiming to act under a rule that permitted him to make ministerial or computational corrections to an award. The district court vacated the

amended award on this basis, finding that the *functus officio* doctrine – which clearly constitutes a jurisdictional limitation on arbitral authority – barred the arbitrator from amending the award.

The Court of Appeals reversed. The Court of Appeals noted first that, under the Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), courts are responsible for determining the question of arbitral jurisdiction unless there is "clear and unmistakable evidence" of the parties' agreement to authorize the arbitrators to determine their own jurisdiction. The Court of Appeals then relied upon its prior decision in *Contec Corp. v. Remote Solution, Ltd.*, 398 F.3d 205 (2005) in holding that the parties' agreement to arbitrate under the ICDR Rules, which authorize the arbitral tribunal to rule on its own jurisdiction, constituted "a clear and unmistakable expression [by the parties] of their intent to allocate to the arbitrator the task of interpreting the scope of his powers and duties under Article 30(1)." *T. Co.*, 592 F.3d at 344. Having found that the parties had agreed to arbitrate under a set of rules that allowed the arbitrators to determine their own jurisdiction, the Court of Appeals concluded that it "***must afford significant deference to the arbitrator's interpretation*** of [Rule 30(1)]." *Id.* at 345 (citing *First Options*, 514 U.S. at 943) (emphasis supplied). The Court concluded:

> The kid-gloved approach we take to reviewing arbitration awards enables the parties to obtain the efficient dispute resolution they bargained for, while affording them the freedom to design the kind of adjudicative proceedings that will best suit their needs. Given that the FAA permits parties to authorize an arbitrator to determine the scope of his own jurisdiction, we see no justification for this Court interfering with the power granted to an arbitrator to interpret his powers ... under the applicable arbitral rules of procedure.

*Id.*

As the Second Circuit's most recent application of the competence-competence doctrine, there is no question that *T. Co.* controls this proceeding, that it requires this Court to accord

significant deference to the tribunal's jurisdictional determinations, and that it prohibits the "full rehearing" of the tribunal's determinations that Respondent demands. As in *T. Co.*, the parties here expressly agreed to, and did, arbitrate under the UNCITRAL Rules, which authorize the tribunal to rule on objections to its jurisdiction – the same substantive objections that were raised in the arbitration and overruled by the tribunal, and that Laos contends this Court must revisit de novo. *T. Co.*, not the cases cited by Respondent, constitutes the "clear, recent, and authoritative statement[] of the law in this Circuit on the standard of review of arbitral awards where a party has objected to the arbitrator's determination of jurisdiction in a 'competence-competence' proceeding," Reply, at 6, and the rule in that decision must be applied by the Court here.[3]

### 3.  The Tribunal's Decision

Even if this Court was to accept Respondent's invitation to conduct an independent review of the tribunal's rulings concerning HLL's standing and TLL's recovery of damages it found were advanced on its behalf by its corporate affiliates – and *T. Co.* states clearly that it

---

[3] While Respondent chides Petitioners for "mak[ing] no effort to distinguish *Sarhank*," Reply, at 5, that decision is in fact distinguishable, and materially so. In *Sarhank*, the party *opposing* recognition of the arbitration award was not a party to the arbitration agreement; it was not even mentioned in the arbitration agreement. Accordingly, the Court found that the party opposing recognition could not have agreed to have arbitral jurisdiction determined by the arbitrator, since there was no evidence that it had agreed to anything related to the arbitration. Here, there is no question that Laos agreed to arbitrate any disputes arising under the PDA pursuant to the UNCITRAL Rules, and that under the Second Circuit's decisions in *Contec* and *T. Co.*, it agreed to permit the arbitration tribunal to resolve any objections that it ultimately made to the tribunal. Similarly, Respondent's suggestion that this Court's decision in *Telenor Mobile Commc'n AS v. Storm LLC*, 524 F. Supp. 2d 332 (S.D.N.Y. 2007) is "quite on point," Reply, at 6, overlooks the fact that *Telenor* is not binding on this Court and that it was decided long before *T. Co.*, a binding appellate decision with which Petitioners respectfully submit it is irreconcilable. Furthermore, insofar as the *Telenor* court found that the grant of authority in the UNCITRAL Rules permitting arbitrators to rule on objections to their jurisdiction was insufficiently broad to constitute the "clear and unmistakable evidence" of an agreement by the parties to submit the question of arbitral jurisdiction to the arbitrators, Petitioners note that this finding is inconsistent with the conclusions of the other federal courts to have addressed that issue. *See Wal-Mart Stores, Inc. v. PT Multipolar Corp.*, 202 F.3d 280, 1999 WL 1079625, at *2 (9th Cir. Nov. 30, 1999) (holding that by incorporating the UNCITRAL rules, specifically Article 21(1), into their agreements, the parties agreed that the arbitration panel, rather than the district court, should decide the arbitrability of the dispute); *Grynberg v. BP P.L.C.*, 596 F. Supp. 2d 74, 79 (D.D.C. 2009) ("Just as incorporation of the AAA rules provided 'clear and unmistakable evidence' that the parties intended the arbitrator, not a court, to determine arbitrability . . . incorporation of the UNCITRAL rules demonstrates that the parties intended the arbitrator to determine whether plaintiffs' RICO claims can be arbitrated.").

