UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                            |
THAI LAO LIGNITE (THAILAND) CO., LTD. &   |
HONGSA LIGNITE (LAO PDR) CO., LTD.,        |
                                                            |
                              Petitioners,        |         10 Civ. 5256 (KMW)
         -against-                                |
                                                            |         OPINION and ORDER
GOVERNMENT OF THE LAO PEOPLES   |
DEMOCRATIC REPUBLIC,                         |
                                                            |
                              Respondent.         |
                                                            |
-------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

        Thai Lao Lignite (Thailand) Co., Ltd. ("TLL"), a company organized under the laws of

Thailand, and Hongsa Lignite (LAO PDR) Co., Ltd., ("HLL"), a company organized under the

laws of the Lao People's Democratic Republic (collectively, "Petitioners"), moved for confirmation

of an arbitral award (the "Award") pursuant to the United Nations Convention on the Recognition

of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 53 (the "Convention"),

as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. §201 et seq.  The Government of

the Lao People's Democratic Republic ("Respondent") opposed confirmation and moved to dismiss

the petition.

        On August 3, 2011, the Court denied Respondent's motion to dismiss and granted

Petitioners' petition to confirm the Award.  (See Dkt. Entry No. 50.)

        Currently before the Court is Respondent's objection to a discovery order issued by

Magistrate Judge Freeman on April 4, 2011 (the "April 4 Order") (See Dkt. Entry No. 25 (order);

Dkt. Entry No. 29 (notice of objection)).  Petitioners opposed Respondent's objection and moved

for sanctions against Respondent and/or its counsel pursuant to Rule 37 of the Federal Rules of

1

Civil Procedure ("Rule 37), § 28 U.S.C. 1927, and the Court's inherent authority to impose sanctions.  (*See* Dkt. Entry No. 30.)

## I.      Background

On October 14, 2010, while the petition for confirmation and motion to dismiss were pending, Petitioners served discovery requests and interrogatories on Respondent, principally to obtain information about Respondent's assets located in the United States, in anticipation of the enforcement of a judgment if this Court confirmed the Award.  On November 15, 2010, Respondents submitted a letter to this Court requesting permission to file a motion for a stay of discovery and a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. The Court denied this request and permitted Petitioners to seek discovery.  The Court referred disputes about the scope of discovery to Magistrate Judge Freeman.  (*See* Dkt. Entry No. 22.)

The parties conferred in the ensuing weeks about limiting the scope of discovery, but no agreement was reached.  On January 28, 2011, Respondent served responses to the Petitioners' discovery requests.  The interrogatory responses were unsigned and unsworn.  Respondent's counsel later informed Petitioners that two of the answers to those interrogatories were inaccurate.  On February 8, 2011, Petitioners sought leave to move to compel compliance with their discovery requests.  Respondents replied by letters dated March 8 and March 16, 2011.

On March 18, 2011, Judge Freeman convened a telephonic conference during which the parties discussed their positions regarding the various outstanding discovery issues.  One of the subjects discussed was whether Petitioners could seek discovery of documents related to Respondent's bank accounts in the United States.  The parties disagree on exactly what each side (and Judge Freeman) said regarding these issues.  (The conference was not recorded or transcribed by a court reporter.)

According to Respondent, Petitioners raised the issue of the existence of U.S. bank accounts held by Respondent's embassy.  Respondent's counsel states that he told Petitioners that those accounts were immune from attachment or discovery under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 *et seq.*, and the Vienna Convention on Diplomatic Relations, Apr. 18, 1962, 23 U.S.T. 3227, T.I.A.S. No. 7502 (the "Vienna Convention").

Petitioners then purportedly argued that they needed discovery of information about Respondent's U.S. bank accounts to ascertain whether the accounts were, in fact, immune under the FSIA.[1]  According to Petitioners, Respondent's counsel affirmatively agreed to produce the records of those accounts.

At the conclusion of the conference, Judge Freeman ordered the following, *inter alia*:

1) Respondent was to serve final, sworn responses to Petitioner's First Set of Interrogatories by March 28, 2011;

2)  Respondent was to file and serve a letter brief in support of its objections by April 1, 2011.  Petitioner was permitted to reply to this brief by April 8, 2011; and

3)  Respondent was to produce by April 8, 2011 documents relating to bank accounts in the United States maintained by the Government of the Lao People's Democratic Republic. (*See* Dkt. Entry No. 25.)

Petitioners' counsel requested that Judge Freeman's oral order be memorialized in writing, and Judge Freeman requested that the parties confer on a form order for her to enter.  The parties conferred but were unable to reach agreement on the wording and scope of the order, so both

---

[1] According to Respondent, Judge Freeman stated: "That is not the test; the test is whether the information will lead to assets that could be attached." (Second Declaration of David J. Branson (hereinafter "Second Branson Decl.") ¶ 11.)

parties separately submitted their own formulations.  Judge Freeman entered Respondent's version of the order *nunc pro tunc* to March 18, 2011 on April 4, 2011.  (*See* Dkt. Entry No. 25.)

