UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THAI-LAO LIGNITE (THAILAND) CO., LTD. & HONGSA LIGNITE (LAO PDR) CO., LTD.,

    Petitioners,

v.

GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC

    Respondent.

Civil Action No.: 10 Civ. 5256 (KMW)(DCF)

---

# MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT'S RULE 72 OBJECTIONS TO DECEMBER 17, 2012 ORDER

James E. Berger (JB 6605)
Charlene C. Sun (CS 1281)
King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: 212.556.2100
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Petitioners Thai-Lao Lignite (Thailand) Co., Ltd. & Hongsa Lignite (Lao PDR) Co., Ltd.*

## TABLE OF CONTENTS

                                                                                                   **Page**

Preliminary Statement ............................................................................................................. 1

Facts ........................................................................................................................................ 2

Argument ................................................................................................................................ 2

I.     Respondent Has No Likelihood of Success on the Merits of Its Objections ...................... 2

        A.     Respondent Has No FSIA Immunity From Discovery ........................................... 2

        B.     Respondent Has No Vienna Convention Immunity From Discovery .................... 3

        C.     Petitioners Are Entitled to Take the Noticed Depositions ...................................... 4

        D.     The Phongphailath Declaration Does Not Establish that the Embassy and Mission Accounts Are Immune From Attachment .............................................................. 6

II.    Respondent Will Suffer No Irreparable Harm ................................................................... 7

III.   Petitioners Will Suffer Significant Injury .......................................................................... 8

IV.   The Public Interest Will Not Be Served By a Stay ............................................................ 9

Conclusion ............................................................................................................................ 10

Petitioners Thai-Lao Lignite (Thailand) Co., Ltd. and Hongsa Lignite (Lao PDR) Co., Ltd., by and through their undersigned counsel, hereby oppose Respondent's Rule 72 Objections to the Court's December 17, 2012 Order, which denied Respondent's request for a stay of the portions of the Court's November 26, 2012 Order that denied Respondent's motion for a protective order concerning two pending notices of deposition (the "Depositions") seeking testimony from representatives from Respondent's Embassy to the United States ("Embassy") and its Permanent Mission to the United Nations ("Mission"), respectively.

### Preliminary Statement

There is no basis for a stay of the Depositions. Respondent's Objections to the December 17 Order consist primarily of a repetition of its Objections to the November 26 Order, coupled with an additional claim of "irreparable harm" if its "immunity from discovery" is infringed upon and "forever lost." As set forth in Petitioners' Opposition to Respondent's Objections to the November 26 Order, Respondent has **no immunity from discovery** in this case under the FSIA, as it is unquestionably subject to this Court's jurisdiction. Nor has Respondent presented the Court with any authority that it is immune from discovery under the Vienna Convention. Nonetheless, Respondent continues to cry "immunity," and offers nothing more than a series of over-the-top clichés to distract from the dearth of case law to support its position.

Judge Freeman's denial of Respondent's request for a stay was entirely proper. As set forth in more detail below, there is virtually no likelihood of success on the merits of Respondent's Objections to the November 26 Order, Respondent can demonstrate no irreparable injury if the stay is denied, the public interest would not be served by a stay, and Petitioners would suffer significant harm in the continued delay of these discovery proceedings, which have

1

now been pending for over two years. Petitioners note again that Respondent has appealed every discovery order entered in this case, *see* Dkts. 29, 126, 185, has already been sanctioned once for noncompliance with a discovery order, *see* Dkt. 66, and is currently in material violation of three additional orders, having refused to comply with them despite the fact that its requests for stays of those orders were denied, *see* Dkt. 144. Respondent's request for a stay was merely another tactic to prolong and delay these proceedings, and was properly denied by Judge Freeman.

### Facts

As Respondent's Objections to the December 17 Order are centered around substantially the same set of facts as its Objections to the November 26 Order, Petitioners hereby incorporate the facts set forth in their brief in opposition to the Objections to the November 26 Order (Dkt. 189) and the Declaration of Charlene C. Sun dated December 27, 2012 (Dkt. 190).

