UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THAI-LAO LIGNITE (THAILAND) CO., LTD. & HONGSA LIGNITE (LAO PDR) CO., LTD.,<br><br>Petitioners,<br><br>v.<br><br>GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC,<br><br>Respondent. | No. 10 Civ. 5256 (KMW) (DF)<br><br>ECF Case |

## GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO VACATE THE JUDGMENT PURSUANT TO RULE 60(b)(5)

David J. Branson
2000 Pennsylvania Avenue, N.W.
Suite 4200
Washington, D.C.  20006
(202) 660-0010

Steven F. Molo
Robert K. Kry
MOLOLAMKEN LLP
540 Madison Ave.
New York, NY  10022
(212) 607-8160

George A. Bermann
Walter Gellhorn Professor of Law
Director, Center for International and
  Investment Arbitration
COLUMBIA UNIVERSITY SCHOOL OF LAW
435 West 116th Street
New York, NY 10027
(212) 854-4258

*Attorneys for Respondent Government of the Lao People's Democratic Republic*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT...................................................................................................................................2

I.      This Court's August 2011 Judgment Must Be Vacated .......................................................2

        A.      The Rule 60(b)(5) Standard ......................................................................................2

        B.      The New York Convention Calls for Non-Recognition of an Arbitral
              Award That Has Been Vacated in the Rendering Jurisdiction  ...............................3

        C.      *Baker Marine* Requires Vacatur of the Judgment in This Case...............................8

II.     Respondent Cannot Be Required To Post Security as a Condition of Vacating the
       Judgment Under Rule 60(b)(5) ............................................................................................10

CONCLUSION..............................................................................................................................13


# TABLE OF AUTHORITIES

**CASES**

*Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194 (2d Cir. 1999) ........ passim

*Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640 (D.C. Cir. 1996) ................ 2

*Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex Exploración y Producción*, Dkt. #236 (2d Cir. Feb. 16, 2012) ...................................... 8

*CPConstruction Pioneers Baugesellschaft Anstalt (Liechtenstein) v. Gov't of Republic of Ghana, Ministry of Roads & Transp.*, 578 F. Supp. 2d 50 (D.D.C. 2008) ................................................................................................................ 5

*Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46 (4th Cir. 1993) .................. 7

*First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda – Permanent Mission*, 877 F.2d 189 (2d Cir. 1989) ........................................................................................ 12

*Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 288 F. Supp. 2d 783 (N.D. Tex. 2003), *aff'd*, 115 F. App'x 201 (5th Cir. 2004) ......................................... 5

*Hoeft v. MVL Grp., Inc.*, 343 F.3d 57 (2d Cir. 2003) ........................................................ 8

*In re Chromalloy Aeroservices*, 939 F. Supp. 907 (D.D.C. 1996) .................................. 7, 8

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir. 2004) ......................................................................... 3

*Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238 (2d Cir. 2006) .................... 2, 11

*Knox v. Palestine Liberation Org.*, 248 F.R.D. 420 (S.D.N.Y. 2008) .............................. 12

*Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382 (5th Cir. 2012) .............. 3

*Russello v. United States*, 464 U.S. 16 (1983) ................................................................. 13

*Sales v. Republic of Uganda*, 828 F. Supp. 1032 (S.D.N.Y. 1993) .................................. 12

*Sales v. Republic of Uganda*, No. 90 Civ. 3972, 1992 WL 406482 (S.D.N.Y. Jan. 27, 1993) ............................................................................................. 12

*Selletti v. Carey*, 173 F.3d 104 (2d Cir. 1999) ................................................................. 11

*Skandia Am. Reinsurance Corp. v. Caja Nacional de Ahorro y Segoro*, No. 96 Civ. 2301, 1997 WL 278054 (S.D.N.Y. May 23, 1997) .............................................. 13

