UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THAI-LAO LIGNITE (THAILAND) CO., LTD. & HONGSA LIGNITE (LAO PDR) CO., LTD, <br><br> Petitioners, <br><br> v. <br><br> GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC, <br><br> Respondent. | Index No.  10 Civ. 5256 (KMW) (DF) |

**DECLARATION OF CHARLENE C. SUN IN SUPPORT OF PETITIONERS' MOTION FOR THE ISSUANCE OF RESTRAINING NOTICES AND TO COMMENCE <u>TURNOVER PROCEEDINGS</u>**

I, Charlene C. Sun, declare as follows:

1. I am an attorney duly admitted to practice in New York and before this Court. I am associated with the law firm of King & Spalding LLP, attorneys of record for Thai-Lao Lignite (Thailand) Co., Ltd. ("TLL") and Hongsa Lignite (Lao PDR) Co., Ltd. ("HLL") (together, "Petitioners") in this matter. The facts set forth herein are personally known to me, and, if called as a witness, I could and would testify competently thereto.

2. Petitioners seek leave from this Court to serve restraining notices and commence turnover proceedings against certain commercial airlines (the "Airlines") which owe debts to Respondent the Government of the Lao People's Democratic Republic ("Laos"), in the form of monthly overflight fees, in aid of the judgment entered herein. In accordance with this Court's Local Rule 6(d), Petitioners state they have moved for this relief *ex parte* by order to show case

1

because they believe that there is a significant risk that Laos, who has openly and defiantly refused to satisfy this Court's judgment for over a year and a half, will attempt to move its assets out of this Court's reach if given notice of Petitioners' attempt to restrain its assets and the time to do so. As detailed in Petitioners' correspondence to the Court dated February 7, 2013, a redacted[1] copy of which is attached hereto as Exhibit A, Petitioners discovered through recent deposition testimony that Laos changed its banking arrangements with respect to accounts held by its Embassy to the United States almost immediately after the cut-off date of this Court's order requiring disclosure of that account's records, without disclosing that change to Petitioners. The witness's testimony also confirmed that the Lao Permanent Mission to the United Nations also changed its banking arrangements at some point after the production cut-off date, also without disclosing the change, ensuring that Petitioners would have no current information concerning the Mission's bank accounts either. Petitioners thus believe that Laos will likely make efforts to change its payment arrangements or otherwise remove its assets from this Court's jurisdiction if given the opportunity to do so. A prior similar request for relief was made by Petitioners by order to show cause on August 17, 2011 (the "Omnibus Enforcement Motion"); however, Petitioners have voluntarily withdrawn the majority of the requests for relief in that motion, including, *inter alia*, all requests pertaining to overflight fees.

**Background**

      3.      In the Project Development Agreement ("PDA") that Petitioners entered into with the Government of the Lao People's Democratic Republic ("Laos"), a true and correct copy of which is attached hereto as Exhibit A, Laos expressly agreed to submit any dispute arising out of

---

[1] While the unredacted version of this letter was delivered to the Court on February 7, Petitioners have redacted Exhibit A in order to prevent public disclosure of portions of that letter which might implicate the stipulated protective orders governing this case.

the PDA to final and binding arbitration under the UNCITRAL Arbitration Rules. Exhibit B, Art. 14.1(i). In Article 14.2 of the PDA, Laos expressly and irrevocably waived its sovereign immunity -- from jurisdiction, pre-and post-judgment attachment, and execution -- in connection with any dispute involving or concerning the PDA. Specifically, Article 14.2 provides:

> 14.2  <u>Waiver of Sovereign Immunity</u>.  Each of the parties hereto irrevocably waives, to the fullest extent permitted by applicable law, **all immunity (whether on the basis of sovereignty or otherwise) from jurisdiction, attachment (both before and after judgment), and execution to which it might otherwise be entitled in any action or proceeding relating in any way to this Agreement** in the courts of the Lao People's Democratic Republic or the Kingdom of Thailand or other relevant jurisdictions, and neither party will raise or claim or cause to be pleaded any such immunity at or in respect of any such action or proceeding.

Art. 14.2. (Emphasis supplied.)

