UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            |
THAI LAO LIGNITE (THAILAND) CO., LTD. &                     |
HONGSA LIGNITE (LAO PDR) CO., LTD.,                         |
                                                            |
          Petitioners,                              |     10 Civ. 5256 (KMW) (DCF)
    -against-                                              |
                                                            |     OPINION and ORDER
GOVERNMENT OF THE LAO PEOPLE'S                              |
DEMOCRATIC REPUBLIC,                                        |
                                                            |
          Respondent.                               |
                                                            |
------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

On August 5, 2011, this Court entered a judgment in favor of Thai-Lao Lignite (Thailand) Co., Ltd. and Hongsa Lignite (Lao PDR) Co., Ltd. (collectively, "Petitioners"), enforcing a $56 million arbitral award against the Government of the Lao People's Democratic Republic ("Respondent" or "the Lao Government"). *See Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, 10 Civ. 5256, 2011 WL 3516154 (S.D.N.Y. Aug. 3, 2011), *aff'd*, 492 F. App'x 150 (2d Cir. 2012), *cert. denied*, No. 12-878, 2013 WL 182791 (Feb. 21, 2013) [Dkt. No. 50]. The parties have since been engaged in protracted post-judgment discovery, supervised by Magistrate Judge Debra C. Freeman, regarding assets potentially available to satisfy the award. Presently before the Court is Petitioners' motion for discovery sanctions against Respondent and Respondent's lead counsel, David J. Branson, pursuant to Federal Rule of Civil Procedure 37. For the following reasons, Petitioners' motion for sanctions is DENIED.

    **I.**    **RELEVANT BACKGROUND**

Pursuant to the Foreign Sovereign Immunities Act ("FSIA"), Respondent's assets may be attached only where the assets are (1) located in the United States and (2) used for a commercial

purpose.  28 U.S.C. § 1610.[1]  However, Petitioners "need not satisfy the stringent requirements for attachment in order to simply receive information about [a sovereign's] assets."  *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 209 (2d Cir. 2012).  Indeed, discovery against Respondent's assets may proceed as it would against any other judgment creditor, and is "constrained principally in that it must be calculated to assist in collecting on a judgment."  *Id.* at 207.

In 2012, Judge Freeman entered a series of rulings relating to Respondent's discovery obligations.  [*See* Dkt. Nos. 95 (May 29, 2012 Order); 111 (July 20, 2012 Order); 112 (July 31, 2012 Order); 113 (Aug. 1, 2012 Order); 183 (Nov. 26, 2012 Order); 187 (Dec. 17, 2012 Order)].  Respondent, and the Bank of the Lao People's Republic ("Lao Bank"), which has intervened in this case, filed objections these rulings.[2]  Petitioners cross-moved for discovery sanctions against Respondent.  [Dkt. No. 144].  On January 17, 2013, this Court held a conference to discuss the status of ongoing discovery and to address the possibility of sanctions against Respondent.  However, because Respondent had retained new counsel, Steven Molo, the Court deferred consideration of Petitioners' sanctions motion until Mr. Molo could familiarize himself with the case.  At a follow-up conference on January 31, 2013, the Court orally overruled the parties' discovery objections and sustained Judge Freeman's orders.  The Court issued a written opinion explaining its oral rulings on February 11, 2013 (the "February 11 Order").  *Thai-Lao Lignite*, 10 Civ. 5256, 2013 WL 541259 (S.D.N.Y. Feb. 11, 2013) [Dkt. No. 202].

---

[1] This principle applies to the Lao Government because it has waived its jurisdictional immunity.  *See Thai-Lao Lignite*, 2011 WL 3516154, at *7-8.

[2] Indeed, Respondent and the Lao Bank objected to essentially every ruling Judge Freeman issued.  (*See* Resp.'s Objs. to July 20 and Aug. 1, 2012 Orders [Dkt. No. 121]; Resp.'s Objs. to July 31, 2012 Order [Dkt. No. 128]; Lao Bank's Objs. to July 20 and July 31 Orders [Dkt. No. 152]; Resp.'s Objs. to Nov. 26, 2012 Order [Dkt. No. 186]; Resp.'s Objs. to Dec. 17, 2012 Order [Dkt. No. 191]); *see also Thai-Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, No. 10 Civ. 5256, 2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011) (dismissing an earlier set of Respondent's discovery objections).

