UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
|
THAI LAO LIGNITE (THAILAND) CO., LTD. & |
HONGSA LIGNITE (LAO PDR) CO., LTD., |
|
          Petitioners, |   10-CV-5256 (KMW) (DCF)
   -against- |
|   **OPINION & ORDER**
GOVERNMENT OF THE LAO PEOPLE'S |
DEMOCRATIC REPUBLIC, |
|
          Respondent. |
|
---------------------------------------------------------------X

KIMBA M. WOOD, U.S. District Judge:

Thai Lao Lignite (Thailand) Co., Ltd., and Hongsa Lignite (LAO PDR) Co., Ltd., (collectively, "Petitioners"), filed a petition for confirmation of a foreign arbitral award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 *et seq.*. The Government of the Lao People's Democratic Republic ("Respondent") opposed confirmation and moved to dismiss the petition.

On September 13, 2011, the Court imposed a sanction on Respondent for its failure to comply with a discovery order issued by Magistrate Judge Freeman. *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, No. 10-CV-5256, 2011 WL 4111504, at *10 (S.D.N.Y. Sept. 13, 2011) (Wood, J.).

Currently before the Court is Petitioners' Motion for Leave to Commence Execution and Discovery in Aid of the September 13, 2011 Sanctions Order ("Pets.' Mot."). [Doc. No. 321]. For the reasons discussed below, the Court DENIES Petitioners' motion.

1

I.     RELEVANT BACKGROUND

Petitioners Thai-Lao Lignite Co., Ltd. and Hongsa Lignite Co., Ltd. are corporations organized under the laws of Thailand and Laos, respectively. *See Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, No. 10-CV-5256, 2011 WL 3516154, at *1 (S.D.N.Y. Aug. 3, 2011) (Wood, J.). In 2010, Petitioners filed a petition in the New York Supreme Court to confirm an award issued against Respondent by an arbitration panel in Malaysia in 2009. *See id.*; (Pets.' Mot, 2). The action was subsequently removed to this Court. (Pets.' Mot., 2).

The parties began discovery and quickly became embroiled in disputes with respect to the discoverability of information regarding Respondent's assets in the United States. *See* (Pets.' Mot., 4); (Resp. Opp'n to Mot. to Commence Execution and Discovery in Aid of Sanctions Order ("Resp. Opp'n"), 2-3 [Doc. No. 323]). The Court referred all disputes about the scope of discovery to Magistrate Judge Freeman. *See* [Doc. No. 22]. On April 4, 2011, Judge Freeman ordered Respondent to produce records of all bank accounts in the United States held by the Laos embassy (the "April 4 Order"). [Doc. No. 25]. Respondent failed to produce these records by the deadline set by Judge Freeman, and, almost a month after this deadline had passed, filed an objection to her order claiming that the information sought was immune from discovery. (Pets.' Mot., 4). Judge Freeman stayed her order pending review by the District Court. On September 13, 2011, this Court overruled Respondent's objections, and imposed a sanction on Respondent pursuant to Federal Rule of Civil Procedure 37(b)(2) for its failure to comply with Judge Freeman's April 4 Order (the "Sanctions Order"). *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, No. 10-CV-5256, 2011 WL 4111504, at *7, 10

(S.D.N.Y. Sept. 13, 2011) (Wood, J.).[1] The amount of this sanction was subsequently set by Judge Freeman at $19,932.50. *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, No. 10-CV-5256, 2012 WL 5816878, at *1 (S.D.N.Y. Nov. 14, 2012) (Freeman, Mag. J.).

In April of 2014, Petitioners filed the instant motion seeking leave to commence execution of the Sanctions Order, pursuant to § 1610(c) of the Foreign Sovereign Immunities Act (FSIA), and requesting the Court's authorization to conduct discovery in aid thereof. [Doc. No. 321]. Respondent opposes the motion, arguing, *inter alia*, that execution and discovery are inappropriate because the Laos Government has offered to satisfy the sanctions award through a set-off against amounts that Petitioners owe Respondent based on final judgments rendered by courts in Malaysia and Paris. (Resp. Mot., 4-8).

## II.   DISCUSSION

The right of setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)); *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d

---

[1] In 2013, Respondent appealed a February 13, 2013 Opinion & Order of this Court overruling Respondent's objections to several discovery orders issued by Magistrate Judge Freeman, including some pertaining to the discoverability of information about the Laos embassy's U.S. bank accounts. (Notice of Appeal, [Doc. No. 210]). The appeal stated that it also encompassed "all associated orders." *Id.* The parties disagree as to whether the Sanctions Order falls within the scope of this appeal, and if it does, whether this Court should stay its decision of the instant motion pending resolution of the appeal. *See* (Resp. Opp'n, 2-4, 9-10); (Pets.' Reply in Further Supp. of Mot. to Commence Execution ("Pets.' Reply"), 3-4 [Doc. No. 347]).