should not – the award should nonetheless be enforced. While Respondent has objected repeatedly that the tribunal's decision is "bereft of analysis," Reply, at 7, it is axiomatic that an arbitration tribunal is not required to set forth the reasons for its conclusions. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("A mere ambiguity in the opinion accompanying an award ... is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions."); *Duferco Int'l Steel Trading v. T. Klaveness Shipping*, 333 F.3d 383, 390 (2d Cir. 2003) ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case."); *Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998) (noting the "well-recognized principle that arbitrators are not required to provide reasons for their awards").

The arbitration tribunal that heard the dispute and rendered the award was a preeminent one consisting of elite American lawyers, and a review of the award shows that its rulings were informed by an extensive factual record, numerous statements from fact and expert witnesses that were subject to cross-examination, and high-quality legal representation on both sides. Respondent has asked this Court to engage in an exacting dissection of the tribunal's work, including a comparison of contracts, review of the parties' negotiating history, and much more, in a search for errors. And no doubt knowing that even gross errors resulting from that search would not allow it to carry its burden under Article V, Respondent has attempted to transmute its

claims of error into "jurisdictional" flaws.[4] While Petitioners respectfully refer the Court to Section C.2 of its opposition brief for its discussion of the tribunal's consideration of the issues raised herein, Petitioners note that Respondent's insistence on a root-and-branch review of the tribunal's analysis flies in the face of well-settled Second Circuit law holding that confirmation of an award is proper even where only a "barely colorable justification" supports the outcome. *See Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union,* 954 F.2d 794, 797 (2d Cir. 1992); *Duferco,* 333 F.3d at 390 ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case."); *Hoeft v. MVL Group, Inc.,* 343 F.3d 57, 70-71 (2d Cir. 2003) (confirming award and stating that it "is of no consequence" that the arbitrator's decision did not apply the "clear majority view" of a certain principle of accounting law), *overruled on other grounds, Hall Street Assocs. v. Mattel, Inc.,* 552 U.S. 576, 589-90 (2008); *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 216 n. 10 (2d Cir. 2002) (award would be confirmed regardless of the court's "serious reservations about the soundness of the arbitrator's reading" of the contract).

## Conclusion

Respondent has failed to meet its burden of proving that non-recognition is warranted under Article V(1)(a) of the New York Convention, or under any other provision. Its motion should be denied, and the award should be enforced through the entry of judgment thereon.

---

[4] It is worth underscoring that, despite claiming that the tribunal's conclusion that HLL was a third party beneficiary was erroneous as a matter of New York law, Respondent has failed to cite *any* New York cases in either its opening or reply briefs, relying instead upon a lone Ninth Circuit case and a basic statement of law from the Restatement of Contracts. Its failure to do so stands in inexplicable contrast to its submission to the London court, where, in support of an indistinguishable argument, it has submitted an affidavit that sets forth a lengthy discussion of New York law.

Dated: New York, New York
November 15, 2010

Respectfully submitted,

/s/ James E. Berger

James E. Berger (JB 6605)
Charlene C. Sun (CS 1281)
Paul, Hastings, Janofsky & Walker LLP
75 East 55 Street
New York, New York 10022
(212) 318-6000
*jamesberger@paulhastings.com*
*charlenesun@paulhastings.com*

Christopher F. Dugan, *pro hac vice*
Paul, Hastings, Janofsky & Walker LLP
875 15th Street N.W.
Washington, DC 20005
(202) 551-1723
*chrisdugan@paulhastings.com*

Attorneys for Petitioners Thai-Lao Lignite (Thailand) Co., Ltd. & Hongsa Lignite (Lao PDR) Co., Ltd.

LEGAL_US_E # 90464100.5
11/15/10 5:12 PM