Respondent did not produce any documents by April 8, 2011.  On April 12, 2011, Respondent's counsel sought from this Court an extension of time to object to the April 4 Order. (*See* Dkt. Entry No. 26.)  Petitioners objected to the request for an extension.  The Court granted Respondent's request.

Respondent timely filed its objection to the April 4 Order on April 28, 2011.  (*See* Dkt. Entry No. 29.)  Petitioners opposed the objection and cross-moved for sanctions pursuant to Rule 37, § 28 U.S.C. 1927, and the Court's inherent authority to impose sanctions.  (*See* Dkt. Entry No. 30.)

On July 5, 2011, Judge Freeman *sua sponte* stayed the April 4 Order pending this Court's resolution of the instant objection.  (*See* Dkt. Entry No. 42.)  At that time, Judge Freeman also denied Petitioner's application for an Order to Show Cause for discovery sanctions against Respondent.  (*Id.*)

## II.    Respondent's Objections to the April 4 Order

Respondent objects to the April 4 Order regarding discovery of its bank accounts, contending that those accounts are held by the embassy and consulate of Laos, and are thus immune from attachment and discovery under the FSIA and the Vienna Convention.  For the following reasons, Respondent's objection to the April 4 Order is overruled.

### A.  <u>Standard of Review</u>

For non-dispositive matters, including discovery disputes, a district court shall reverse a magistrate's order only where it has been shown that the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (2002); *see also* Fed. R. Civ. P. 72(a); *Thomas E. Hoar, Inc. v.*

*Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Courts in this Circuit have held that a magistrate's ruling on a discovery dispute should be overturned only for an abuse of discretion. *Edmonds v. Seavey*, No. 08 Civ. 5646, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009) (noting that the fact that "reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision"). A "court has the discretion to deny discovery requests if it determines that . . . 'the burden or expense of the proposed discovery outweighs its likely benefit." *World Wrestling Fed'n. Ent'mt., Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 (S.D.N.Y. 2001) (quoting Fed. R. Civ. P. 26(b)(2)).

**B. <u>Applicable Law</u>**

**1. FSIA**

Under 28 U.S.C. § 1609, "the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611" of Title 28. 28 U.S.C. § 1609. "As a general matter, it is widely recognized that the FSIA's immunity provisions aim to protect foreign sovereigns from the burdens of litigation, including the cost and aggravation of discovery." *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 795 (7th Cir. 2011) (citing, *inter alia*, *Republic of Philippines v. Pimentel*, 553 U.S. 851, 865 (2008); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 479 (2003)). *See also EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation." (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 849 (5th Cir. 2000))). Thus, if the bank accounts in question are immune from attachment under section 1609, they are also immune from discovery.

Under section 1610, there is an exception to immunity from post-judgment attachment of property "used for a commercial activity in the United States . . . [if] . . . (1) the foreign state has

waived its immunity from attachment in aid of execution or from execution either explicitly or by implication . . . or . . . (6) the judgment is based on an order confirming an arbitral award rendered against the foreign state, provided that attachment in aid of execution, or execution, would not be inconsistent with any provision in the arbitral agreement." 28 U.S.C. § 1610(a).

"Commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C.A. § 1603(d).  Further, "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.*  As a general matter, assets used exclusively to support diplomatic or consular functions are not considered assets used for a "commercial activity." *See Liberian E. Timber Corp. v. Gov't of Republic of Liberia*, 659 F.Supp. 606, 610 (D.D.C. 1987).

The mere fact that assets are held in an account used by a state's embassy does not *per se* render the entire account immune from attachment or discovery.  If an account is used "primarily (if not exclusively) for commercial, rather than diplomatic, purposes," it can be subject to attachment.  *Hill v. Republic of Iraq*, No. 99 Civ. 03346TP, 2003 WL 21057173, at *2 (D.D.C. Mar. 11, 2003).  *See also Weston Compagnie de Finance Et D'Investissement, S.A. v. La Republica del Ecuador*, 823 F. Supp. 1106, 1114 (S.D.N.Y. 1993) (holding that "the Court cannot agree that the mere placing of funds not used for a central banking function in an account of a foreign central bank will immunize such funds from attachment"); *Birch Shipping Corp. v. Embassy of the United Republic of Tanzania*, 507 F. Supp. 311, 312 (D.D.C. 1980) (holding that it may be "proper to attach an account which is not used solely for commercial activity").