### Argument

I. **Respondent Has No Likelihood of Success on the Merits of Its Objections**

   A. **Respondent Has No FSIA Immunity From Discovery**

Respondent continues to claim that it maintains sovereign immunity from discovery under the FSIA, despite the Second Circuit's holdings in *EM Ltd. v. Argentina*, 695 F.3d 201 (2d Cir. 2012) that (1) a foreign state that is subject to the Court's jurisdiction is not immune from discovery under the FSIA, and (2) that post-judgment discovery into a sovereign judgment-debtor's assets need not be tied to the strict requirements for attachment under the FSIA.[1]

---

[1] Respondent also incorrectly states that "the Order relied on *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012) in finding that 'neither the FSIA nor the Vienna Convention provides Respondent with immunity from *discovery*.'" Dkt. 192, ¶ 12 (emphasis in original). A good faith reading of the November 26 Order demonstrates that the Court determined, correctly, that EM Ltd. established that the FSIA provides Respondent with no immunity from discovery, and recognized that, although it cited authority providing that the Vienna Convention provided immunity from attachment in certain circumstances, Respondent failed to provide any authority establishing that the Vienna Convention conferred immunity from discovery. Respondent's objections to the November 26 Order still do not supply any such authority. Petitioners submit that, given that a majority of the funds held in both the Embassy's and Mission's accounts generally goes completely unused from month-to-month, those amounts are highly unlikely to be necessary for the "full functioning" of the Embassy or U.N. Mission, and thus should not be immune from attachment under the Vienna Convention.

2

Although Respondent attempts to avoid acknowledging the holdings of *EM Ltd.* by claiming that the case does not apply to it because *EM Ltd.* involved an order to compel third-party subpoena responses, that argument is meritless, as evidenced by the plain language of that case, *see id.* at 209 ("Once the district court had subject matter and personal jurisdiction over Argentina, it could exercise its judicial power **over Argentina** as over any other party, including ordering third-party compliance with the disclosure requirements of the Federal Rules.") (emphasis supplied), as well as existing Second Circuit precedent, *see First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d at 52 (holding that the judgment creditor First City was entitled to obtain discovery **from the sovereign judgment debtor Rafidain Bank** because "personal jurisdiction has been obtained over Rafidain, and . . . subject matter jurisdiction exists because Rafidain's waiver of sovereign immunity for the purposes of First City's law suit against it continues through post-judgment discovery and collection of the money judgment.") (emphasis supplied).

### B. Respondent Has No Vienna Convention Immunity From Discovery

This Court noted in its September 13, 2011 Opinion that

> Respondent does not offer any authority for the proposition that the Vienna Convention immunizes property from discovery or attachment. The decisions cited by Respondent consider whether the Vienna Convention protects particular property from attachment. *See, e.g., Liberian E. Timber Corp.*, 659 F. Supp. at 608. These decisions do not stand for the proposition that a plaintiff cannot seek discovery about particular assets to determine if that property is, in fact, immune under the Vienna Convention.

Dkt. 66, at 13. Neither Respondent's Objections to the November 26 Order nor its Objections to the December 17 Order provide any such authority holding that the Vienna Convention confers any immunity from discovery, and its conclusory assertions that "the accounts are not

3

attachable" under the Vienna Convention does not suffice to preclude Petitioners from obtaining discovery sought in order to make that very determination.

### C. Petitioners Are Entitled to Take the Noticed Depositions

Petitioners note that "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd.*, 695 F.3d at 207; *see also Rafidain Bank*, 281 F.3d at 54 (citing authorities holding that a judgment creditor must be permitted to make a broad inquiry to discover hidden or concealed assets of the judgment debtor). While Respondent has consistently resisted discovery in this case on grounds of "immunity" and its "entitlement" to be free from the "burdens of litigation," the law of this Circuit makes clear that Respondent enjoys no immunity from discovery or other "burdens" of litigation, particularly given the fact that these post-judgment discovery proceedings have been necessitated solely by Respondent's refusal to pay this Court's judgment.

Respondent is incorrect in its assumption that because commercial expenditures made by the Embassy and Mission are used for "diplomatic purposes," the accounts are immune. As the November 26 Order properly recognized, "[u]nder the FSIA, 'transactions to purchase goods or services from private entities' constitute 'commercial activity' no matter what diplomatic purpose the transactions ultimately serve.'" *See* Dkt 183, at 7 (citing *Liberian E. Timber Corp. v. Gov't of the Republic of Liberia*, 659 F. Supp. 606, 610 (D.D.C. 1987)); *see also El-Hadad v. United Arab Emirates et al.*, 496 F.3d 658, 663 (D.C. Cir. 2007) ("The employment of diplomatic, civil service, or military personnel by an embassy are governmental functions, while the embassy's employment of "laborers, clerical staff, or public relations or marketing agents" is commercial in nature") (citing H.R. REP. NO. 94-1487, at 16 (1976), as reprinted in 1976 U.S.C.C.A.N.); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9,18 (D.D.C. 2003)