*Spier v. Calzaturificio Tecnica, S.p.A.*, 71 F. Supp. 2d 279, *on reargument*, 77 F.
     Supp. 2d 405 (S.D.N.Y. 1999)......................................................................................5

*Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226 (2d Cir. 1995).....................2, 11

*TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007)............................5

*WW, LLC v. Coffee Beanery Ltd.*, 419 F. App'x 372 (4th Cir. 2011)..................................2

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15
     (2d Cir. 1997)..............................................................................................................3

**TREATIES, STATUTES, AND RULES**

United Nations Convention on the Recognition and Enforcement of Foreign
     Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997................... *passim*

9 U.S.C. §§ 201-202 .............................................................................................................9

28 U.S.C. § 1610(a) ............................................................................................................11

Fed. R. Civ. P. 55(c) ...........................................................................................................12

Fed. R. Civ. P. 60(b) .............................................................................................................7

Fed. R. Civ. P. 60(b)(5)............................................................................................... *passim*

Fed. R. Civ. P. 60(b)(6).......................................................................................................12

**OTHER AUTHORITIES**

*Restatement (Third) of the U.S. Law of International Commercial Arbitration*
     (Tentative Draft No. 2, 2012) ................................................................................6, 12

Sunil Abraham, IBA Arbitration Comm., *Malaysia: Arbitration Guide* (2011) ..................8

*UNCITRAL Model Law on International Commercial Arbitration* (1994),
     *available at* http://www.uncitral.org/pdf/english/texts/arbitration/ml-arb/06-
     54671_ Ebook.pdf................................................................................................6, 10

W. Michael Reisman & Heide Iravani, *The Changing Relation of National Courts
     and International Commercial Arbitration*, 21 Am. Rev. Int'l Arb. 5 (2010) ..............6

The Government of the Lao People's Democratic Republic ("Respondent") respectfully submits this memorandum of law in support of its motion pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure for relief from the Court's August 2011 judgment (as amended) enforcing a Malaysian arbitral award that was rendered in favor of Thai-Lao Lignite (Thailand) Co., Ltd. and Hongsa Lignite (Lao PDR) Co., Ltd. ("Petitioners") but recently vacated by the Malaysian High Court.

## PRELIMINARY STATEMENT

Petitioners brought this action to enforce an arbitral award rendered in Malaysia on November 4, 2009. On August 5, 2011, this Court entered judgment on an August 3, 2011 order enforcing that award (Dkt. #50, 51), which it later amended on April 17, 2012 (Dkt. #85, 87). On December 27, 2012, however, the Malaysian High Court vacated the arbitral award on which this Court's judgment was based. The note of the High Court's oral ruling vacating the award is attached as Exhibit A to the Kry Declaration, and the High Court's order is attached as Exhibit B. In light of the Malaysian High Court's ruling, Respondent respectfully moves to vacate this Court's judgment under Federal Rule of Civil Procedure 60(b)(5).

Vacatur of the judgment is called for under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 (the "New York Convention"). Article V(1)(e) of the Convention provides that a court may refuse to enforce an award that "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." 21 U.S.T. at 2520. The Second Circuit, interpreting that provision, has held that when an arbitral award has been lawfully vacated in the jurisdiction where it was rendered, absent extraordinary circumstances the vacated award should not be enforced. *See Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194 (2d Cir. 1999). Because the arbitral award that was the sole basis for this Court's

judgment has now been set aside by the High Court in Malaysia, the country where the award was rendered, this Court should vacate its own judgment enforcing that award.

Moreover, the Court should vacate the judgment without requiring Respondent to post security. Requiring a sovereign nation to bring assets into the jurisdiction to post security would violate its immunity from execution under the Foreign Sovereign Immunities Act. *See Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226 (2d Cir. 1995); *Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 242 (2d Cir. 2006). Indeed, it makes no sense to require security at this point. Where an arbitral award has already been vacated, there is nothing to secure – no further performance by the party is required, and all that remains is for the enforcing court to vacate the judgment of enforcement. Finally, although Article VI of the New York Convention provides that a party may be required to post security to avoid entry of a judgment ***while the party seeks to vacate the underlying arbitral award in the rendering jurisdiction***, *see* New York Convention art. VI, 21 U.S.T. at 2520, there is no comparable security requirement in Article V governing situations where the award has ***already*** been set aside. The Court should accordingly vacate the judgment without requiring security.