4. This Court issued an Opinion and Order (Order) on August 3, 2011 granting Petitioners' Petition to Confirm a Foreign Arbitral Award, denying Laos' Motion to Dismiss the Petition, and entering judgment in the amount of $56,210,000 plus interest until the date of satisfaction. A true and correct copy of the Order is attached hereto as Exhibit C. Judgment was entered on August 5, 2011.

5. The Judgment was amended on April 23, 2012 to reflect the amount of "$57,210,000, plus interest at a rate of 9% from November 4, 2009 to the date of satisfaction." Dkt. 87.

6. There is jurisdiction in this case. Specifically, this Court found in its Order that:

> The Court has subject matter jurisdiction pursuant to § 1330(a) . . . . [citing 28 U.S.C. § 1330.]
>
> There is no dispute that Respondent is a "foreign state" as defined in 28 US.C. § 1603(a), and that it is not entitled to immunity pursuant to sections 1605-1607 of Title 28. First, Respondent

> affirmatively waived sovereign immunity in the PDA itself [citing Article 14.2 of the PDA] . . . . Second, the case falls under one of the exceptions to immunity in the Foreign Sovereign Immunity Act ("FSIA"). [Citing 28 U.S.C. § 1605(a)(6).]  Because the Award was rendered pursuant to an arbitration agreement, and is governed by the Convention, to which the United States is a signatory, Respondent cannot claim sovereign immunity to this action.
>
> This Court also has personal jurisdiction over Respondent. Section 1330(b) provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). Respondent expressly consented to service and, in a stipulation filed with the Court, "waive[d] any objections or defenses based upon Petitioners' service of the [petition for confirmation and accompanying papers], including, without limitation, any defenses based on 28 U.S.C. 1608 ...." (Stip., Dckt. Entry No.5, July 23, 2010.)
>
> In addition, as Respondent concedes, it is the law of this circuit that a foreign state (and its instrumentalities) is not entitled to the jurisdictional protections of the Due Process Clause, such as protection against being sued where it lacks minimum contacts. *See Frontera Resources Azerbaijan Corp. v. State Oil Co. a/the Azerbaijan Republic*, 582 F.3d 393, 399-400 (2d Cir. 2009).
>
> Accordingly, **this Court has subject matter jurisdiction over this case and personal jurisdiction over Respondent**.

*Id*. at 12-14 (emphasis supplied).  Therefore, the purpose of any attachment pursuant to 28 U.S.C. § 1610(d) would not be to obtain jurisdiction, but rather to secure satisfaction of this Court's judgment.

**Laos Has Conceded That Certain Fees Paid to Laos by Airlines Are Commercial and Located in the United States**

7. On October 13, 2010, Petitioners served its First Request for Production of Documents ("First RFP"), a true and correct copy of which is attached hereto as Exhibit D.  The First RFP requested 23 categories of documents.  In Request No. 6, Petitioners requested:

> All documents evidencing or concerning receivables owed to Laos in connection with any **Commercial Activity** by any third party located outside the Lao People's Democratic Republic.

(Emphasis supplied.) The term "Commercial Activity" was defined in the First RFP:

> "Commercial Activities" shall have the meaning provided in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(2), and the caselaw decided thereunder, including, without limitation, any participation (including the holding of any equity interest or the receipt of any royalties or dividends) in the projects set forth in Exhibit A hereto. As used herein, any request pertaining to "commercial activities" includes any and all commercial activities undertaken anywhere in the world.

8. In its responses to the First RFP, dated January 27, 2011, a true and correct copy of which are attached hereto as Exhibit E, Laos asserted objections, which it termed the "preamble objections," as a basis for refusing to comply with 18 of the 23 requests in their entirety.

9. There were three requests in the First RFP as to which Respondent did not interpose the preamble objections or a specific jurisdictional objection. As to two of these categories, Respondent simply replied "None." The only request to which Respondent voluntarily agreed to produce documents was Request No. 6, which requested "[a]ll documents evidencing or concerning any receivables owed to Laos in connection with any Commercial Activity by any third party located outside the Lao People's Democratic Republic." In response, Laos stated:

> RESPONSE: Laos is locating documents showing receivables from United Airlines and Delta Airlines for over flight payments. When such documents are located, they will be produced. Laos objects to additional production for the reasons stated in the preamble objections.

Ex. E, at 4.