In its February 11 Order, the Court set a hearing date for Petitioners' sanctions motion and directed the parties to submit revised statements explaining what sanctions were appropriate and against whom any sanctions should be imposed. *Id.* at \*18. Respondent and the Lao Bank appealed the Court's ruling to the Second Circuit and requested a stay pending appeal. [Dkt. No. 210]. On February 27, 2013, the Second Circuit temporarily stayed enforcement of the February 11 Order pending a ruling on the merits of the stay motion. [Dkt. No. 218]. Accordingly, the Court deferred resolution of Petitioners' sanctions motion until the Second Circuit issued its ruling with respect to the merits of the stay.

On May 29, 2013, the Second Circuit lifted the stay with respect to most of the February 11 Order, staying proceedings "only to the extent that the [February 11] Order affirmed the November 26, 2012 order of the magistrate judge," which related to depositions of Lao officials regarding diplomatic bank accounts. [Dkt. No. 268, at 2]. The Second Circuit "decline[d] to stay discovery efforts aimed at enforcing [the] judgment, except to the limited extent set forth" in its order. (*Id.* at 3). The Second Circuit thus lifted the stay with respect to the discovery orders at the heart of Petitioners' sanctions motion. Accordingly, the Court held an evidentiary hearing to address the sanctions motion on July 18, 2013. The Court heard testimony regarding the parties' conduct during the discovery process from Respondent's lead counsel, Mr. Branson, and from Outakeo Keodouangsinh, the Deputy Director General of the Ministry of Planning and Investment for the Lao Government, who has been coordinating the Lao Government's responses to this litigation. At the close of the hearing, the Court requested supplemental submissions from the parties' regarding the parties' efforts to meet and confer. Petitioners submitted its response to this request on July 19, 2013, and Respondent did the same on July 22, 2013.

## II.     DISCUSSION

Petitioners seek three types of relief: (1) monetary sanctions against Respondent requiring Respondent and its counsel to pay $112,059.50 of attorneys' fees and costs; (2) a finding that Respondent is in contempt of court and the imposition of a per diem fine until Respondent complies with pertinent discovery orders; and (3) deeming certain facts established for the pendency of the litigation, principally relating to the Lao Government's ability to control and access funds held by the Lao Bank. The Court denies all three requests.

### A.   Request for Attorney's Fees and Costs

Rule 37 authorizes discovery sanctions where a party "fails to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). Fees must be imposed unless the "failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). A party's noncompliance is "substantially justified" where "reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing Fed. R. Civ. P. 37 advisory committee note).

The discovery orders at issue relate to two principle categories of documents: (1) accounts maintained by the Lao Bank in the United States (the "U.S. accounts") and (2) payments Laos receives in connection with its commercial hydropower projects. After hearing oral testimony and reviewing the extensive record provided by the parties, the Court is convinced that Respondent's actions were substantially justified.

4

1. Discovery Relating to the U.S. Accounts

During discovery, Mr. Branson mentioned the existence "of one or more bank accounts maintained in the United States by separate legal entities or instrumentalities of the respondent." [Dkt. No. 147 Ex. J, at 117:20-24]. Petitioners requested documents and information regarding the U.S. accounts, but Respondent's initial response revealed only that the U.S. accounts are maintained by the Lao Bank. [Dkt. No. 147 Exs. C,D]. Judge Freeman's May 29, 2012 Order directed Respondent to disclose information concerning the U.S. Accounts; information about Respondent's access to and authority over those accounts; and any past or future payments made to Respondent from the U.S. Accounts. [Dkt. No. 95]. Respondent, through Mr. Branson, averred that "[n]o Respondent personnel have knowlwdge [sic] of the Central Bank's bank accounts maintained in New York; no Respondent personnel are authorized to access or direct disposition of funds maintained in those accounts and no Respondent personnel have access to the records of those accounts." [Dkt. No. 147 Ex. K].