The Court finds that a stay of its decision is unnecessary. Shortly after initiating its appeal, Respondent sought a stay from the Second Circuit of this Court's February 13, 2013 Order "and all associated orders." The Second Circuit subsequently granted a stay of the February 13, 2013 Order "*only* to the extent that [the order] affirmed the November 26, 2012 Order of the Magistrate Judge." (Order at 2, *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, No. 13-495 (2d Cir. May 28, 2013) [Doc. No. 247] (emphasis added)). The Second Circuit otherwise denied Respondent's request for a stay. *Id.* Neither the February 11 Order of this Court nor the November 26 Order of Magistrate Judge Freeman pertains to the discovery sanctions against Respondent. Therefore, regardless of whether the original Sanctions Order falls within the scope of the appeal, it clearly falls outside the scope of the Second Circuit stay. Accordingly, it is appropriate for the Court to proceed.

Cir. 2002) (quoting *Malinowski v. N.Y. State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998)). For a party to invoke the right to a setoff, the "debts may arise from different transactions, but they must be mutual. Debts are mutual when they are due to and from the same persons in the same capacity." *Westinghouse*, 278 F.3d at 149 (internal citations and quotation marks omitted).

New York has codified the common law right to setoff in N.Y. Debtor & Creditor Law ("DCL") § 151. *In re Hunt*, 250 B.R. 482, 485 (Bankr. E.D.N.Y. 2000). Section 151 provides that every debtor has the right "to set off and apply against any indebtedness, whether matured or unmatured" any amount owing from the debtor to the creditor, so long as the debts are mutual. The debtor is entitled to invoke this right of set off upon the happening of one of the enumerated statutory events, including "the issuance of any execution against any of the property of a creditor" or "the issuance of a subpoena or order, in supplementary proceedings, against or with respect to any of the property of a creditor."[2] DCL § 151.

---

[2] The full text of N.Y. Debt. & Cred. Law § 151 reads as follows:
Every debtor shall have the right upon:
(a) the filing of a petition under any of the provisions of the federal bankruptcy act or amendments thereto or the commencement of any proceeding under any foreign bankruptcy, insolvency, debtor relief or other similar statute or body of law, by or against a creditor;
(b) the making of an assignment by a creditor for the benefit of its creditors;
(c) the application for the appointment, or the appointment, of any receive of, or of any of the property of a creditor;
(d) the issuance of any execution against any of the property of creditor;
(e) the issuance of a subpoena or order, in supplementary proceedings, against or with respect to any of the property of a creditor; or
(f) the issuance of a warrant of attachment against any of the property of a creditor,
to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount from such debtor to such creditor, at or at any time after, the happening of any of the above mentioned events, and the aforesaid right of set off may be exercised by such debtor against such creditor or against any trustee in bankruptcy, debtor in possession, assignee for the benefit of creditors, receiver or execution, judgment or attachment creditor of such creditor, or against anyone else claiming through or against such creditor or such trustee in bankruptcy, debtor in possession, assignee for the benefit of creditors, receivers, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set off shall not have been exercised by such debtor prior to the making, filing or issuance, or service upon such debtor of, or of notice of, any such petition; assignment for the benefit of creditors; appointment or application for the appointment of a receiver; or issuance of execution, subpoena or order or warrant.

Courts have interpreted the right conferred by DCL § 151 broadly. *See Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 582 (1981) (citing 1952 Report of the NY Law Rev. Comm., p 365) ("[B]y enacting section 151 of the Debtor and Creditor Law, the Legislature intended to 'cover the field' in terms of the . . . right of setoff vis-à-vis the various enforcement devices."); *United States v. BCCI Holdings (Luxembourg), S.A.*, 941 F. Supp. 180, 187 (D.D.C. 1996) (describing the New York statutory right of set off as "jealously protected" and enjoying a "cherished status"). Although the statute has been invoked most frequently in the context of bankruptcy proceedings, "the language of the statute is not so limited." *Pisane v. Feig*, 970 N.Y.S.2d 363, 367 (Sup. Ct. 2013).