Respondent has the initial burden of demonstrating immunity under the FSIA, but once immunity has been established under section 1609, the opposing party must show that an

exception under section 1610 or section 1611 applies.  *EM Ltd.*, 473 F.3d at 470 ("[P]laintiffs

would not be able to attach the funds under the FSIA unless they were able to demonstrate that

the funds had become property of the Republic 'used for a commercial activity in the United

States.'"(quoting 28 U.S.C. § 1610(a)(1))).

### 2.   Vienna Convention

Under Article 25 of the Vienna Convention, a "receiving State shall accord full facilities

for the performance of the functions of the [diplomatic] mission" of another signatory state.  23

U.S.T. at 3238.  Courts have held that bank accounts of a sovereign nation's embassy that are

"used or intended to be used for purposes of the diplomatic mission are immune from attachment

to satisfy a civil judgment."  *Liberian E. Timber Corp.*, 659 F.Supp. at 608 ("The Liberian

Embassy lacks the 'full facilities' the Government of the United States has agreed to accord if, to

satisfy a civil judgment, the Court permits a writ of attachment to seize official bank accounts

used or intended to be used for purposes of the diplomatic mission.").  *See also Foxworth v.*

*Permanent Mission of Republic of Uganda to United Nations*, 796 F. Supp. 761, 763 (S.D.N.Y.

1992) (holding that where attachment of defendant embassy's account would "force it to cease

operations," then attachment would be contrary to the Vienna Convention).

### 3.   FSIA-Related Discovery

Although it is clear that the FSIA presumptively immunizes the property of a sovereign nation from attachment and discovery, it is less clear what the scope of discovery should be when determining whether an exception to FSIA immunity applies.  As the Seventh Circuit recently explained:

> [a] potential difficulty arises . . . when an asserted exception to immunity turns on disputed facts.  The FSIA does not directly address the extent to which a judgment creditor may pursue discovery to establish that the property he is seeking to attach fits within one of the statutory exceptions to the attachment immunity conferred by section 1609.

*Rubin*, 637 F.3d at 795.

There is no bright line rule for when discovery is appropriate to verify whether particular property is, in fact, immune from discovery under the FSIA.  Rather, the circuit courts have urged that district courts proceed with caution, taking into account the "comity concerns" implicated in the "delicate balancing" between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) (quoting *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992)).  The Second Circuit has emphasized that "[d]iscovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *EM Ltd.*, 473 F.3d at 486.  *See also Rubin*, 637 F.3d at 796-97 ("Discovery orders that are broad in scope and thin in foundation unjustifiably subject foreign states to unwarranted litigation costs and intrusive inquiries about their American-based assets.  One of the purposes of the immunity codified in § 1609 is to shield foreign states from these burdens.").

C.  **Application of Law to Fact**[2]

Respondent argues that Judge Freeman's discovery order must be reversed because the

"undisputed record makes clear that the Accounts are not an attachable asset of the Respondent."

(Mem. of Law in Support of Resp. Obj. to the April 4, 2011 Order of Magistrate Judge Debra

Freeman, April 28, 2011 (hereinafter "Resp. Mem.") at 6.)  Respondent bases this contention on

the fact that it submitted an affidavit from its counsel that states that David J. Branson,

Respondent's counsel, traveled to Laos in April 2011, where he "met with senior legal counsel,

Mr. Sisoulath, and a representative responsible for North American diplomatic affairs at the

Ministry of Foreign Affairs." (Declaration of David J. Branson, (hereinafter "Branson Decl.") ¶ 4.)

He states:

> 6.  Based upon this meeting, and a prior meeting with a representative of the
> Ministry of Finance, Mr. Rithikone, on January 4, 2011, there are only two bank
> accounts maintained by the Government of the Lao People's Democratic Republic
> in the United States: one account in Washington, DC used to maintain the
> Respondent's Embassy in its diplomatic duties, and one account in New York City
> used to maintain the Respondent's Diplomatic Mission to the United Nations.
>
> 7.  In addition, based upon the enquiries described above, the Government of the
> Lao People's Democratic Republic does not maintain any bank accounts in the
> United States used for "commercial activity" as that term is used in the U.S. Foreign
> Sovereign Immunities Act.

(Branson Decl. ¶ 6-7.)

This testimony does not create an "undisputed record" because it is of extremely limited

evidentiary value.  The declaration states expressly that it is based not upon personal knowledge,

but rather, upon meetings with people who presumably have personal knowledge of these

---

[2] As an initial matter, Petitioners argue that Respondent is estopped from objecting to the April 4
Order, since Judge Freeman entered the version of the order submitted by Respondent.
However, it is clear that Respondent objected to the Order before it was issued, and its
submission of language memorializing that Order, at Judge Freeman's request, did not waive
Respondent's right to object to the substance of the Order.

matters.  Statements in an attorney's affidavit not based on personal knowledge are not entitled to

evidentiary weight.  *See United States v. Maldonado-Rivera*, 922 F.2d 934, 972 (2d Cir. 1990)