4

(explaining that a contract by a foreign government to make repairs on an embassy building would be considered a commercial contract, "even if their ultimate object is to further a public function"); *Birch Shipping Corp. v. Embassy of the United Republic of Tanzania*, 507 F. Supp. 311, 313 (D.D.C. 1980) (funds used "solely for the purpose of the maintenace (sic) and support of the Embassy and its personnel," including "to pay the salaries of the staff [and] pay for incidental purchases and services necessary and incident to the operation of the Embassy" were commercial funds, subject to attachment) (citing H.R. REP. NO. 94-1487, at 6606).

Finally, Respondent's assertion that Judge Freeman's conclusion that there is "at least some possibility that the funds in the Embassy and Mission accounts, or a portion of those funds, will be attachable" is not "legally relevant," Dkt. 192 ¶ 16, is inaccurate in light of authorities recognizing that funds used in connection with commercial activities have no immunity from attachment under the FSIA and may be attached regardless of whether they are placed in the same account as funds that are used for diplomatic expenditures. *See Weston Compagnie de Finance Et D'Investissement, S.A. v. La Republica del Ecuador*, 823 F. Supp. 1106, 1114 (S.D.N.Y. 1993) (explaining that funds held in both embassy and central bank accounts that are used for commercial purposes are not afforded FSIA immunity from attachment, even when such funds are placed in the same account as those used for governmental purposes, and noting that the mere placement of non-immune funds in a central bank account of will not immunize such funds from attachment) (citing *Birch Shipping Corp. v. Embassy of United Rep. of Tanzania*, 507 F. Supp. 311, 313 (D.D.C. 1980) (denying motion to quash writ of garnishment obtained by plaintiff in satisfaction of arbitration award that was served on bank holding Embassy of Tanzania's checking account used to pay staff salaries and incidental purchases and services necessary to the operation of the Embassy, as such activity constituted commercial activity under

5

the FSIA)). Those authorities do not require that a certain percentage of the accounts be used for commercial as opposed to diplomatic purposes. However, the bank records produced so far by Respondent and JPMorgan Chase indicate that the majority of the Embassy's and Mission's expenditures are, in fact, "commercial" expenditures within the meaning of Section 1610 of the FSIA.

### D. The Phongphailath Declaration Does Not Establish that the Embassy and Mission Accounts Are Immune From Attachment

The Phongphailath Declaration consists of no more than sweeping, self-interested statements that the accounts at issue are used only for "diplomatic purposes" and speculation that the attachment of any funds held in the accounts will make it "difficult, perhaps impossible for the Embassy and U.N. Mission to carry out their functions." Respondent incorrectly asserts that the Phongphailath Declaration "establish[ed] that the Embassy and Mission bank accounts are used only for diplomatic purposes, and not to conduct any sort of 'commercial activity' in the United States not ancillary to the operation of the Embassy and Mission." Dkt. 192 at 4. As Judge Freeman correctly recognized, the self-serving,[2] conclusory assertions set forth in the Phongphailath Declaration have limited evidentiary value, and therefore hardly "establish" anything. Respondent's argument that Petitioners should be barred from discovery because they "cannot demonstrate" that the Embassy and Mission accounts are not immune is circular and illogical. Petitioners have sought to take the Depositions precisely for the purpose of determining whether certain funds within the accounts are attachable, and are entitled to do so in aid of their efforts to at least partially satisfy the judgment that Respondent has willfully refused

---

[2] As Petitioners have previously stated, Respondent's objections highlight precisely why Judge Freeman found the Phongphailath Declaration to be worthy of little weight, as they concede that the Phongphailath Declaration was primarily the product of Respondent's desire to "merely follow[ ] the course laid out" by this Court, and other cases in which attachment was vacated or denied. Dkt. 192, ¶ 14. Respondent's enthusiastic offer to submit a revised declaration, presumably crafted to correct the flaws that Judge Freeman found in the November 26 Order and to say whatever it thinks it must say in order to block this discovery truly underscores the limited value of the Phongphailath Declaration and any subsequent "revised" declarations Respondent may submit.