## ARGUMENT

### I. THIS COURT'S AUGUST 2011 JUDGMENT MUST BE VACATED

#### A. The Rule 60(b)(5) Standard

Federal Rule of Civil Procedure 60(b)(5) is "an appropriate vehicle by which to challenge a judgment confirming an arbitration award." *Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 642 (D.C. Cir. 1996); *see also WW, LLC v. Coffee Beanery Ltd.*, 419 F. App'x 372 (4th Cir. 2011). That rule provides that, "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding [where] . . . it is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). The rule applies whenever the prior judgment "is a

2

necessary element of the decision, giving rise, for example, to the cause of action or a successful defense." *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 386 (5th Cir. 2012) (internal quotation marks omitted).  Because an arbitral award's existence and validity is clearly a "necessary element" of any judgment enforcing an award, Rule 60(b)(5) permits the court to vacate a judgment of enforcement once the underlying arbitral award has been set aside.

> **B.    The New York Convention Calls for Non-Recognition of an Arbitral Award That Has Been Vacated in the Rendering Jurisdiction**

"The New York Convention provides a carefully structured framework for the review and enforcement of international arbitral awards." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004).  That regime distinguishes between the "primary jurisdiction" where the arbitral award was rendered and "secondary jurisdictions" where it is sought to be enforced.  *Id.* "Only a court in a country with primary jurisdiction over an arbitral award may annul that award.  Courts in other countries . . . [are] limited to deciding whether the award may be enforced in that country."  *Id.* (footnote omitted).  Article V(1)(e) of the New York Convention thus calls for non-recognition and non-enforcement of an arbitral award if "[t]he award has . . . been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  21 U.S.T. at 2520.  That provision "specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).  The New York Convention thus assigns a dominant role to the courts of the country where the award was rendered – here, Malaysia.  Absent extraordinary circumstances, courts in the 147 other countries that are parties to the Convention must follow suit.

The Second Circuit has accordingly held that, when an arbitral award has been lawfully vacated in the jurisdiction where it was rendered, the vacated award should not be enforced, at least absent exceptional circumstances not present here. In *Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194 (2d Cir. 1999), a Nigerian corporation brought an enforcement action in New York against another Nigerian corporation to enforce two arbitral awards that had been rendered in Nigeria. *Id.* at 195-96. The awards, however, had been vacated by the Nigerian Federal High Court. *Id.* at 196. The Second Circuit held that, because the Nigerian Federal High Court – the court of the jurisdiction where the awards were rendered – had vacated the awards, they could not be enforced. *Id.* at 197.

The Second Circuit first rejected the petitioner's argument that the awards should be enforced because the Nigerian court's reasons for setting aside the awards would not be valid grounds for vacating an award under U.S. law. As the court explained, "the parties contracted in Nigeria that their disputes would be arbitrated under the laws of Nigeria." 191 F.3d at 197. The Nigerian court's ruling would thus be followed even if it gave less deference to the arbitral decision than a U.S. court would have given to it. *Id.* The Second Circuit thus squarely refused to allow a party to take a vacated arbitral award and seek its enforcement in other countries based on the laws of those countries applicable to arbitrations conducted locally:

> [A]s a practical matter, mechanical application of domestic arbitral law to foreign awards under the Convention would seriously undermine finality and regularly produce conflicting judgments. If a party whose arbitration award has been vacated at the site of the award can automatically obtain enforcement of the awards under the domestic laws of other nations, a losing party will have every reason to pursue its adversary with enforcement actions from country to country until a court is found, if any, which grants the enforcement.