10. On October 13, 2010, Petitioners also served its First Set of Interrogatories on Respondent, a true and correct of copy of which is attached hereto as Exhibit F.

11. In its interrogatory responses, dated January 27, 2011, a true and correct copy of which are attached hereto as Exhibit G, Laos also disclosed the Aviation Service Payments. Respondent objected to Petitioners' First Set of Interrogatories virtually *in toto*, however the only interrogatory to which Respondent did not object, and for which it voluntarily provided information, was Interrogatory No. 4, which asked Respondent to:

> Identify any party that is (a) formed under the laws of the United States of America (or any state or political subdivision thereof), or (b) maintains any office or fixed address in the United States of America, as to which Laos has held any account receivable or been a creditor at any time since January 1, 2009. As for each such party, identify (i) the amount of the receivable held by or the debt owed to Laos; (ii) whether such receivable has been collected or such debt paid in full; and (iii) the amount owed by such party to Laos as of the date of your response to these Interrogatories.

In response, Laos stated:

> RESPONSE: United Airlines and Delta Airlines have paid over flight fees to Laos in the past two years. Laos is in the process of determining whether there are at this time unpaid invoices, but does note that invoices are sent to these airlines and paid periodically. This interrogatory answer will be supplemented when the additional information is available.

*Id*. at 3-4.

12. Upon receiving these responses, Petitioners asked Respondent whether Delta and United were the only Airlines who flew over Lao territory. On March 28, 2011, Laos produced documents in response to the First RFP reflecting overflight fees made to Laos by various airlines and air carriers with a place of business located in the United States. A true and correct

copy of that document production is attached hereto as Exhibit H.  Those documents reflected payments to Laos from, among others, the following companies (hereinafter "Airlines"):

- Colt International
- Kalitta Air, Inc.
- United Airlines

13. On August 17, 2011, this Court convened a telephonic hearing with the parties concerning Petitioners' Order to Show Cause seeking leave to commence execution to satisfy this Court's judgment entered on August 3, 2011.  A true and correct copy of the transcript of that hearing is attached hereto as Exhibit I.  During the conference, this Court asked Laos' counsel "Do you know how much money your client has in this country?"  Exhibit I, 3:16-17.  Laos' counsel responded:

> 18  MR. BRANSON:  The government in the government's name,
> 19  to my knowledge, only has money in its embassy and mission bank
> 20  accounts that are for diplomatic purposes, not for commercial
> 21  purposes.  I'm not aware that the government in its own name
> 22  has any commercial accounts in the United States.  **The only**
> 23  **commercial assets that could exist in the United States we**
> 24  **revealed to the petitioners in January, and they are -- sent to**
> 25  **airlines, U.S. airlines, that overfly Laos and get billed for**
>  1  **air traffic control services.**

(Emphasis supplied.)

14. On August 17, 2011, Petitioners filed a motion for a finding that a sufficient period of time had elapsed from the issuance of the Judgment to begin execution pursuant to 28 U.S.C. § 1610(c) ("Omnibus Enforcement Motion").  Petitioners' Omnibus Enforcement Motion specifically identified for restraint and turnover a subset of the Aviation Service Payments, that

are also the subject of this motion.  Laos' memorandum in opposition to the Omnibus Enforcement Motion, a true and correct copy of which is attached hereto as Exhibit J, made no objection or claim of sovereign immunity with regard to Petitioners' request to restrain and pursue turnover of those Aviation Service Payments.  Rather, Laos claimed that "the only commercial assets (or debt entitlements) in the United States, in which it *arguably* has an interest, are invoices delivered to airline carriers for flights passing through Lao airspace," and stated in a footnote that it "reserves the right to move to vacate any restraint of funds owed to it by U.S. airlines, on sovereign immunity or other grounds."  Ex. J, at 4, n.5.  Petitioners have since voluntarily withdrawn the majority of the requests for relief in the Omnibus Enforcement Motion, including, *inter alia*, all requests pertaining to overflight fees.

15. Respondent also admitted in a submission to the Court of Appeals that the Aviation Service Payments are subject to enforcement.  On April 2, 2012, Respondent submitted its opposition to Petitioners' motion for a limited remand for purposes of correcting the judgment, a true and correct copy of which is attached hereto as Exhibit K.  In that submission, Respondent stated that "[e]nforcing the award is the sole purpose of this case, and the discovery record shows that, **except for some U.S.-based airlines' payments for overflight fees to Laos, there are no assets in the United States available to further that purpose**." Ex. K, at 2 (emphasis supplied.)