The Court finds that this response to be substantially justified. The documents in question are held by the Lao Bank, not by Respondent. At a conference on July 18, 2012, Judge Freeman explained that Rule 34 requires parties to turn over documents which they have the practical ability to possess, including bank account records available on request. However, until this statement from Judge Freeman, the Court finds it credible that Respondent reasonably believed its search for documents to be confined only to those literally in its possession, custody, or control. Since learning the correct standard, however, Respondent has requested the relevant materials from the Lao Bank. The Court thus finds it reasonable that Respondent's initial noncompliance rested on a misinterpretation of an ambiguous legal standard, and not an intentional violation of a court order. Moreover, because the Second Circuit had not yet issued

its ruling in *EM Ltd*, which expanded the scope of available discovery in FSIA cases, Respondent was justified in interpreting discovery orders narrowly.

In her July 20, 2012 Order, Judge Freeman explained that "possession, custody, and control" included documents that Respondent could obtain from the Lao Bank upon request, and expressly ordered Respondent to ask the Lao Bank for information on the U.S. Accounts. [Dkt. No. 111 ¶ 2]. Respondent requested account records from the Lao Bank, "but the Bank refused to provide them." (Outakeo Decl. ¶ 19 & Ex. B ("[T]he Central Bank now declines to provide [Respondent] with the information sought . . . because . . . that would be inconsistent with the Central Bank's sovereign immunity.") [Dkt. No. 259]; *see also* Tr. of July 18, 2013 Conference 40:11-40:20 [Dkt. No. 295] (Mr. Branson's testimony that the "Central Bank wouldn't comply with any request for documents or information")).

The Court finds that Respondent made a good faith effort to obtain the requested documents, but was unable to do so because of circumstances beyond its control. The Court accepts Mr. Branson's and Mr. Outakeo's testimony that they requested account information from the Lao Bank, but the Lao Bank refused to provide it. *See Scherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obligated to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."). The Court finds this to be a "reasonable, good faith effort to obtain documents," and that any non-production is substantially justified by the Lao Bank's refusal to comply. *M'Baye v. N.J. Sports Prods., Inc.*, No. 06-3439, 2008 WL 1849777, at *4 (S.D.N.Y. Apr. 21, 2008.

Moreover, the FSIA precludes Petitioners from requesting these documents directly from the Lao Bank. The Lao Bank has sovereign immunity under the FSIA, 28 U.S.C. §§ 1604, 1603, and its assets are immune from attachment, 28 U.S.C. § 1611(b)(i). Sovereign immunity protects

the Lao Bank "from the expense, intrusiveness, and hassle of litigation," including discovery. *EM Ltd.*, 695 F.3d at 210. Indeed, Petitioners may only seek discovery from the Lao Bank if it is aimed at establishing jurisdiction. *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 174-76 (2d Cir. 1998). These principles preclude Petitioners from seeking the requested information directly from the Lao Bank. Accordingly, Respondent's failure to produce documents in response to the July 20, 2012 Order was substantially justified because the Lao Bank refused to provide them, which, under the FSIA, it has no obligation to do.

2.   Discovery Relating to Hydropower Payments

The May 29, 2012 and July 20, 2012 Orders also directed Respondent to produce payment information relating to its commercial hydropower projects to the extent those payments showed a nexus to a U.S. bank. [Dkt. No. 95 ¶ 1(a)-(d) & n.1; Dkt. No. 111 ¶ 2]. Respondent did not produce documents in response to this order because "the Lao Government does not receive routing information for the payments it receives." (Outakeo Decl. ¶¶ 7-8; Tr. of July 18, 2013 Conference 25:11-29:24 (testimony from Mr. Branson regarding the payment stream for hydropower projects)).