Petitioners contend that Respondent is not entitled to a set off because "a debtor is not entitled to have a judgment against it satisfied based merely upon an allegation that the creditor owes him a greater sum," relying on *Piranesi Imports, Inc. v. Furniture Textiles & Wallcoverings, Inc.*, 296 N.Y.S.2d 922, 924 (1st Dep't 1969)). (Pets.' Reply in Further Supp. of Mot. to Commence Execution ("Pets.' Reply"), 2 [Doc. No. 347]). But *Piranesi* is inapposite. *Piranesi* held that a judgment against a defendant would not be declared satisfied upon the defendant's mere *assertion of a claim* against the plaintiff for an amount greater than the outstanding judgment. *Id.* at 923. *Piranesi* thus concerns a contingent liability, i.e., one "marked by uncertainty as to whether any obligation will ever arise." *Trojan Hardware Co., v. Bonacquisti Const. Corp.*, 534 N.Y.S.2d 789, 791 (App. Div. 1988) (citing Black's Law Dictionary 290-291 [5th ed 1979]); *see also Dias v. Bank of Hawaii*, 732 F.2d 1401, 1403 (9th Cir. 1984) (citing *Piranesi*) ("[A] claim is only an assertion of an amount due.").[3]

---

[3] Both New York state courts and courts in this Circuit are in agreement that DCL § 151 does not authorize the set off of a contingent obligation. *See, e.g.*, *In re Genuity Inc.*, Bankr. No. 02-43558, 2007 WL 1792252, at *5 n.10 (Bankr. S.D.N.Y. June 20, 2007); *Trojan Hardware*, 534 N.Y.S.2d at 791.

5

Here, however, Petitioners' obligation to Respondent is not a contingent liability, because there is "no uncertainty" as to whether the obligation will arise. *See Carpet Res., Ltd. v. JP Morgan Chase Bank, N.A.*, 920 N.Y.S.2d 335, 336 (2011). In related proceedings in France and Malaysia, courts have ordered as part of their final judgments that Petitioners pay Respondent approximately $64,500 in cost awards. *See* (Resp.' Mot., 4); (Branson Decl., Ex. T [Doc. No. 280-20]) (Paris Court of Appeal ordering Petitioners to pay €50,000 in costs); (Branson Decl., Ex. H [Doc. No. 280-8]) (Federal Court of Malaysia ordering Petitioners to pay 10,000 Malaysian Ringgits in costs); (Kry Decl., Ex. 1 [Doc. No. 205-1]) (Malaysian High Court ordering Petitioners to pay 50,000 Malaysian Ringgits in costs). These decisions—which represent final, conclusive judgments between the parties—establish Petitioners' obligation to the Respondent as fixed, rather than contingent.[4]

Petitioners argue that because Respondent has "neither sought nor obtained a judgment of this court on its claim for the foreign proceeding costs" it is not entitled to claim the right to set off these costs against the sanctions award. (Pets.' Reply, 2). But even though the foreign awards are not presently enforceable in the United States, the amounts owed by Petitioners to Respondent are "readily discernible" and can be expected "in the normal course of events to be due and owing in the future." *See Pisane*, 970 N.Y.S.2d at 367. As such, they are best characterized as unmatured obligations, and, under DCL § 151, a debtor is entitled to invoke the

---

[4] Under New York law, a foreign judgment that is "final, conclusive, and enforceable where rendered" is "conclusive between the parties to the extent that it grants or denies recovery of a sum of money" even if "an appeal therefrom is pending or [the judgment] is subject to appeal." N.Y. C.P.L.R. §§ 5302, 5303. "Such a foreign judgment is enforceable by an action on the judgment, a motion for summary judgment in lieu of complaint, or in a pending action by counterclaim, cross-claim or affirmative defense." *Id.* § 5303. Under § 5304(a), a foreign judgment is not conclusive if (1) "the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;" or (2) "the foreign court did not have personal jurisdiction over the defendant."

right to set off unmatured as well as matured obligations.[5] Accordingly, Respondent is entitled to invoke its statutory set off right with respect to these obligations, even without first obtaining a judgment from a United States court.[6]

### III. CONCLUSION

For the foregoing reasons, Petitioners' motion to commence execution and discovery in aid of the sanctions order is DENIED. This Opinion and Order resolves docket entry 320. SO ORDERED.

DATED:   New York, New York
         March 8, 2016

/s/
KIMBA M. WOOD
United States District Judge

---

[5] An unmatured obligation is one for "a readily discernible amount which can be expected in the normal course of events to be due and owing in the future, although the obligation has not yet ripened." *Pisane*, 970 N.Y.S.2d at 367.

[6] Respondent notes that "[n]othing in Section 151 or the common-law set-off cases requires the Lao Government to domesticate its foreign cost awards before applying them to its claimed debts." (Resp. Opp'n, 7 n.2). Although Petitioners assert that domestication is necessary before Respondent can invoke its right to a set off under Section 151, they cite to no authority in support of this position, (Pets.' Reply, 2), and the Court has not discovered any.