(holding that the "court properly declined to credit [an] attorney's affidavit because it was not

based on the attorney's personal knowledge"); *cf.* Fed. R. Evid. 602 ("A witness may not testify to a

matter unless evidence is introduced sufficient to support a finding that the witness has personal

knowledge of the matter."); Fed. R. Civ. P. 56(e) ("An affidavit or declaration used to support or

oppose a motion must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  In

addition, Mr. Branson's statement that Respondent does not maintain any accounts used for

"commercial activity" as that term is used in the [FSIA]," (Branson Decl. ¶ 7), is a "conclusory

statement[] of law" that is of no value.  *Omnipoint Commc'ns v. Common Council of Peekskill*,

202 F. Supp. 2d 210, 213 (S.D.N.Y. 2002).

Respondent cites *Sales v. Republic of Uganda*, No. 90 Civ. 3972, 1993 WL 437762

(S.D.N.Y. Oct. 23, 1993) as an example of a case where "[r]eliance upon an uncontroverted

affidavit was . . . determinative." (Resp. Reply in Support of Its Rule 72(a) Obj. to Magistrate

Judge Freeman's Order Relating to Diplomatic Bank Records and in Opp. to Cross-Motion for

Sanctions, May 18, 2011 (hereinafter "Resp. Reply Mem.") at 3.)  However, in that case, the

affidavit stating that the accounts at issue were used only for diplomatic purposes was from the

"Ambassador and Deputy Permanent Representative of Uganda." *Sales*, 1993 WL 437762, at *2.

That is not the case here.  Mr. Branson, an attorney uninvolved in Laos' diplomatic affairs, has

submitted an affidavit that explicitly states that it is not based on his personal knowledge.  The

Court is thus left with little evidence to determine whether the "commercial activity" exception to FSIA immunity applies.[3]

Respondent argues that Judge Freeman applied the wrong standard when she said, according to Respondent's counsel, that the proper test for discovery was "whether the information will lead to assets that could be attached." (Second Branson Decl. ¶ 11.)  Without a written record of the conference, it is impossible to know precisely how Judge Freeman formulated the test that she was applying.  However, the test, as quoted by Respondent, is not clearly erroneous.  On the contrary, the decisions that Respondent cites acknowledge that, in certain circumstances, limited discovery will be necessary to ascertain whether an exception to FSIA immunity applies.  *See, e.g., Rafidain Bank*, 150 F.3d at 176 (noting that "a plaintiff may be allowed limited discovery with respect to [a] jurisdictional issue"); *EM Ltd.*, 473 F.3d at 486 (acknowledging that discovery may be appropriate to "verify allegations of specific facts crucial to an immunity determination"). For example, in *Rubin v. Islamic Republic of Iran*, the Seventh Circuit acknowledged that a plaintiff may be entitled to discovery regarding the assets of the defendant, provided such discovery is not overly broad.  637 F.3d at 796-98.  Specifically, the court held that "a plaintiff seeking to attach the property of a foreign state in the United States must identify the specific property that is subject to attachment and plausibly allege that an exception to § 1609 attachment immunity applies." *Id.*

It was not clearly erroneous to find that Petitioners have met this burden with respect to bank accounts held by Respondent.  Respondent cites *Sales v. Republic of Uganda*, which held that mere speculation about possible commercial activity does not suffice to allow large scale, intrusive discovery of a foreign sovereign:

---

[3] There is no dispute that Respondent has waived sovereign immunity, and thus the exception under section 1610(a)(1) applies, as long as the assets are used for "commercial activity."

> Plaintiffs suggest the possibility that some of the rent moneys might be used for non-diplomatic purposes. That subject could be explored only by painstaking examination of the Mission's budget and books of account. Such an exercise cannot be reconciled with the principle of sovereign immunity.

1993 WL 437762, at *4. But here, the discovery that Judge Freeman ordered does not involve a "painstaking examination of the [Embassy's and Consulate's] budget and books of account." *Id.* In fact, Judge Freeman substantially narrowed Petitioners' discovery requests, ordering discovery of only documents related to Respondent's U.S. bank accounts. The Court finds that this strikes a reasonable balance "between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *Rafidain Bank*, 150 F.3d at 176.

Should the evidence show that Respondent's accounts do not reflect any commercial activity, the discovery burden on Respondent will have been minimal. Indeed, Respondent's counsel appears to have agreed, both at the conference and in subsequent correspondence to Petitioners and to the Court, that he would provide that discovery, albeit over objection.[4] (*See* Fourth Declaration of Charlene C. Sun (hereinafter "Fourth Sun Decl."), Ex. B-E.)