6

to pay. Moreover, Respondent's proffer of the Phongphailath Declaration simply does not resolve Petitioners' need for the Depositions, as it does not offer much more than Respondent's document production does. There are several payments reflected in the document production for which the nature and purpose of the transaction are not evident from the face of the bank records. For example, there are many payments made by both the Embassy and U.N. Mission to individuals whose names are not listed as diplomatic personnel of either establishment. There are also thousands of dollars in payments to "cash" made each month by both the Embassy and U.N. Mission. The Phongphailath Declaration does not attempt to explain the nature or purpose of these payments. Finally, the Phongphailath Declaration does not establish that the significant portion of both the Embassy and Mission accounts that remains completely unused each month is necessary for the full functioning of either diplomatic installation. Given these remaining ambiguities, Petitioners respectfully submit that they should be permitted to test the specific knowledge of representatives from the Lao Embassy and U.N. Mission by live deposition.

## II. Respondent Will Suffer No Irreparable Harm

Without citing any supporting authority, Respondent baselessly claims that "[g]reat and irreparable harm" will result if the Depositions move forward, as "Respondent's immunity from . . . discovery will be forever lost." As stated above, Respondent, who is unquestionably subject to this Court's jurisdiction, has no immunity from discovery. *See EM Ltd.*, 695 F.3d at 209 (holding that the Discovery Order "does not infringe on any immunity from the district court's jurisdiction that Argentina otherwise might enjoy" as the Court had both subject matter and personal jurisdiction over Argentina). Accordingly, no "infringement" will occur, and no bells will require "unringing," as a result of the Depositions moving forward.

7

Respondent's complaint that requiring Respondent's representatives to "spend time preparing for and participating in depositions" would cause a "real and substantial burden," Dkt. 192 ¶ 22, should fall on deaf ears. As Petitioners have stated on numerous prior occasions, if Respondent is unwilling to spend the time necessary to defend itself in post-judgment enforcement proceedings, the only proper resolution of its problem is to pay this Court's judgment.

### III. Petitioners Will Suffer Significant Injury

Petitioners will suffer significant harm by the granting of a stay. Respondent's most recent request for a stay cannot reasonably be viewed as any more than yet another dilatory tactic aimed at slowing down these proceedings as much as possible and preventing Petitioners from obtaining any valuable information concerning Respondent's assets. These discovery proceedings have been pending for more than two years; in that time, Respondent has appealed every discovery order that this Court has entered, has been sanctioned once for its noncompliance with one of those orders, and is currently in material and ongoing violation of three additional orders. As a result of Respondent's intransigence, Petitioners have had to invest an unduly vast amount of time and expense in prosecuting these discovery proceedings, and any continued delay will unquestionably cause Petitioners significant harm. *In re Gushlak*, No. 11-MC-0218, 2012 WL 2564466, at *8 (E.D.N.Y. Jan. 30, 2012) (denying stay of enforcement of subpoenas and recognizing that applicant "has a substantial interest in the speedy resolution of her request for discovery," and that applicant would suffer substantial injury if stay was granted given "the already protracted history of this litigation").

8

## IV. The Public Interest Will Not Be Served By a Stay

As Respondent has no immunity from the discovery sought by Petitioners, any "public interest" in the maintenance of the "protections afforded by sovereign immunity" would not be served, or even implicated, by the granting of a stay. In fact, granting Respondent's request for a stay would violate the public interest insofar as it would merely permit Respondent to continue evading its obligations under this Court's judgment. *See Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200, 2010 WL 234823, at * (S.D.N.Y. Jan. 21, 2010) (denying stay pending appeal where judgment-debtor's request for a stay pending appeal was "but one more attempt to obstruct [judgment-creditor's] efforts to enforce the judgments" and finding that where granting a stay of the January 13 Order pending appeal "would only prolong, possibly for a year or more, the relief to which Cordius Trust is unquestionably entitled" it would be contrary to the "overwhelmingly strong public interest in seeing that the judgments … are finally—if only partially satisfied and in ensuring that [the judgment-debtor] at last complies with his legal obligations").

## Conclusion

For all of the foregoing reasons, Respondent's Objections to the December 17 Order should be overruled.

Dated: January 16, 2013
    New York, New York

Respectfully submitted,

/s/ James E. Berger

James E. Berger (JB 6605)
Charlene C. Sun (CS 1281)
King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: 212.556.2200
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Petitioners Thai-Lao Lignite (Thailand) Co., Ltd. & Hongsa Lignite (Lao PDR) Co., Ltd.*