191 F.3d at 197 n.2 (internal quotation marks omitted).

4

Next, the Second Circuit rejected the argument that the New York Convention gave the district court discretion to enforce the award notwithstanding the fact that it had been set aside in Nigeria.  The petitioner pointed to the allegedly "permissive" language of Article V(1)(e) – that enforcement "may" be refused if the award has been nullified in the jurisdiction where it was rendered.  191 F.3d at 197.  But that phrasing, the court held, was not a sufficient basis to ignore the Nigerian court's decision to set aside the award.  It was a "sufficient answer that Baker Marine has shown no adequate reason for refusing to recognize the judgments of the Nigerian court." *Id.*

Courts across the country have followed *Baker Marine*'s holding.  For example, in *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007), the petitioner sought to enforce a Colombian arbitration award that had been nullified by the Colombian courts.  *Id.* at 929.  Following *Baker Marine*, the court refused to enforce the award:  "[A]n arbitration award ***does not exist to be enforced*** in other Contracting States if it has been lawfully 'set aside' by a competent authority in the State in which the award was made." *Id.* at 936 (emphasis added).

Likewise, in *Spier v. Calzaturificio Tecnica, S.p.A.*, 71 F. Supp. 2d 279, *on reargument*, 77 F. Supp. 2d 405 (S.D.N.Y. 1999), a U.S. citizen sought to enforce an arbitration award rendered in Italy against an Italian corporation, even though the award had been vacated by the Italian courts on the ground that the arbitrators exceeded the scope of their powers.  71 F. Supp. 2d at 280-84.  That lawfully vacated award, the court held, could not be enforced in a U.S. court.  *Id.* at 287-89; *see also CPConstruction Pioneers Baugesellschaft Anstalt (Liechtenstein) v. Gov't of Republic of Ghana, Ministry of Roads & Transp.*, 578 F. Supp. 2d 50, 53-54 (D.D.C. 2008) (following *TermoRio*); *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 288 F. Supp. 2d 783, 793 (N.D. Tex. 2003), *aff'd*, 115 F. App'x 201 (5th Cir. 2004) (following *Spier*).

Commentators are in accord.  The UNCITRAL Secretariat's explanatory notes on the Model Law on International Commercial Arbitration state:

5

> [T]he grounds for refusal of recognition or enforcement are valid and effective only in the State (or States) where the winning party seeks recognition and enforcement, while the grounds for setting aside have a different impact: The setting aside of an award at the place of origin ***prevents enforcement of that award in all other countries*** by virtue of Article V(1)(e) of the 1958 New York Convention and article 36(1)(a)(v) of the Model Law."

*UNCITRAL Model Law on International Commercial Arbitration* 23-24 ¶ 44 (1994), *available at* http://www.uncitral.org/pdf/english/texts/arbitration/ml-arb/06-54671_ Ebook.pdf (emphasis added).

Likewise, Section 4-16 of the recently adopted *Restatement (Third) of the U.S. Law of International Commercial Arbitration* states: "Ordinarily, a court ***will not confirm, recognize, or enforce an award that has been set aside by a competent authority***." *Restatement (Third) of the U.S. Law of International Commercial Arbitration* § 4-16 cmt. c (Tentative Draft No. 2, 2012) (emphasis added).

Professor W. Michael Reisman concurs and adds that the New York Convention's use of the word "may" is not a license to ignore a decision of the primary court vacating the award. Noting that the French and Spanish versions of the Convention use mandatory language instead of "may," Professor Reisman states:

> [T]he legal effects which the Convention assigns to the national judicial acts of the primary and secondary jurisdictions differ significantly. The secondary jurisdiction may only decide whether or not to *enforce* the award. There are not to be any "nullificatory" consequences for decisions in secondary jurisdictions: they are limited to the question of enforcement and only in that secondary forum. By contrast, nullificatory (as opposed to non-enforcement) consequences of decisions in primary jurisdictions have a universal effect. In terms of the dynamic of the Convention, ***once an award has been set aside in a primary jurisdiction, it is not supposed to be enforceable anywhere else***. . . . If an award is rendered, let us say, in Switzerland and is nullified under Swiss law, it ***may not be enforced in any other jurisdiction***. Otherwise, there would be no difference between primary and secondary fora and, instead of finality, an incentive to flout it.