16. During a hearing before this Court convened on January 31, 2013, Respondent's counsel again admitted that the Aviation Service Payments "could be used to satisfy the judgment."  A true and correct copy of that transcript is attached hereto as Exhibit L. Specifically, in response to the Court's query as to "what assets in the United States are available to [Respondent] to satisfy the debt [in the United States]," Mr. Branson stated, "[o]ther than

8

invoices that the government sends from Laos to U.S. airlines that overfly Laos, the government has no commercial assets in the United States." Ex. L, at 10-11.

**Petitioners Have Confirmed Through Third-Party Discovery That Commercial Debts Are Owed to Laos By Airlines**

17. On January 31, 2012, Petitioners served third-party subpoenas for the production of documents ("January 31 Subpoenas") on, among others, United Airlines ("United"), Kalitta Air LLC ("Kalitta"), and Colt International LLC ("Colt"), seeking, *inter alia*, all documents evidencing or concerning amounts paid or currently due and payable to Laos as a result of any "Aviation Service Charge," defined as:

> any fee or amount charged by the Government of the Lao People's Democratic Republic in connection with civil aviation operations in or over the territory of the Lao People's Democratic Republic, including, without limitation: overflight service charges; landing service charges; service charges relating to air navigational aid; service charges for certification of technical inspection; service charges for inspection of passengers, baggage and cargo; service charges for transport; service charges for transport of cargo; service charges for mail; service charges for ground handling services; and/or any other fees or service charges imposed by Laos in connection with civil aviation operations in or over the territory of the Lao People's Democratic Republic.

True and correct copies of these subpoenas are attached hereto as Exhibit M.

18. On February 13, 2012, Petitioner served a third-party subpoena for the production of documents ("February 13 Subpoenas") on FedEx Corporation ("FedEx"), also seeking the same documents as the January 31 Subpoenas. A true and correct copy of this subpoena is attached hereto as Exhibit N.

19. On February 15, 2013, at approximately 7:15 PM EST, I accessed from the FedEx website a webpage, available at http://www.fedex.com/la/dropoff/, which showed that FedEx

maintains a station in Laos at the address Lane Xang Ave., 0100, Vientianne [sic], Lao PDR. A true and correct copy of that webpage is attached hereto as Exhibit O.

20. On February 3, 2012, Colt produced documents in response to the January 31 Subpoena. True and correct copies of these documents are attached hereto as Exhibit P. These documents included invoices issued by Laos evidencing the following overflight charges owed by Colt:

| INVOICE DATE | COVERED PERIOD | AMOUNT |
|---|---|---|
| 12/3/2009 | 11/1/2009-11/30/2009 | $140.00 |
| N/A | 1/1/2010-1/31/-2010 | $200.00 |
| 2/17/2010 | 1/1/2010-1/31/-2010 | $280.00 |
| 9/2/2010 | 8/1/2010-8/31/2010 | $280.00 |
| 5/10/2011 | 4/1/2011-4/30/2011 | $140.00 |

21. On February 17, 2012, United produced documents in response to the January 31 Subpoena. True and correct copies of these documents are attached hereto as Exhibit Q. These documents included invoices issued by Laos evidencing the following overflight charges owed by United:

| INVOICE DATE | COVERED PERIOD | AMOUNT |
|---|---|---|
| 2/10/2011 | 1/1/2011-1/31-2011 | $18,600.00 |
| 3/4/2011 | 2/1/2011-2/28/2011 | $16,200.00 |
| 4/18/2011 | 3/1/2011-3/31/2011 | $17,940.00 |
| 5/10/2011 | 4/1/2011-4/30/2011 | $21,240.00 |
| 6/14/2011 | 5/1/2011-5/31/2011 | $19,800.00 |
| 7/5/2011 | 6/1/2011-6/30/2011 | $20,520.00 |
| 8/4/2011 | 7/1/2011-7/31/2011 | $18,720.00 |
| 9/6/2011 | 8/1/2011-8/31/2011 | $17,640.00 |
| 10/4/2011 | 9/1/2011-9/30/2011 | $15,840.00 |
| 11/7/2011 | 10/1/2011-10/31/2011 | $19,620.00 |
| 12/6/2011 | 11/1/2011-11/30/2011 | $17,700.00 |