However, in its ongoing search for responsive materials, Respondent recently uncovered documents relating to money transfers that appear to be responsive to the May 20, 2012 and July 20, 2012 orders, and produced them to Petitioners. (*See* July 10, 2013 Letter from Steven F. Molo 1). Petitioners contend this disclosure "constitutes yet more compelling evidence of Respondent's and its counsel's bad faith in their conduct of these proceedings." (July 15, 2013 Letter from James E. Berger 2).[3] The Court disagrees. Mr. Branson credibly testified that the

---

[3] In their letter of July 15, 2013, Petitioners requested leave to amend their motion to seek further sanctions against Respondent and its counsel pursuant to 28 U.S.C. § 1927 and Rule 11. The Court finds that such amendment is unnecessary. First, § 1927 authorizes the award of costs and fees only where an attorney exhibits "conduct akin to bad faith." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy &*

recently discovered documents were found only because an attorney happened to learn of them from a low-level government official. (Tr. of July 18, 2013 Conference 31:2-32:3). The officials with whom Mr. Branson had been meeting, Mr. Rithikone Phoummasack and Ms. Thongcham Souralay, did not know the documents existed. Mr. Branson explained that "at a lower level they had a different subset of knowledge than they did at the highest level." (*Id.* at 33:10-33:11). Similarly, Mr. Outakeo avers that he believed his 2012 responses "to be true and accurate at the time," and that he "did not have any prior knowledge of those transfer notices." (Outakeo Decl. ¶¶ 5-7; *see also* Tr. of July 18, 2013 Conference 73:21-73:23 (Outakeo testimony that he believed the 2012 responses to be correct); *id.* at 85:3-85:9 (Outakeo testimony that he was not aware of the documents at issue until they were produced)).

In determining whether sanctions are appropriate, district courts "should weigh, among other factors, the harshness of the sanctions, the extent to which the sanctions are necessary to restore the evidentiary balance upset by incomplete production, and the non-disclosing party's degree of fault." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 115 (2d Cir. 2013). These factors counsel against a sanctions award in this case. First, the documents at issue do not reveal anything relevant to enforcing the judgment—namely, assets attachable under the FSIA—and Petitioners have not suggested any motive for Respondent to conceal these administrative records. Second, although the Court acknowledges that Petitioners have experienced some prejudice given the delay caused by Respondent's conduct, the Court finds that Respondent's degree of fault does not justify the imposition of sanctions. The Court finds the testimony from Mr. Branson and Mr. Outakeo to be credible, and agrees that their failure to produce the

---

*Sauce Factory, Ltd.*, 682 F.3d 170, 178 (2d Cir. 2012). The Court's conclusion that Respondent substantially complied with Judge Freeman's discovery orders thus forecloses relief under § 1927. Moreover, Rule 11 does not apply "to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 27." Fed. R. Civ. P. 11(d). Accordingly, Rule 11 sanctions are not available in this case, which concerns Mr. Branson's conduct during discovery.

responsive documents represented an oversight and not, as Petitioners contend, a bad faith effort to conceal documents. Respondent, aided by counsel, is trying its best to comply with United States law. (Tr. of July 18, 2013 Conference 78:1-78:7). This is the first time the Lao Government has been involved in litigation of this magnitude, and no analogous discovery process exists in Laos. Accordingly, the Court finds that Respondent, and Respondent's counsel, lapse in complying carefully with discovery demands is understandable. Although Respondent's conduct does not warrant the imposition of sanctions, the Court acknowledges that Respondent's discovery responses, even if technically accurate, were often evasive. Such obfuscation has unnecessarily prolonged this litigation, and the Court trusts that, going forward, Respondent will comply with discovery as completely and accurately as possible in order to expedite this long-delayed proceeding.

### B. Request for a Contempt Finding

Petitioners also seek a "coercive" civil contempt finding and the imposition of a $1,000 per day prospective fine, doubling every four weeks until reaching a maximum of $80,000 per week.[4] A court may hold a party in contempt for violation of a court order when (1) the order violated is "clear and unambiguous," (2) "the proof of non-compliance is clear and convincing," and 3) the party "was not reasonably diligent in attempting to comply." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010); *see also Linde*, 706 F.3d at 110 (noting that contempt should not be imposed "except in cases of failure to make a good faith effort to comply" (internal quotation marks omitted)).