---

[4] Respondent's counsel disputes that he agreed to produce this discovery, but the correspondence between the parties after the conference supports Petitioners' contentions. *See* Fourth Sun Decl. Ex. B, E-mail from David Branson to James E. Berger, Mar. 22, 2011, 1:58 PM (regarding the conference, stating "I . . . recall that the Embassy issue resulted from your statement that 'there must be Embassy bank accounts'—I agreed to see and produce documents from those accounts."); Ex. C, E-mail from David Branson to James E. Berger, Mar. 23, 2011, 11:25 AM ("I have no objection to making inquiries and producing documents relating to Bank accounts in the United States"); Ex. D, E-mail from David Branson to James E. Berger, Mar. 25, 2011, 5:05 PM ("The bank accounts of the Sovereign maintained for embassy use are not for 'commercial activities', but at Judge Freeman's suggestion I agreed to provide bank account records by April 8."); Ex. E, E-mail from David Branson to James E. Berger, Mar. 28, 2011, 6:18 PM ("I have agreed to produce bank documents by April 8.").

In a letter to Judge Freeman on April 4, 2011, Respondent's counsel preserved his objection to producing the bank account information but stated that he would nevertheless produce the information. *See* Second Branson Decl., Ex. 8 ("At the court's instruction, Laos will be producing bank account information for embassy and diplomatic accounts. Laos does so with

Respondent does not offer any authority for the proposition that the Vienna Convention immunizes property from discovery or attachment.  The decisions cited by Respondent consider whether the Vienna Convention protects particular property from attachment.  *See, e.g., Liberian E. Timber Corp.*, 659 F.Supp. at 608.  These decisions do not stand for the proposition that a plaintiff cannot seek discovery about particular assets to determine if that property is, in fact, immune under the Vienna Convention.

For the foregoing reasons, Respondent's objection to the April 4 Order is overruled.[5]

_____

objection, since these accounts are immune from attachment. . . . (Laos also requests the bank information must be maintained under a confidentiality order that limits disclosure to counsel of record–we will ask counsel to concur.").

[5] Respondent's Notice of Motion contains two additional arguments that are not addressed in its Memorandum of Law.  First, Respondent argues that despite the applicability of *Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 399-400 (2d Cir. 2009), which held that foreign states are not entitled to the personal jurisdictional protections of the due process clause, minimum contacts analysis is appropriate to the enforcement of discovery orders. Second, Respondent argues that production of Respondent's bank records must be kept confidential.

The Court has already addressed the first argument, Respondent's jurisdictional argument, in its Order denying Respondent's motion to dismiss.  (*See* Dkt. Entry No. 50.)  Respondent has conceded that the argument has little merit, and that it included the argument to preserve it for appeal.  (*See* Resp. Reply Mem. at 8.)  In any event, the Second Circuit has made clear that "[t]he waiver by a foreign state [under the FSIA], rendering it party to an action, is broad enough to sustain the court's jurisdiction through proceedings to aid collection of a money judgment rendered in the case, including discovery pertaining to the judgment debtor's assets." *Rafidain Bank*, 281 F.3d at 53.  This includes the ability to impose discovery-related sanctions. *See, e.g.*, *Ex.-Im. Bank of Republic of China v. Grenada*, No. 06 Civ. 2469, 2010 WL 5463876 (S.D.N.Y. Dec. 29, 2010) (imposing sanctions against foreign state that expressly waived immunity for failing to comply with plaintiff's discovery request).  Respondent does not cite any authority for the proposition that a court's jurisdiction over a confirmation proceeding generally would not confer jurisdiction to order discovery or impose sanctions as necessary.

As for the need to keep any production of documents confidential, Respondent is, of course, free to move for an appropriate protective order under Rule 26 of the Federal Rules of Civil Procedure, but this issue does not affect the question of whether Respondent is obligated to produce the documents in the first instance.

## III.   Petitioners' Cross-Motion for Sanctions

Petitioners move for sanctions pursuant to Rule 37, the Court's inherent authority to award sanctions, and 28 U.S.C. § 1927. [6]   Petitioners contend that Respondent should be sanctioned for: (1) failing to comply with Petitioners' discovery demands for, and with Judge Freeman's order to produce, the U.S. bank account information at issue, and (2) filing frivolous objections to the April 4 Order.   Petitioners seek reimbursement from Respondent for expenses and attorneys' fees incurred in connection with litigating (1) Petitioners' motion to compel discovery and (2) Respondent's instant objections.   For the reasons that follow, the Court grants Petitioners' motion pursuant to Rule 37, but the specific relief sought by Petitioners is denied.   Petitioners' motion for sanctions pursuant to the Court's inherent authority and 28 U.S.C. § 1927 is hereby denied.