W. Michael Reisman & Heide Iravani, *The Changing Relation of National Courts and International Commercial Arbitration*, 21 Am. Rev. Int'l Arb. 5, 12-14 (2010) (second emphasis added).

6

*Baker Marine*'s rationale applies equally when the rendering jurisdiction vacates the award after the secondary jurisdiction has already entered a judgment of enforcement. Regardless of the sequence of events, allowing a party to enforce a vacated arbitration award upsets the New York Convention's basic design that the primary jurisdiction – the country where the award was rendered – has the predominant role in determining the award's validity. And regardless of the sequence of events, allowing a party to enforce a vacated award indefinitely would defy the Second Circuit's admonitions about "seriously undermin[ing] finality and regularly produc[ing] conflicting judgments." *Baker Marine*, 191 F.3d at 197 n.2. A holding that *Baker Marine* does not apply to Rule 60(b)(5) motions would encourage a race to the courthouse, in which the successful party to the arbitration would seek to obtain judgments enforcing the award in as many jurisdictions as possible before the seat of the arbitration could vacate the award. That is not what the New York Convention envisions. Whatever discretion a court may have under Rule 60(b)(5) in other contexts, the New York Convention requires vacatur of the judgment here.[1]

As the Second Circuit noted in *Baker Marine*, there is one aberrant district court decision, *In re Chromalloy Aeroservices*, 939 F. Supp. 907 (D.D.C. 1996), that enforced an arbitral award even though it had been vacated by the rendering jurisdiction. 191 F.3d at 197 n.3. But *Chromalloy* is of course not binding on this circuit, is no longer good law, and is inapplicable for multiple reasons. First, *Chromalloy* found that the Egyptian

---

[1] In any event, even if this Court had discretion whether to vacate the judgment, it would be an abuse of discretion not to do so here. Courts have identified four considerations governing relief under Rule 60(b): (1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances. *See, e.g., Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). Each factor weighs heavily in favor of vacating the judgment here. First, the motion is inarguably timely, as the High Court issued its ruling just six weeks ago. Second, the Malaysian court's decision setting aside the award provides a compelling defense to enforcement. Third, Petitioners would suffer no unfair prejudice, both because they are not entitled to collect on a non-existent arbitral award and because they have the opportunity to seek appropriate damages, if any, in a valid arbitration in which the arbitrators do not exceed their authority. Fourth, the setting aside of the very arbitral award on which the judgment is based is an exceptional circumstance justifying relief under Rule 60(b)(5).

7

court had set aside the award because the arbitrators committed an error of law. 939 F. Supp. at 908, 911-12. The court deemed that ruling contrary to American practice, which prohibits reviewing arbitral awards for mere legal error. *Id.* at 911. That rationale was specifically rejected in *Baker Marine*. 191 F.3d at 196-97. Second, *Chromalloy* was concerned about an American company being unfairly treated by the courts of the jurisdiction where the state enterprise that had breached the contract was domiciled. 939 F. Supp. at 913-14; *see Baker Marine*, 191 F.3d at 197 n.3. That rationale is inapplicable here because there is no American party in this case at all.