22. On March 21, 2012, FedEx produced documents in response to the February 13 Subpoena. True and correct copies of these documents are attached hereto as Exhibit R. These

10

documents included invoices issued by Laos evidencing the following overflight charges owed by FedEx:

| INVOICE DATE | COVERED PERIOD | AMOUNT |
|---|---|---|
| 4/5/2010 | 2/1/2010-2/28/2010 | $12,740.00 |
| 5/10/2010 | 4/1/2010-4/30/2010 | $11,500.00 |
| 6/7/2010 | 5/1/2010-5/31/2010 | $11,960.00 |
| 7/12/2010 | 6/1/2010-6/30/2010 | $11,960.00 |
| 8/4/2010 | 7/1/2010-7/31-2010 | $12,190.00 |
| 9/29/2010 | 8/1/2010-8/31/2010 | $12,510.00 |
| 10/12/2010 | 9/1/2010-9/30/2010 | $12,600.00 |
| 11/8/2010 | 10/1/2010-10/31/2010 | $12,050.00 |
| 12/7/2010 | 11/1/2010-11/30/2010 | $18,940.00 |
| 1/7/2011 | 12/1/2010-12/31/2010 | $19,540.00 |
| 2/10/2011 | 1/1/2011-1/31-2011 | $17,890.00 |
| 3/4/2011 | 2/1/2011-2/28/2011 | $16,880.00 |
| 4/18/2011 | 3/1/2011-3/31/2011 | $19,130.00 |
| 5/10/2011 | 4/1/2011-4/30/2011 | $17,960.00 |
| 6/14/2011 | 5/1/2011-5/31/2011 | $18,510.00 |
| 7/5/2011 | 6/1/2011-6/30/2011 | $18,440.00 |
| 8/4/2011 | 7/1/2011-7/31/2011 | $18,210.00 |
| 9/6/2011 | 8/1/2011-8/31/2011 | $19,050.00 |
| 10/4/2011 | 9/1/2011-9/30/2011 | $18,560.00 |
| 11/7/2011 | 10/1/2011-10/31/2011 | $18,130.00 |
| 12/6/2011 | 11/1/2011-11/30/2011 | $19,200.00 |
| 1/9/2012 | 12/1/2011-12/31/2011 | $18,820.00 |
| 2/9/2012 | 1/1/2012-1/31/2012 | $18,250.00 |

None of these invoices, or the debts reflected therein, were disclosed by Laos in its initial document production of March 2011.

23. Kalitta has interposed objections to the January 31 Subpoena on various grounds, and has not produced any documents in response to the subpoena. However, it has not denied that it currently owes any Aviation Service Debt to Laos.

**This Court Possesses *In Personam* Jurisdiction Over the Airlines**

24. On February 13, 2013 at approximately 7:34 PM EST, I accessed the Corporation and Business Entity Database (the "Corporations Database") maintained by the New York State Department of State, Department of Corporations, State Records and UCC, available at

DMSLIBRARY01-20213182.2

http://www.dos.state.ny.us/corps/bus_entity_search.html.

25. The Corporations Database indicates that "United Air Lines, Inc." is a Delaware corporation registered to do business in the state of New York, and has designated a registered agent in the state of New York for the service of process. A true and correct copy of that record is attached hereto as Exhibit S.

26. The Corporations Database indicates that "Kalitta Air, L.L.C." is a Michigan limited liability company registered to do business in the state of New York, and has designated a registered agent in the state of New York for the service of process. A true and correct copy of that record is attached hereto as Exhibit T.

27. The Corporations Database indicates that "Colt International, Inc." is a Texas corporation registered to do business in the state of New York, and has designated a registered agent in the state of New York for the service of process. A true and correct copy of that record is attached hereto as Exhibit U.

28. The Corporations Database indicates that "FedEx Corporation" is a Delaware corporation registered to do business in the state of New York, and has designated a registered agent in the state of New York for the service of process. A true and correct copy of that record is attached hereto as Exhibit V.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 4, 2013

_____
Charlene C. Sun

DMSLIBRARY01-20213182.2