The Court finds that a contempt finding is inappropriate because any non-compliance was substantially justified, either because Respondent took a reasonable (if ultimately mistaken) legal

---

[4] Petitioners originally sought fines for the period from July 19, 2012 until February 27, 2013 (when the Second Circuit issued a temporary stay of the discovery orders). It withdrew the retrospective request on July 10, 2013, because it "could arguably be viewed as punitive in nature."

position or because the information sought is not available.  Thus, a contempt finding is not warranted because Respondent was "reasonably diligent in attempting to comply" with Judge Freeman's orders.[5]

### C. Request for Adverse Factual Designations

Finally, Petitioners request that the Court deem certain facts, relating to the relationship between the Lao Bank and the Lao Government, established for the duration of the enforcement proceedings.[6]  The Court finds that this sanction is inappropriate.

First, Petitioners have failed to show that the evidence Respondent has not produced is "relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).  To show that evidence is relevant, "the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the…unavailable evidence would have been of the nature alleged." *Id.* at 109.  Petitioners have provided no evidence to support their proposed inferences, while Respondent has provided evidence supporting a contrary inference.  (*See* Oth Decl. ¶ 14 [Dkt. No. 123] (noting that the Lao Government does not have access to the Lao Bank's accounts in the U.S.); Outakeo Decl. ¶

---

[5] Petitioners cite several cases in which per diem sanctions were imposed to force recalcitrant sovereigns to comply with the discovery process.  These cases are readily distinguishable, however, because they concern parties whose non-compliance was flagrant and egregious.  *See, e.g.*, *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 441-2 (D.C. Cir. 2011) (Congo refused to produce anything in response to one part of discovery orders); *Export-Import Bank of Republic of China v. Grenada*, No. 06 Civ. 2469, 2010 WL 5463876, at *4 (S.D.N.Y. Dec. 29, 2010) (Grenada acknowledged that its answers were incomplete); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 68 F. Supp. 2d 377, 379 (S.D.N.Y. 1999) (Iraqi bank failed to respond to subpoenas or appear in court at all).

[6] Specifically, Petitioners want the Court to find: (1) the Lao Bank takes possession in the United States of funds owed to Respondent using an account the Lao Bank maintains in its own name and for its own purposes; (2) By using accounts in the United States to process assets owed to Respondent, the Lao Bank commingles its funds with payments made to Respondent; (3) Respondent, through its Deputy Prime Minister and Minister of Finance, has the ability to obtain information and records concerning the Lao Bank's accounts in the United States and elsewhere; and (4) Respondent has the ability to direct the disposition of funds held by the Lao Bank in the United States and elsewhere.

13 (explaining that no individual member of the Lao Bank's board may disclose its account information)).

Second, a court may not sanction a foreign instrumentality for discovery violations committed by its sovereign. *See De Letelier v. Republic of Chile*, 748 F.2d 790, 795 n.2 (2d Cir. 1984). In *Letelier*, the district court entered discovery sanctions against Chile, including an adverse evidentiary finding that the national airline of Chile was not a separate juridical entity from Chile. *Id.* at 793. The Second Circuit reversed, holding that "one party to litigation will not be subjected . . . to sanctions because of the failure of another to comply with discovery." *Id.*; *see also Funnekotter v. Republic of Zimbabwe*, No. 09 Civ. 08168, 2011 WL 5517860, at *3-4 (S.D.N.Y. Nov. 10, 2011) (refusing to impose sanction that non-party was alter ego of Zimbabwe "since it would subject their assets to attachment"); Fed. R. Civ. P. 37(b)(1) (limiting remedies for non-party failing to comply with a subpoena to contempt). Here, the Lao Bank is not a party to the litigation, and the findings Petitioners seek would adversely affect the Bank because they expose its assets to potential attachment.

### III. CONCLUSION

Petitioners' motion for sanctions is DENIED. This resolves Docket Entry 144.

SO ORDERED.

Dated: New York, New York
August 2, 2013

/s/_____
Kimba M. Wood
United States District Judge