### A.   <u>Applicable Law</u>

Under Rule 37, if a motion to compel production of discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The court "must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified; or . . . other circumstances make an award of expenses unjust." *Id.*   Rule 37 also provides that a court must order the payment of "reasonable expenses, including attorney's fees" by an opposing party who "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2).   Similar to sub-section (5)(A), payment of expenses is

---

[6] The parties also make several passing references to Rule 11 in their briefs on this issue. However, Rule 11 is not applicable to discovery-related motions.   *See* Fed. R. Civ. P 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.").   The Court will therefore not consider the Rule's application to Petitioner's cross-motion for sanctions.

inappropriate where the "failure was substantially justified or other circumstances make an award of expenses unjust." *Id.*

Where "the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002). Although severe sanctions under either provision, such as dismissal of the action, can generally be imposed only upon a showing of willfulness or bad faith on the part of the party refusing discovery, monetary damages may be awarded for discovery abuses or failures, even absent bad faith. *See Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 & n.8 (2d Cir. 1979).

A court may also impose sanctions on a party, its counsel, or both, for other misconduct in discovery under its inherent power to manage its own affairs. *DLC Mgmt Corp. v. Hyde Park*, 163 F.3d 124, 135-36 (2d Cir. 1998). Inherent power sanctions are appropriate only in "narrowly defined circumstances" and "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 27 (1991); *see also DLC Mgmt Corp.*, 163 F.3d at 136 ("Because of the potency of the court's inherent power, courts must take pains to exercise restraint and discretion when wielding it."). In recognition of the need for restraint, the Second Circuit requires a particularized showing of bad faith to justify the use of the court's inherent power. *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991). A finding of bad faith requires "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts." *Id.* (internal quotations and citation omitted).

15

Finally, a court may impose additional sanctions pursuant to 28 U.S.C. § 1927 on a party's counsel, as opposed to the party itself, for "multipl[ying] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Like an award made pursuant to the court's inherent power, an award under § 1927 is punitive in nature. Therefore, sanctions under this statute also require a showing of bad faith. *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (holding that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power). Sanctions under § 1927 are appropriate only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180 (2d Cir. 2004) (citation omitted).

**B.   Application of Law to Fact**

**1.   Rule 37 Sanctions**

**a.      Fed. R. Civ. P. 37(a)(5)(A)**

Petitioners claim that they moved to compel discovery on February 8, 2011, that Respondent thereafter produced the requested materials, and that Respondent is therefore required under Rule 37(a)(5)(A) to pay the costs of Petitioners' motion. Respondent argues that there can be no sanctions under Rule 37(a)(5)(A) because Petitioners never filed a motion to compel discovery.

Petitioners claim that Judge Freeman stated during the March 18 teleconference that Petitioners' February 8, 2011 letter (the "February 8 letter"), seeking leave to move to compel compliance with its discovery request, would suffice as a motion to compel "and that no further submissions from Petitioners would be required to perfect that motion." (Fourth Sun Decl. ¶ 4.)

16

As previously noted, the March 18 conference was not transcribed or recorded, and it is impossible to know with certainty what Judge Freeman said.  However, the record and the absence of any subsequent written motion to compel, support Petitioners' contention that Judge Freeman deemed the February 8 letter a motion to compel.  *See* Fourth Sun Decl. ¶4, Ex. A.

Although Petitioners' February 8 letter constituted a motion to compel, Respondent's objection to discovery was "substantially justified" within the meaning of Rule 37(a)(5)(A).  When deciding whether a failure to make discovery is "substantially justified," courts are aided by *Pierce v. Underwood*, 487 U.S. 552 (1988), in which the Court effectively defined the phrase: "To our knowledge, that has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute . . . or 'if reasonable people could differ as to [the appropriateness of the contested action]." *Id.* at 565 (brackets in original) (citations omitted).  The law governing FSIA-related discovery is not clearly defined and is susceptible to genuine dispute.  Respondent reasonably argued that the FSIA's immunity provisions shielded the production of its U.S. bank account records.  Although its argument was ultimately denied by Judge Freeman and now by this Court, Respondent's objection to disclosure was "substantially justified" such that sanctions should not issue under Rule 37(a)(5)(A).

### c.  <u>Fed. R. Civ. P. 37(b)(2)</u>

Petitioners argue that Respondent is subject to sanctions under Rule 37(b)(2) because it violated Judge Freeman's April 4 Order when it failed to identify and produce the bank account records by the April 8 deadline set forth in that Order.  Respondent claims that its timely objection to the April 4 Order precludes the imposition of sanctions.  According to Respondent, "in light of the Government's timely filing of its Objection . . . it is a given that non-compliance with the Discovery Order in the meantime was 'substantially justified' within the meaning of

Federal Rule 37(b)(2)(C)." (Resp. Reply Mem. at 11.)  Respondent incorrectly states the law.

Absent a stay of a magistrate judge's order, merely filing an objection to that order does not

excuse a party from complying with it.  *See Lytton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*,

124 F.R.D. 75, 78-79 (S.D.N.Y. 1989) (filing objections to an order by a magistrate judge does

not operate to automatically stay the order).