Finally, *Chromalloy* was troubled that the Egyptian party had sought judicial review of the award after promising not to appeal or seek review. 939 F. Supp. at 912. That rationale has likewise been rejected. In *Hoeft v. MVL Group, Inc*., 343 F.3d 57 (2d Cir. 2003), the Second Circuit held that parties "may not divest the courts of their statutory and common-law authority to review both the substance of [arbitral] awards and the arbitral process." *Id.* at 66. The law is the same in Malaysia: Petitioners' own counsel in the arbitration has published an article explaining that parties may ***not*** "waive the right to challenge an arbitration award." Sunil Abraham, IBA Arbitration Comm., *Malaysia: Arbitration Guide* 16 (2011). Accordingly, the contractual provision *Chromalloy* relied upon is now unenforceable under both U.S. and Malaysian law.[2]

### C. *Baker Marine* Requires Vacatur of the Judgment in This Case

*Baker Marine*'s holding applies squarely here. Just as in *Baker Marine*, Petitioners have "shown no adequate reason for refusing to recognize the judgment[ ]" of the Malaysian court. 191 F.3d at 197. This is not an extraordinary case in which a

---

[2] Petitioners also claim that Second Circuit law is unclear because of the court's recent order in *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex Exploración y Producción*, Dkt. #236 in Case No. 10-4656 (2d Cir. Feb. 16, 2012) ("*Pemex*") (attached as Kry Decl. Ex. C). But in *Pemex*, the Second Circuit immediately vacated the judgment upon being notified that it was based upon a vacated award, and remanded the case to the district court for further consideration. That brief summary order is fully consistent with *Baker Marine*'s holding—absent extraordinary circumstances, an award set aside in the primary court cannot be enforced in this Circuit.

8

foreign government seeks to deprive a U.S. citizen of an arbitral award by using its own courts to vacate the award.  Petitioner Thai-Lao Lignite is incorporated in Thailand, and Petitioner Hongsa Lignite is incorporated in the Lao PDR.  Petition to Confirm ¶¶ 2-3 (Dkt. #1-1).  The arbitration clause in the Project Development Agreement explicitly specified that the arbitration would take place in a neutral third country – Kuala Lumpur, Malaysia.  Dkt. #10-1 § 14.1.  That seat of the arbitration was chosen by Petitioners.  Indeed, Petitioners' lawyer, Mr. Delaney, wrote the contract; his name appears on the first page of the PDA:  "Prepared by Delaney & Co., 1199 Park Avenue, New York, New York, U.S.A."  *Id.* at 1; *cf.* Dkt. #16-6 ¶¶ 8-9.

       Nor is there any other reason to doubt the integrity of the Malaysian court's decision.  Malaysia has a lengthy common law heritage as a former British Colony; its arbitration statutes and practices were modeled directly on British arbitration statutes.  Singh Decl. ¶ 2.  In 1980, Malaysia amended its Arbitration Act by adding Section 34, which provided that, for international arbitrations held under the auspices of the Kuala Lumpur Regional Arbitration Centre, the only grounds under which a Malaysian court could refuse enforcement of an arbitral award were those set forth in Article V of the New York Convention.  *Id.* ¶ 3.  In 2005, Malaysia joined approximately 70 nations in adopting the UNCITRAL Model Law on International Commercial Arbitration as the Malaysian Arbitration Act.  *Id.* ¶ 4.  The Model Law and the Malaysian Arbitration Act track precisely the provisions governing non-recognition and non-enforcement in the New York Convention – provisions also found in the U.S. Federal Arbitration Act.  *Id.*; *see* 9 U.S.C. §§ 201-202.

       Petitioners also had a full opportunity to be heard before the Malaysian courts, both orally and in writing.  Both parties submitted lengthy written affidavits setting forth their factual and legal assertions.  Thai-Lao Lignite, represented by distinguished Malaysian counsel, Mr. Cecil Abraham, Sunil Abraham's partner, submitted two affidavits, one on November 9, 2012, and the other on December 4, 2012.  Kry Decl. Ex.