   Where a party fails to obey a discovery order, this Court "*must* order the disobedient party,

the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees,

caused by the failure, unless the failure was substantially justified or other circumstances make

an award of expenses unjust." Fed. R. Civ. P. 37(b)(2) (emphasis added).  Respondent has not

met its burden of proving that there was substantial justification for its failure to produce the

relevant information or that there are any circumstances that make such an award unjust.[7]  *See,*

*e.g., Worldcom Network Servs. v. Metro Access, Inc.*, 205 F.R.D. 136, 143 (S.D.N.Y. 2002)

(noting that the burden is on the disobedient party to show its noncompliance is excusable under

Rule 37(b)(2)).  Respondent relies only on the argument that its timely filing of the instant

objection relieves it from complying with the April 4 Order, which, as noted above, is

insufficient justification for noncompliance.

   This Court therefore orders Respondent to pay to Petitioners the reasonable expenses and

attorneys' fees Petitioners incurred as a result of Respondent's failure to comply with the April 4

---

[7] The record is unclear as to why Respondent ultimately failed to comply with the April 4 Order
after representing that it would do so.  Thus, there is not sufficient evidence to conclude that its
noncompliance was in bad faith.  However, a showing of bad faith is not required in order to
impose the minimum sanction provided for by Rule 37(b)(2).  *See Cine Forty–Second Street*
*Theatre Corp.*, 602 F.2d at 1066 & n.8 (upholding severe Rule 37 sanctions upon a showing of
gross negligence only).

Order.[8]  Respondent shall pay those fees and costs reasonably incurred in connection with (1) Petitioners' efforts to obtain a response to the discovery request at issue after Respondent failed to produce the relevant information on April 8, as required by the April 4 Order; and (2) the sanctions motion itself.  Petitioners are directed to submit a fee application detailing these fees and costs to Magistrate Judge Freeman by September 27, 2011.

### 2.  Sanctions Pursuant to this Court's Inherent Authority and 28 U.S.C. § 1927

Petitioners argue that, pursuant to its inherent authority and 28 U.S.C. § 1927, the Court should sanction Respondent and its counsel for filing objections to the April 4 Order.[9] Petitioners seek reimbursement for their expenses and costs incurred in connection with litigating the objections.  Petitioners point to two distinct categories of misconduct to support such an award.  First, Petitioners contend that Respondent agreed to provide the U.S. bank account

---

[8] The Court notes that this mandatory relief is the minimum, mandatory sanction contemplated by Rule 37(b)(2).  Petitioners have not requested more under Rule 37(b)(2) than the minimum, mandatory sanction, so the Court will not consider whether to award harsher sanctions.  The Court notes, however, that the minimum sanction is particularly appropriate in light of Judge Freeman's decision on July 5, 2011 to *sua sponte* stay the April 4 Order she issued.  Although Petitioners were certainly prejudiced by Respondent's failure to comply, that prejudice was tempered by Judge Freeman's stay of the Order.

[9] 28 U.S.C. § 1927 and a court's inherent authority provide distinct bases upon for a court's award of sanctions.  Pursuant to its inherent power, a court may impose a wide range of sanctions against a party or its counsel for any abusive litigation practice undertaken in bad faith.  *See, e.g.*, *Penthouse Int'l Ltd. v. Playboy Enters.*, 663 F.2d 371, 386 (2d Cir. 1981).  In contrast, 28 U.S.C. § 1927 authorizes the imposition of sanctions against any lawyer who "unreasonably and vexatiously" proliferates litigation proceedings.  Such sanctions are limited to the "excess costs, expenses and attorneys' fees reasonably incurred because of [the lawyer's] misconduct." 28 U.S.C. § 1927.  Despite the narrower range of conduct to which 28 U.S.C. § 1927 applies and the more limited sanctions permitted under that statute, the Second Circuit has noted that "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).  Therefore, this Court will group the authorities together for purposes of analyzing Petitioners' arguments.

information at issue, only to "expressly repudiate[]" that arrangement and file the instant

objections, thereby reneging on "an agreement that could have significantly expedited these

proceedings" and "requir[ing] Petitioners to engage in, and the Court to entertain, over three

months of unnecessary motion practice." (Pets. Reply Mem. in Support of Cross-Motion for

Sanctions (hereinafter "Pets. Reply Mem.") at 7-8.).  Second, Petitioners argue that Respondent's

objections rely on frivolous legal arguments, fail to disclose binding authority, and contain a

series of false factual statements and material omissions. (Pets. Reply Mem. At 8.).