B at 2. Mr. Abraham submitted his written legal argument on December 10, 2012, and submitted a reply on December 14, 2012. *Id.* at 2-3. Counsel then appeared before the High Court for two full days of oral argument on December 17 and December 20, 2012. *Id.* at 2. The court then took the case under advisement and announced the judgment a week later, delivering an oral ruling that day, with a full written opinion to follow. Kry Decl. Ex. A. Petitioners thus had a full and fair hearing before a neutral tribunal on the issue of arbitrability.

Notably, the Malaysian court vacated the award on the basis of a universally recognized ground for vacatur. The court set aside the award under Section 37 of Malaysia's Arbitration Act because the arbitrators had exceeded the scope of the parties' submission to arbitration. Kry Decl. Ex. A. That ground is a standard one, *see, e.g.*, *UNCITRAL Model Law on International Commercial Arbitration* art. 34(2)(a)(iii) (1994), and there is nothing in the least suspicious about its application in this case.

There is no basis here for a secondary court under the New York Convention to discredit the judgment of a competent primary court declaring an award void and unworthy of recognition or enforcement elsewhere. The court that took that action is a court of a neutral nation, Malaysia, that Petitioners themselves selected for its judicial independence and modernity. That award is now unenforceable in the United States.

## II. RESPONDENT CANNOT BE REQUIRED TO POST SECURITY AS A CONDITION OF VACATING THE JUDGMENT UNDER RULE 60(b)(5)

Petitioners contend that Respondent must post a bond as a condition of granting this Rule 60(b)(5) motion to vacate the judgment. *See* Jan. 15, 2013 Letter from James Berger to the Court. That is incorrect for multiple reasons.[3]

First, requiring a sovereign nation like Respondent to bring assets into the jurisdiction to post security would violate the Foreign Sovereign Immunities Act. As the

---

[3] Petitioners also suggest that the mere *consideration* of this motion should be conditioned upon the posting of security. Jan. 15 Letter at 2-3. Not even the cases that Petitioners cite support that outlandish position.

Court knows, the FSIA explicitly limits execution to assets located "in the United States." 28 U.S.C. § 1610(a). In *Stephens v. National Distillers & Chemical Corp.*, 69 F.3d 1226 (2d Cir. 1995), the Second Circuit held that requiring a sovereign to post security was sufficiently similar to seizing assets that the same restrictions applied.  As the court explained, "forc[ing] foreign sovereign[s] . . . to place some of their assets in the hands of the United States courts for an indefinite period" would have "precisely the same result that would obtain if the foreign sovereign's assets were formally attached." *Id.* at 1229. Emphasizing that the "principle behind the prohibition against attachments should apply broadly," the court ruled that the FSIA precluded a security requirement. *Id.* at 1230; *see also Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 242 (2d Cir. 2006) (stating that a security requirement "d[id] not purport to reach beyond the FSIA limitations" because it did not "require the Congo to bring immune assets into the jurisdiction"). Petitioners have yet to identify any assets Respondent owns in the United States that could be used to post security.

Second, the concept of requiring security is simply not compatible with a motion to vacate a judgment under Rule 60(b)(5) where the underlying arbitral award has been set aside.  "[T]he primary purpose of [a] bond requirement is to insure that whatever assets a party *does* possess will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded." *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir. 1999).  Security is therefore posted, when appropriate, to secure payment of a potential or actual judgment or associated costs in a pending proceeding.

For example, requiring a bond in cases where a party is seeking relief from a default judgment might make sense because the action will continue in that court with the defaulting party's participation; the bond ensures that the defaulting party will ultimately pay the award if it is eventually held liable.  Indeed, in each of the cases Petitioners cite in their January 15 letter to the Court, parties were required to post security to obtain relief from a ***default judgment*** under a provision other than Rule 60(b)(5), and the