 Sanctions pursuant to either the Court's inherent authority or 28 U.S.C. § 1927 may be

imposed only upon a showing that Respondent's actions were undertaken in bad faith.  *See*

*Oliveri*, 803 F.2d at 1273.  As articulated by the Second Circuit, bad faith requires "clear evidence

that the challenged actions are entirely without color and are taken for reasons of harassment or

delay or for other improper purposes." *Int'l Bhd. of Teamsters*, 948 F.2d at 1345 (internal

quotations and citation omitted).  Upon the record before it and the totality of the circumstances,

the Court cannot conclude that either Respondent's behavior or that of its counsel evinces the bad

faith required to satisfy this standard.

 Petitioners argue that Respondent improperly delayed litigation by "reneg[ing]" on its

agreement to produce the discovery and filing the instant objections.  (Pets. Opp. to Resp. Rule

72(a) Objs. and Cross-Motion for Sanctions (hereinafter "Pets. Mem") at 22.)  Although

Respondent's counsel agreed to produce the U.S. bank account information, he did so only upon

being ordered to do so over objection by Judge Freeman on March 18.  His submission of a draft

order memorializing Judge Freeman's ruling at her request does not preclude Respondent from

objecting to the substance of that order.  The record also shows that Respondent's counsel

preserved Respondent's objection to production.  *See* Second Branson Decl., Ex. 8 ("At the court's

instruction, Laos will be producing bank account information for embassy and diplomatic accounts.  Laos does so with objection, since these accounts are immune from attachment . . . ."); Second Branson Decl. Ex. 10 ("I also note that in my letter to this Court of April 4, 2011, the Government noted its objection to producing Embassy bank records 'since these accounts are immune from attachment . . . .").[10]

 The Court acknowledges that Respondent caused undue delay by failing to produce the required information by the April 8 deadline set in Judge Freeman's order; however, delay alone, without "clear evidence" of bad faith, does not rise to the level of sanctionable conduct contemplated by the case law.  As noted above, the record is insufficient to show that Respondent's noncompliance was in bad faith.  Petitioners have not offered "clear evidence" that Respondent's failure to produce (and subsequent filing of the objections) was motivated by harassment, delay, or other improper purpose.  *See Int'l Bhd. of Teamsters*, 948 F.2d at 1345.

 Petitioners also argue that Respondent should be sanctioned for its reliance on frivolous legal arguments, false factual statements and material omissions, and for its failure to disclose binding authority.  Again, to succeed, Petitioners must show that Respondent's submission was "entirely without color and . . . taken for reasons of harassment or delay or other improper purpose." *Id.*  A claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Nemeroff v. Abelson*, 620 F.2d 339,

---

[10] The Court notes that Petitioners, while accusing Respondent of making false factual statements, have themselves failed to represent the facts with complete accuracy.  As evidence of Respondent's agreement to produce the information at issue, Petitioners cite an April 4, 2011 letter submitted to Judge Freeman by Respondent's counsel.  *See* Third Declaration of Charlene Sun (hereinafter "Third Sun Decl."), Ex. I.  Petitioners misleadingly cite counsel's statement that "At the court's instruction, Laos will be producing bank account information for embassy and diplomatic accounts" without including the very next sentence: "Laos does so with objection, since these accounts are immune from attachment . . . ."  Just as this Court is hesitant to impose sanctions without clearer evidence of Respondent's bad faith, so too is it wary of allowing the pot to call the kettle black.

348 (2d Cir. 1980).  Although the Court has found Respondent's instant arguments to be without

merit, the Court does not find Respondent's appeal to be sufficiently egregious to be sanctionable.

The Court recognizes that there are some indicia of possible bad faith by Respondent in terms of

the presentation of weak arguments.  However, the Court does not believe that Respondent's

filing evinces the bad faith or "serious and studied disregard for the orderly process of justice" that

courts have required in order to impose inherent authority or §1927 sanctions.  *Overnite Transp.*

*Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983); *see also Grant v. Grenadier*

*Realty Corp.*, 1986 WL 8223, at *1 (S.D.N.Y. Mar. 17, 1986) (quoting *Overnite* with approval).

Accordingly, Petitioners' motion for expenses and costs associated with litigating the instant

objections is denied.

## IV.   Conclusion

For the foregoing reasons, the Court AFFIRMS Magistrate Judge Freeman's April 4

Order.  The Court also GRANTS IN PART and DENIES IN PART Petitioners' Cross-Motion for

Sanctions.  Pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, Respondent shall

pay to Petitioners the costs Petitioners incurred as a result of Respondent's failure to comply with

the April 4 Order.  Particularly, Respondent shall pay those fees and costs reasonably incurred in

connection with (1) Petitioners' efforts to obtain a response to the discovery request at issue after

Respondent failed to produce the relevant information on April 8, 2011, as required by the April

4 Order; and (2) the sanctions motion itself.  Petitioners are directed to submit a fee application

detailing these fees and costs to Magistrate Judge Freeman

by September 27, 2011.

       SO ORDERED.

Dated: New York, New York
       September 12, 2011

                           Kimba M. Wood
                           United States District Judge