posting party was proceeding to litigate a case that had not yet been litigated. *See, e.g.*, *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda – Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989) (default judgment vacated under Rule 60(b)(6)); *Sales v. Republic of Uganda*, 828 F. Supp. 1032, 1034 (S.D.N.Y. 1993) (citing *Sales v. Republic of Uganda*, No. 90 Civ. 3972, 1992 WL 406482, at *2 (S.D.N.Y. Jan. 27, 1993)) (default judgment vacated under Rule 55(c)); *Knox v. Palestine Liberation Org.*, 248 F.R.D. 420, 424 (S.D.N.Y. 2008) (default judgment vacated under Rule 60(b)(6)).  By contrast, where a judgment is vacated under Rule 60(b)(5) because the arbitral award on which it is based has been set aside, there is no anticipated performance that would require security.  There is nothing more for the parties to do and thus no future performance to secure.

Finally, requiring security would be inconsistent with the New York Convention. Article VI of the Convention provides that a sovereign may be required to post security to avoid entry of a judgment "[i]f an ***application*** for the setting aside or suspension of the award has been made to a competent authority" – in other words, while a motion to vacate the award is ***pending***.  21 U.S.T. at 2520 (emphasis added).  As the comments to Section 4-16 of the *Restatement (Third) of the U.S. Law of International Commercial Arbitration* make clear, Article VI addresses only situations where an action to set aside the award ***is still pending***:

> Under Article VI of the New York Convention and Article 6 of the Panama Convention, a court asked to grant post-award relief with respect to a Convention award may, in its discretion, adjourn the proceedings ***pending the outcome of a set-aside action in another jurisdiction***.  If the court decides to adjourn the action, it may require the posting of appropriate security.  The mere fact that a set-aside action could still be brought before a competent authority will not justify a denial or deferral of post-award relief; a set-aside action must be pending.  If no such action is pending, post-award relief, if otherwise warranted, must be granted.

*Restatement (Third) of the U.S. Law of International Commercial Arbitration* § 4-16 cmt. e (emphasis added).  By contrast, Article V of the Convention – which provides for non-enforcement of arbitral awards where the award has ***already*** been vacated – contains no

12

similar security requirement. 21 U.S.T. at 2520. That the Convention's drafters included a security requirement in Article VI but omitted one from Article V is powerful evidence that no such requirement was intended where, as here, an arbitral award has already been set aside. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (where a legal text "'includes particular language in one section . . . but omits it in another,'" the drafters are presumed to act "'intentionally and purposely in the disparate inclusion or exclusion'").[4]

## CONCLUSION

For the foregoing reasons, pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure, Respondent respectfully requests that this Court vacate the judgment enforcing the arbitral award in light of the Malaysian High Court's ruling setting aside the award in Malaysia, and that it do so without requiring security.

Dated: February 11, 2013                                          Respectfully submitted,


David J. Branson                                                          George A. Bermann
2000 Pennsylvania Avenue, N.W.                             Walter Gellhorn Professor of Law
Suite 4200                                                                     Director, Center for International and
Washington, D.C. 20006                                              Investment Arbitration
(202) 660-0010                                                            COLUMBIA UNIVERSITY SCHOOL OF LAW
                                                                                    435 West 116th Street
   /s/ Robert K. Kry                                                     New York, NY 10027
Steven F. Molo                                                           (212) 854-4258
Robert K. Kry
MOLOLAMKEN LLP
540 Madison Ave.
New York, NY 10022
(212) 607-8160

*Attorneys for Respondent Government of the Lao People's Democratic Republic*

---

[4] This Court's ruling in *Skandia America Reinsurance Corp. v. Caja Nacional de Ahorro y Segoro*, No. 96 Civ. 2301, 1997 WL 278054 (S.D.N.Y. May 23, 1997), is not to the contrary. There, the arbitration had been conducted in New York, so this Court determined that, as the jurisdiction that rendered the award, it was the competent authority to review the award under Article V(1)(e). This Court in turn invoked Article VI to require respondent to post security while the award was being reviewed. *Id.* at 5-6.

13